**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CHRISTIE POITRA,

              Plaintiff,                                    Case No. 1:22-cv-00047

v.                                                                        Hon. Jane M. Beckering

MICHIGAN STATE UNIVERSITY; MICHIGAN
STATE UNIVERSITY BOARD OF TRUSTEES;
et al., in their official and individual capacities,

              Defendants.

---

**<u>DEFENDANTS MICHIGAN STATE UNIVERSITY, MICHIGAN STATE UNIVERSITY BOARD OF TRUSTEES, STANLEY, UPDA, SIMON, HENDRICK,  TAYLOR, KENT AND JACHIMIAK'S BRIEF IN SUPPORT OF MOTION TO PARTIALLY DISMISS PLAINTIFF CHRISTIE POITRA'S FIRST AMENDED COMPLAINT AND MOTION TO STRIKE PARAGRAPHS 389 THROUGH 476 OF AMENDED COMPLAINT</u>**

**ORAL ARGUMENT REQUESTED**

TABLE OF CONTENTS

Page(s)

I.  INTRODUCTION ........................................................................................................ 1

II.  STATEMENT OF THE FACTS ................................................................................ 5

    A.  Plaintiff's Employment with MSU ................................................................. 5

    B.  MSU's OIE Investigation into Plaintiff's Report of Harassment ............................. 5

    C.  Interim Measures and Sanctions Imposed By MSU .................................... 6

    D.  Norder's Alleged Violations of the Interim Measures ................................. 6

    E.  Plaintiff's Allegations Regarding Her Role as Interim Director of NAI .................... 7

    F.  Plaintiff's Allegations Concerning the Individual Defendants ................................ 8

        1.  Defendant Tyler ................................................................................. 8

        2.  Defendant Hendrick .......................................................................... 9

        3.  Defendant Kent .................................................................................. 9

        4.  Defendants Simon, Upda, and Stanley, Jr. ....................................... 9

        5   Defendant Jachimiak .......................................................................... 9

    G.  Plaintiff's EEOC Charge ............................................................................. 10

II.  ARGUMENT ............................................................................................................ 10

    A.  Standard of Review .................................................................................... 10

        1.  Motion to Dismiss, FRCP 12(b)(1) ................................................. 10

        2.  Motion to Dismiss, FRCP 12(b)(6) ................................................. 10

        3.  Motion to Strike, FRCP 12(f) .......................................................... 11

    B.  Many of Plaintiffs' Claims Are Barred by the Applicable Statutes of
Limitations .................................................................................................. 12

        1.  Plaintiff's Title IX Heightened Risk Claim is Time-Barred (Count
II) ..................................................................................................... 12

        2.  Plaintiff's Section 504 Claim is Time-Barred (Count VII) .................... 13

        3.  Plaintiff's Title VII and ADA Claims are Time-Barred Due to Her
Failure to Timely Exhaust Administrative Remedies (Counts V -
VII) ................................................................................................... 13

    C.  Plaintiff Does Not State a Plausible Deliberate Indifference Title IX Claim
[Count I] ...................................................................................................... 15

        1.  Plaintiff Cannot Establish that MSU's Response was Clearly
Unreasonable ................................................................................... 15

2.  Plaintiff Cannot Establish that She Experienced Actionable Harassment Once      MSU Had Actual Notice ................................................... 17

D.  Plaintiff's Section 1983 Claims Fail as a Matter of Law (Counts IV, IX, and X) .............................................................................................................. 19

1. Section 1983 Claims Are Not Viable Against MSU ....................................... 20

2. The Individual Defendants are Entitled to Qualified Immunity Because Plaintiff Fails to Sufficiently Plead Any Action By the Individual Defendants Sufficient to State a Section 1983 Claim ............................. 20

3. Plaintiff's First Amendment Retaliation Claim Fails (Count IV) .................. 22

i.      Plaintiff's First Amendment Retaliation Claim Against Tyler Fails Concerning Her Attorney's Alleged Protected Speech ........................................................................................ 22

ii.     Plaintiff's First Amendment Retaliation Claim Against Tyler Fails Concerning Any Speech by Plaintiff ........................ 22

4. Plaintiff Fails to State a Substantive or Procedural Due Process Claim (Count IX) ............................................................................................... 24

i.      Plaintiff Does Not State a Constitutional Violation of her Bodily Integrity .................................................................... 24

ii.     Plaintiff Does Not Have A Substantive Right to her Reputation or Advancement in her Career ................................. 24

iii.    Plaintiff's Procedural Due Process Claim Fails .......................... 25

5.      Plaintiff's Equal Protection Claim Fails ............................................. 27

E.  Plaintiff's State Law Claims are Fatally Flawed (Counts XI and XII) .................... 27

1.  Plaintiffs' State Law Claims are Barred Against MSU Because She Did Not Comply with the Governmental Notice Requirement. .................... 27

2.  Plaintiff's ELCRA Sex Discrimination Claim Is Not Adequately Pled (Count XI) .............................................................................................. 28

3.  Most of Plaintiff's ELCRA Retaliation Claim Should Be Dismissed as Against MSU and the Individual Defendants (Count XI) ...................... 31

4.  Plaintiff Does Not Plead a Plausible PWDCRA Discrimination or Retaliation Claim (Count XI) ................................................................. 32

F.  The Court Should Strike Paragraphs 389-475 of the Complaint [Counts XI and XII] .......................................................................................................... 33

III. CONCLUSION .................................................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
  727 F.3d 502 (6th Cir. 2013) ...................................................................11

*American Mfrs. Mut. Ins. Co. v. Sullivan*,
  526 U.S. 40 (1999)...............................................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................11, 21

*Bachman v. Swan Harbour Assoc.*,
  653 N.W.2d 415 (2002) .........................................................................31

*Bd. of Regents of State Colleges v. Roth*,
  408 U.S. 564 (1972)...............................................................................25

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................11

*Burlington N & Santa Fe Ry Co v White*,
  548 US 53 (2006).....................................................................................31

*Center for Bio-Ethical Reform v. Napolitano*,
  648 F.3d 365 (6th Cir. 2011) ................................................................11

*Charles v. Baesler*,
  910 F. 2d 1349 (6th Cir. 1990) ............................................................25

*Chen v Wayne State Univ*,
  771 NW2d 820 (2009) .....................................................................29, 30

*Clemente v. Vaslo*,
  679 F.3d 482 (6th Cir. 2012) ..........................................................20, 21

*Cole v Dept of Corr*,
  No 258053, 2006 WL 2613458 (Mich Ct App Sep 12, 2006)..................30

*Stiles ex rel. D.S. v. Grainger Cty., Tenn.*,
  819 F.3d 834 (6th Cir. 2016) ................................................................16

*Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*,
  526 U.S. 629 (1999)......................................................................15, 16, 17

*Davis v. Scherer*,
    468 U.S. 183 (1984) .........................................................................................26

*Davis v. Sodexho, Cumberland Coll. Cafeteria*,
    157 F.3d 460 (6th Cir. 1998) .......................................................................15, 16

*M.D. ex rel. Deweese v. Bowling Green Indep. Sch. Dist.*,
    709 F. App'x 775 (6th Cir. 2017) ...................................................................19

*Dodd v. City of Chattanooga, Tennessee*,
    846 F.3d 180 (6th Cir. 2017) ...........................................................................25

*Doe v. Baum*,
    903 F.3d 575 (6th Cir. 2018) ...........................................................................26

*Doe v. Claiborne Cty., Tenn.*,
    103 F.3d 495 (6th Cir. 1996) .......................................................................15, 20

*Doe v. Ohio State Univ.*,
    239 F. Supp. 3d 1048, 1082–83 (S.D. Ohio 2017) ..........................................27

*Doe v. University of Kentucky*,
    959 F.3d 246 (6th Cir. 2020) ...........................................................................18

*Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*,
    624 F.3d 332 (6th Cir. 2010) .......................................................................22, 23

*Fairley v. Dep't of Corr.*,
    871 N.W.2d 129 (2015) ....................................................................................28

*Felder v. Casey*,
    487 U.S. 131 (1988) .........................................................................................28

*Flaim v. Med. Coll. of Ohio*,
    418 F.3d 629 (6th Cir. 2005) ...........................................................................26

*Forrester v. Clarenceville Sch. Dist.*,
    537 F. Supp. 3d 944 (E.D. Mich. 2021) ..........................................................12

*Fox v. Bd. of Regents of Univ. of Mich.*,
    134 N.W.2d 146 (1965) ....................................................................................28

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006) .........................................................................................23

*Gardenhire v. Schubert*,
    205 F.3d 303 (6th Cir 2000) ............................................................................27

*Gardner v. Mich. State Univ. Bd. of Trs.*,
No. 1:12-CV-1018, 2014 WL 558818 (W.D. Mich. Feb. 11, 2014) (holding
plaintiff could not maintain Section 1983 claim against MSU) ..............................................20

*Garrett, et al., v. The Ohio State Univ.*,
2021 WL 7186147 (S.D. Ohio Sept. 22, 2021) ..............................................................12, 13

*Gavitt v. Born*,
835 F.3d 623 (6th Cir. 2016) .................................................................................................21

*Gordon v. Traverse City Area Pub. Sch.*,
686 F. App'x 315 (6th Cir. 2017) ..........................................................................................19

*Granderson v. Univ. of Michigan*,
211 F. App'x 398 (6th Cir. 2006) ..........................................................................................14

*Green v. Gen. Motors Corp.*,
95 F. Supp. 2d 698 (W.D. Mich. 2000) ..................................................................................29

*Guertin v. State*,
912 F.3d 907 (6th Cir. 2019) .................................................................................................24

*Harrison v. Oakland County*
612 F. Supp. 2d 848 (E.D. Mich. 2009)..................................................................................23

*Hawthorne-Burdine v. Oakland Univ.*,
2018 WL 1832336 (Mich. Ct. App. Apr. 17, 2018) ................................................................28

*Heike v. Guevara*,
654 F. Supp. 2d 658 (E.D. Mich. 2009), *aff'd*, 519 F. App'x 911 (6th Cir.
2013) ......................................................................................................................................20

*Heyne v. Metro. Nashville Pub. Sch.*,
655 F.3d 556 (6th Cir. 2011) .................................................................................................21

*Humphrey v. Mabry*,
482 F.3d 840 (6th Cir. 2007) .................................................................................................21

*Hunter v. Bryant*,
502 U.S. 224 (1991).............................................................................................................21

*Johnson v. Cty. of Macomb*,
No. 08-10108, 2008 WL 2064968 (E.D. Mich. May 13, 2008) ...............................................33

*Johnson v. Operation Get Down*,
2013 WL 4041868 (E.D. Mich. Aug. 8, 2013) ........................................................................28

*Jones v. Natural Essentials, Inc.*,
    740 F. App'x 489 (6th Cir. 2018) ........................................................14

*K.S. v. Detroit Pub. Sch.*,
    130 F. Supp. 3d 1073 (E.D. Mich. 2015)...............................................24

*Kollaritsch v. Michigan State Univ. Bd. of Trustees*
    944 F.3d 613 (6th Cir. 2019) ..............................................15, 17, 18, 19

*Kowalski v. Michigan State Univ.*,
    2021 WL 5568044 (W.D. Mich. Feb. 24, 2021)..............................13, 19

*Lanman v. Hinson*,
    529 F.3d 673 (6th Cir. 2008) ................................................................21

*Lillard v. Shelby Cty. Bd. of Educ.*,
    76 F.3d 716 (6th Cir. 1996) ..................................................................24

*Lipian v. Univ. of Michigan*,
    453 F. Supp. 3d 937 (E.D. Mich. 2020)................................................18

*Llewellyn-Jones v. Metro Prop. Grp., LLC*,
    22 F. Supp. 3d 760 (E.D. Mich. 2014)..................................................33

*Major v. Vill of Newberry*,
    892 NW2d 402 (2016) ..........................................................................30

*McCahan v. Brennan*,
    822 N.W.2d 747 (2012) ........................................................................28

*McNulty v. Reddy Ice Holdings*,
    2009 WL 1508381 (E.D. Mich. May 29, 2009) *rev'd on other grounds* 2009
    WL 2168231 (E.D. Mich. July 17, 2009) ..............................................10

*Mertik v. Blalock*,
    983 F.2d 1353 (6th Cir. 1993) ..............................................................25

*Mezibov v. Allen*,
    411 F.3d 712 (6th Cir. 2005) ................................................................22

*Mitan v. Neiman Marcus*,
    613 N.W.2d 415 (2000) ........................................................................32

*Mitchell v. Chapman*,
    343 F.3d 811 (6th Cir. 2003) ................................................................13

*Nair v. Oakland Cty. Cmty. Mental Health Auth.*,
    443 F.3d 469 (6th Cir. 2006) ................................................................10

*New Albany Tractor v. Louisville Tractor,*
  650 F.3d 1046 (6th Cir. 2011) ..................................................................11

*Nixon v. Wilmington Trust Co.,*
  543 F.3d 354 (6th Cir. 2008) ....................................................................10

*Odom v. Univ. of Mich.,*
  No. 16-12791, 2017 WL 2117978 (E.D. Mich. May 16, 2017) ..............10

*Pahssen v. Merrill Cmty. Sch. Dist.,*
  668 F.3d 356 (6th Cir. 2012) ....................................................................16

*Paul v. Davis,*
  424 U.S. 693 (1976) ..................................................................................24

*Pena v Ingham Co Rd Com'n,*
  660 NW2d 351 (2003) ..........................................................................29, 30

*Quinn v. Shirey,*
  293 F.3d 315 (6th Cir. 2002) ....................................................................25

*Rapp v. Putman,*
  644 F. App'x 621 (6th Cir. 2016) (Section 1983) ....................................12

*Reeder v. Cty. of Wayne,*
  177 F. Supp. 3d 1059 (E.D. Mich. 2016)..................................................32

*Ruff v. Runyon,*
  258 F.3d 498 (6th Cir. 2001) ....................................................................12

*Sheets v. Mullins,*
  287 F.3d 581 (6th Cir. 2002) ....................................................................21

*Sherman v. Optical Imaging Systems, Inc.*
  843 F. Supp. 1168 (E.D. Mich. 1994)......................................................14

*Siegert v. Gilley,*
  500 U.S. 226 (1991)..................................................................................24

*Smith v. Freland,*
  954 F. 2d 343 (6th Cir. 1992) ..................................................................27

*Southerland v. Hardaway Mgmt. Co.,*
  41 F.3d 250 (6th Cir. 1994) ......................................................................12

*Sprik v. Regents of Univ. of Mich.,*
  204 N.W.2d 62 (1972) ..............................................................................28

*Stoudemire v. Michigan Dept. of Corr.*,
  705 F.3d 560 (6th Cir. 2013) ............................................................21

*Taylor v Geithner*,
  703 F3d 328 (6th Cir. 2013) ............................................................31

*Taylor v. Goodson*,
  2010 WL 1544365 (W.D. Mich. Apr. 19, 2010) (Quist, J.) ..................26

*Town v Michigan Bell Telephone Co.*,
  568 NW2d 64 (1997) ......................................................................30

*United States v. Atisha*,
  804 F.2d 920 (6th Cir. 1986) ............................................................26

*Weiner v. Klais & Co.*,
  108 F.3d 86 (6th Cir. 1997) ..............................................................10

*Weisbarth v. Geauga Park District*,
  499 F.3d 538 (6th Cir. 2007) ............................................................23

*White v Dept of Transp*,
  964 NW2d 88 (2020) ......................................................................31

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989).........................................................................20

*Williams v. CSX Transp. Co.*,
  643 F.3d 502 (6th Cir. 2011) ............................................................14

*Wrench LLC v. Taco Bell Corp.*,
  36 F. Supp. 2d 787 (W.D. Mich. 1998) .........................................12, 33

**Statutes**

42 U.S.C. § 1983.............................................................................1, 20

42 U.S.C. § 2000e-5(b) ......................................................................14

42 U.S.C. § 2000e-5(e) ......................................................................13

42 U.S.C. § 12117.............................................................................14

Americans with Disabilities Act of 1990.............................................. *passim*

Title VII of the Civil Rights Act of 1964................................................1

ERISA............................................................................................10

M.C.L. 600.5805(1) ...........................................................................................................12

M.C.L. 600.6452 ...............................................................................................................12

M.C.L. 691.1410(1) ...........................................................................................................28

M.C.L. 600.6431 ...........................................................................................................27, 28

Michigan's Elliot-Larsen Civil Rights Act ....................................................... *passim*

Michigan's Persons with Disabilities Civil Rights Act ..................................... *passim*

**Court Rules**

FRCP 12(b)(1) ...................................................................................................................10

FRCP 12(f) ...............................................................................................................4, 11, 33

**Other Authorities**

29 C.F.R. § 1601.12(b) ......................................................................................................14

34 C.F.R. §106.30(a) .........................................................................................................17

34 C.F.R. § 106.45(b)(1)(iii) .............................................................................................17

## I.       INTRODUCTION

Plaintiff, Christie Poitra, is the Interim Director of the Michigan State University ("MSU") Native American Institute ("NAI"). In August 2018, MSU's Office of Institutional Equity ("OIE") received a report that Plaintiff may have experienced disability, weight, and/or sexual harassment by her then-supervisor, Defendant Norder, in violation of MSU's policies. Upon receipt of the report, OIE promptly initiated an investigation; removed Norder from Plaintiff's workspace; and took other affirmative interim measures to support and protect Plaintiff during the investigation. Upon the investigation's completion, MSU also imposed sanctions against Norder. Meanwhile, Plaintiff was promoted to the position of Interim Director and remains in this role.

Plaintiff, nonetheless, now brings this twelve-count, scattershot lawsuit against MSU and the MSU Board of Trustees (together "MSU"), and eight MSU administrators: Samuel L. Stanley, Jr., Satish Udpa, Lou Anna K. Simon, Ronald L. Hendrick, Robert Kent, Tanya Jachimiak, Quentin Tyler (together, the "Individual Defendants" and combined with MSU the "Defendants"), and Defendant Engler[1], as well as Defendant Norder. (Amended Complaint "Complt.," ECF No. 14). The Complaint alleges:

- Three violations of Title IX of the Education Amendments of 1972 ("Title IX") against MSU, including deliberate indifference, creation of heightened risk, and retaliation. (Counts I-III);

- First Amendment Retaliation under 42 U.S.C. § 1983 ("Section 1983") against MSU and Defendant Tyler. (Count IV);

- Sex Discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") against MSU. (Counts V-VI);

- Disability discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), and Section 504 of the Rehabilitation Act ("Section 504") against MSU (Counts VII-VIII);

---

[1] Upon information and belief, Defendant Engler has not been served in this matter.

1

- Denial of substantive and procedural due process by all Individual Defendants, Engler, and Norder in their individual capacities under Section 1983, the Fifth Amendment, and the Fourteen Amendment. (Count IX);

- Denial of equal protection based on Plaintiff's gender (female) and/or race (Native American) under Section 1983 and the Fourteen Amendment against all Individual Defendants, Engler, and Norder (Count X);

- Sex discrimination and retaliation under Michigan's Elliot-Larsen Civil Rights Act ("ELCRA") against MSU, Individual Defendants, Engler, and Norder (Count XI); and

- Disability discrimination and retaliation under Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA") against MSU, Individual Defendants, Engler, and Norder (Count XII).

In large part, Plaintiff's lawsuit takes issue with the length of her OIE investigation, despite not identifying any right of hers – statutory, constitutional, or otherwise – to have been violated in that regard.  Indeed, challenging the length of an OIE investigation is not a viable legal claim.  And OIE provided her interim support measures and an evidentiary hearing.  What's more, according to her own amended complaint, Plaintiff did not experience additional harassment by Norder after initiation of the investigation.

Plaintiff additionally alleges that she has been discriminated against and retaliated against in her employment. Yet, she admits she has received nothing but promotions throughout her time at MSU and does not point to any materially adverse action that she has endured. Furthermore, Plaintiff's claims are barred by the applicable statutes of limitations and suffer from detrimental pleading deficiencies described below.  And while she points to alleged pay discrepancies between her and other Chairs and Department heads, Plaintiff cannot point to any similarly-situated Interim Director who has been treated more favorably than her in any respect.

### *Statute of Limitations*

Plaintiff filed an EEOC charge in April 2021. Plaintiff, however, failed to file that charge within 300 days of the alleged injury giving rise to a claim under Title VII or the ADA.

Accordingly, her Title VII and ADA claims are time-barred (Counts V-VII).

The remainder of Plaintiff's claims are subject to three-year statutes of limitations and, accordingly, any and all claims that had accrued as of January 9, 2019 are time-barred. As such, Plaintiff's Title IX heightened risk claim (Count II) is untimely because any "risk" created, as alleged, would have been known prior to, or at least at the onset of, her own OIE investigation in 2018. Her Section 504 claim is similarly timed-barred in its entirety as it only asserts a failure to mediate Defendant Norder's conduct from August of 2018. (Count VIII). Plaintiff's Title IX, ELCRA, PWDCRA, and Section 1983 claims are also time-barred for any conduct that occurred prior to the applicable three-year statute of limitations period. (Counts I-IV, IX, X, XI, and XII).

### Title IX Deliberate Indifference Claim

Count I asserts a claim for "Deliberate Indifference" under Title IX. Count I should be dismissed because Plaintiff does not plausibly plead that MSU's response amounted to deliberate indifference and because Plaintiff did not experience actionable sexual harassment after MSU had actual notice of the earlier alleged harassment.

### Section 1983 Claims

Each of Plaintiff's three Section 1983 claims fail as to all Defendants and should be dismissed because: (a) absolute immunity bars all Section 1983 claims against MSU; (b) qualified immunity bars the Section 1983 claim against the Individual Defendants; (c) Plaintiff did not engage in protected speech; (d) Plaintiff cannot identify any deprivation of her bodily integrity; (e) Plaintiff cannot establish any property interest right to her reputation or advancement in career that was deprived; (f) plaintiff has not identified any right for which process was due, and if she did, she was provided procedural due process; and (g) Plaintiff fails to plead the essential elements of an equal protection claim because she has not demonstrated that she was treated differently than

3

a similarly-situated individual outside her protected class.

### *State Law Claims*

Next, Plaintiff's failure to comply with the strict notice requirements in the Court of Claims Act bars her state law claims against MSU. Moreover, Plaintiff does not plausibly plead that she suffered an adverse employment action or disparate treatment compared to a similarly-situated individual, dooming her ELCRA and PWDCRA discrimination claims. Her ELCRA retaliation claim also fails as to all but one Defendant at this time. Her PWDCRA retaliation claim fails in its entirety as she has not identified any Individual Defendant who had knowledge of her disability, and even if she did, the claim fails as to all Individual Defendants except one at this time.

### *Motion to Strike*

Within her prolix, 629-paragraph amended complaint, Plaintiff sets forth at least eighty-seven allegations which are completely immaterial to her claims – indeed they do not relate to Plaintiff at all, but rather to *other* individuals who have participated in separate OIE investigation. These allegations do not serve to understand her claims, but rather to place a spotlight on exploitive, immaterial matters, at the expense of the experiences of other individuals. These allegations are precisely the type that FRCP 12(f) contemplates, and they should be stricken.

Although lengthy, Plaintiff's first amended complaint in most respects does not plead viable claims. Thus, this Court should properly narrow this litigation to the appropriate time period, parties, and claims.  Consequently, most of Plaintiff's Amended Complaint must be dismissed, including specifically: Counts I, II, IV, V-X and XII in their entirety as to all Defendants; Count XI as to all Defendants as it concerns Plaintiff's ELCRA discrimination claim; and as to all Defendants (but for Defendant Tyler) as it concerns her ELCRA retaliation claim.

## II.      STATEMENT OF THE FACTS[2]

### A.      Plaintiff's Employment with MSU

In October 2015, Plaintiff started her employment with MSU's NAI. (Complt., ¶1). Plaintiff identifies as Latina-Native American and additionally has a disability for which she is provided accommodations through MSU's Resource Center for Persons with Disabilities. (*Id.* ¶¶69, 108). She is currently the Interim Director of the NIA, a position she has held since February 28, 2019. (*Id.* ¶266).

### B.      MSU's OIE Investigation into Plaintiff's Report of Harassment

On August 9, 2018, MSU's OIE received a report of potential weight, disability, and/or sexual harassment by John Norder against Plaintiff. (*Id.* ¶153). The conduct reported required investigation under MSU's Relationship Violence and Sexual Misconduct ("RVSM") Policy and Anti-Discrimination Policy ("ADP"). (*Id.* ¶¶239-240). OIE promptly initiated an investigation, starting with an interview of Plaintiff. (*Id.* ¶¶146-147). Plaintiff was informed about the investigative process and the availability of interim measures. (*Id.*)

Following a thorough investigation, OIE issued a preliminary investigation report on January 2, 2019. (*Id.* ¶178). OIE deemed the investigation eligible for a live hearing and a notice of hearing was issued on August 20, 2019. (¶¶196, 198). OIE conducted an evidentiary hearing on January 20, 2020. (*Id.* ¶202). On February 17, 2020, the hearing officer issued a final determination concluding that a preponderance of the evidence supported a finding of harassment under the RVSM Policy but did not support a finding of weight or disability harassment under MSU's ADP. (*Id.* ¶209).

---

[2] For the purposes of this Motion only, Defendants assume – as they must under Rule 12(b)(6) – that the facts alleged in the Complaint are true.

**C.      Interim Measures and Sanctions Imposed By MSU**

Based on OIE's findings, on April 22, 2020, MSU imposed sanctions on Norder, including: (1) a four week suspension without pay; (2) ineligibility to hold any administrative position at MSU for five years; (3) a permanent no-contact directive between Norder and Plaintiff as long as they both were employed by MSU; and (4) the requirement that Norder attend mandatory training regarding the RVSM Policy. (*Id.* ¶¶245, 247-248).

Throughout the investigation, MSU also provided Plaintiff robust interim measures designed to support and protect Plaintiff and preserve the rights of both parties. Specifically, Norder was: (1) told to work from home as of August 17, 2018; (2) issued a no contact directive on or about August 17, 2018; (3) removed from his position as Director of NAI as of September 2018; and (4) placed on administrative leave on September 24, 2018. (*Id.* ¶¶154, 161, 162, 171, 176, 222).

**D.      Norder's Alleged Violations of the Interim Measures**

Plaintiff alleges that Norder failed to adhere to the no contact directive. Specifically, Plaintiff alleges Norder contacted her concurrently on or about August 17, 2018 via phone, email, and text.  (*Id.* ¶¶168-69). Thereafter, Norder was promptly reminded of the no contact directive on August 20 and 21, 2018. (*Id.* ¶¶176, 178). On November 6, 2019, Norder tagged Plaintiff in an academic article online. (*Id.* ¶205). On November 18, 2019, Plaintiff received notice and a reminder of the no contact directive in effect between the parties and was informed that Norder received the same notice. (*Id.* ¶211).

Plaintiff's amended complaint notes significant concern that *she* was issued a no contact directive, and her attorney contacted Defendant Kent (the then-Title IX Coordinator) and MSU's General  Counsel about it. (*Id.* ¶¶213-214). Kent responded to her email promptly, directing Plaintiff and her counsel to the OIE investigator, who responded to her concerns and provided a

6

complete explanation concerning all no contact orders issued. (*Id.* ¶¶216, 218).

Otherwise, Plaintiff alleges that: (1) the OIE investigation took too long; (2) at the legally-required live hearing, Plaintiff felt harassed by certain questions asked by Norder's attorney during the hearing related to her report of misconduct; and (3) on February 14, 2020, her attorney spoke before the Board of Trustees requesting a final decision in Plaintiff's OIE matter. (*Id.* ¶¶205, 237, 279-280).

**E.    Plaintiff's Allegations Regarding Her Role as Interim Director of NAI**

Plaintiff was promoted to Interim Director of NAI during the pendency of OIE's investigatory process in February 2019. (*Id.* ¶ 266). In this role, she reported to Defendant Tyler, the then-Associate Dean and Director for Diversity, Equity and Inclusion. (*Id.* ¶161). Plaintiff alleges that she received less pay, resources, and staffing than her male predecessor and other Directors in the role. (*Id.* ¶¶261-262, 271). Further, she alleges that she was excluded from Chair meetings from February of 2019 through March of 2020, when she asked to be included in the meetings and was included in the meetings thereafter. (*Id.* ¶¶285, 287).  Plaintiff also alleges that she was not invited to research meetings hosted by the Associate Dean of Research. (¶288). Finally, she generally notes concern that she has not been named Director of the Department and that no national search for the role has been undertaken as proposed by Defendant Hendrick, former Dean of the College of Agriculture and Natural Resources ("CANR"). (¶269).

In or around July 2021, Dr. Kelly Millenbah was appointed Interim Dean of CANR and she informed Plaintiff to report to Scott Loveridge (Assistant Dean for Faculty Affairs and Development) moving forward. (*Id.* ¶¶80, 343).  Plaintiff alleges that Loveridge utilized racial epithets in communications with Plaintiff that she did not appreciate, that she reported concerns to Millenbah, and that Millenbah counseled Plaintiff to communicate with Loveridge about her

concerns directly. (*Id.* ¶¶347-349).

**F.     Plaintiff's Allegations Concerning the Individual Defendants**

*1.     Defendant Tyler*

Plaintiff's allegations against Tyler all relate to her disagreements with how he supervised her in his capacity as an Associate Dean and Director for Diversity, Equity, and Inclusion for CANR. Generally, Plaintiff alleges that she reported certain concerns to Defendant Tyler and was dissatisfied with his response to those concerns. For example, Plaintiff alleges that Norder moved furniture within the NAI Office and that she did not receive adequate assistance in reassembling the office. (*Id.* ¶¶173-74). Plaintiff requested a new desk, and alleges Defendant Tyler did not provide adequate assistance with the new desk or removing Norder's former desk and his personal belongings. (*Id.* ¶¶189; 193-194).  In August 2021, when he was no longer her supervisor, Plaintiff also informed Tyler that she did not want to handle a concern with an NAI grant project that started under Defendant Norder. (*Id.* ¶¶350, 353). Otherwise, Plaintiff alleges in this regard:

- In March of 2020, she reported that she was being excluded from Chair meetings but was included in the meetings thereafter. (*Id.* ¶¶285, 287).

- On November 18, 2019, Tyler relayed to Claimant that a mutual no contact directive was issued to her and Norder.  (*Id.* ¶211).

- In 2019 through June of 2021, Plaintiff approached Tyler on a few occasions to discuss her salary and a need for additional staff and he relayed the concern to Hendrick. (*Id.* ¶¶277-278, 326).

- In early 2020 and in May 2021 (then Tyler was no longer within the CANR) Tyler allegedly threatened to restructure, transfer or eliminate NAI from CANR. (*Id.* ¶¶294, 309).

- Tyler did not inform Plaintiff that MSU allowed for early release before holidays or about college-level research meetings that were available to her throughout the pandemic. (*Id.* ¶¶336-337).

### 2.      *Defendant Hendrick*

Plaintiff's only allegations concerning Defendant Hendrick are that he: (1) informed her there would be a national search for the NAI Director position (*id.* ¶267); and (2) wanted to wait until after the OIE investigation process finalized prior to making any hiring or staffing decisions concerning the NAI. (*Id.* ¶278). Plaintiff admits Hendrick praised her performance during this time period, including during his Spring 2021 commencement speech; and she admits that she was promoted under his direction. (*Id.* ¶¶266, 298).

Otherwise, Plaintiff's allegations vis-à-vis Hendrick generally relate to her alleged concerns related to her attendance at meetings, her salary, and the staffing and resources provided to her, which she alleges were disregarded. (*Id.* ¶¶286, 292).

### 3.      *Defendant Kent*

Plaintiff alleges that on November 18, 2019, her attorney contacted Defendant Kent (then the Title IX Coordinator) requesting an understanding as to whether there was a no contact order in place against Plaintiff and to clarify whether any additional investigations were pending of which Plaintiff was not aware. (*Id.* ¶214). Kent responded to the email, directing her to the proper individual to respond – the investigator handling the matter. (*Id.* ¶216). Otherwise, Plaintiff does not set forth a single allegation with regard to Defendant Kent that relates to her, other than the fact he was the Title IX Coordinator from June 18, 2018 through February 2, 2020. (*Id.* ¶24).

### 4.      *Defendants Simon, Upda, and Stanley, Jr.*

Other than name the Presidents of MSU for the period of 2018 to present, Plaintiff does not set forth *any* factual allegations concerning them. (*Id.* ¶568).

### 5      *Defendant Jachimiak*

Jachimiak was MSU's Title IX Coordinator from February 3, 2020 to October 1, 2021. (*Id.*

¶25). Otherwise, Plaintiff names Jachimiak simply to speculate about her current administrative leave. (*Id.* ¶426).

### G.    Plaintiff's EEOC Charge

Plaintiff alleges that her Amended Complaint is timely and that she has exhausted her administrative remedies.  Plaintiff does not indicate *when* she filed a charge with the EEOC in her Complaint, but it is dated April 7, 2021. (**Exhibit 1**).[3]  Plaintiff received a right-to-sue letter on January 7, 2021. (**Exhibit 2**).

## II.    ARGUMENT

### A.    Standard of Review

#### 1.    Motion to Dismiss, FRCP 12(b)(1)

MSU moves to dismiss Plaintiff's Complaint, in part, on grounds of sovereign immunity. "A motion to dismiss on the ground that sovereign immunity bars the plaintiff's claims is properly treated as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)." *Odom v. Univ. of Mich.,* No. 16-12791, 2017 WL 2117978, at *2 (E.D. Mich. May 16, 2017); *see also Nair v. Oakland Cty. Cmty. Mental Health Auth.,* 443 F.3d 469, 476 (6th Cir. 2006). Plaintiff bears the burden of establishing jurisdiction. *Odom,* 2017 WL 2117978, at *2.

#### 2.    Motion to Dismiss, FRCP 12(b)(6)

---

[3] When reviewing motions under Rule 12(b)(6), "a court may consider a document not formally incorporated by reference in a complaint when the complaint refers to the document and the document is central to the claims." *Nixon v. Wilmington Trust Co.*, 543 F.3d 354, 357 n2 (6th Cir. 2008); *Weiner v. Klais & Co.*, 108 F.3d 86, 88-90 (6th Cir. 1997) (relying on plan documents in ERISA case); *McNulty v. Reddy Ice Holdings*, 2009 WL 1508381, at *6 (E.D. Mich. May 29, 2009) *rev'd on other grounds* 2009 WL 2168231 (E.D. Mich. July 17, 2009) (By "revealing only those portions that help [her] case, while hiding those which clearly are relevant and applicable, Plaintiff has put the [document] in play.") Each attached document is appropriately considered on a motion to dismiss, as Plaintiff expressly mentions them in her Amended Complaint. (Complt., ¶¶156, 447).

To survive a motion to dismiss, Plaintiff must assert sufficient factual allegations to establish that her claims are "plausible on [their] face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Following the two-step process set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), courts first disregard "mere recitals of the elements of a cause of action, supported by mere conclusory statements." Thus, allegations based upon "information and belief" are insufficient because they "are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told [courts] to ignore when evaluating a complaint's sufficiency." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013). Second, courts review any remaining allegations to determine whether they "plausibly" entitle the plaintiff to relief. 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 567). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting FRCP 8(a)(2)).

The Sixth Circuit has explained that "the combined effect of *Twombly* and *Iqbal* require [a] plaintiff to have greater knowledge now of factual details in order to draft a 'plausible complaint.'" *New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046, 1051 (6th Cir. 2011). In other words, a "plaintiff may not use the discovery process to obtain these facts after filing suit." *Id.* Accordingly, a complaint that does not provide the "when, where, in what or by whom" to support conclusory allegations fails to state a claim. *Center for Bio-Ethical Reform v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011).

### 3.     Motion to Strike, FRCP 12(f)

The Court may "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FRCP 12(f). A court has "liberal

discretion" to strike such filings as it deems appropriate. *Wrench LLC v. Taco Bell Corp.,* 36 F. Supp. 2d 787, 789 (W.D. Mich. 1998).  Specifically, a motion to strike should be granted where, as here, the complaint contains immaterial allegations that have no bearing on the subject matter of the litigation. *Id.*

## B.    Many of Plaintiffs' Claims Are Barred by the Applicable Statutes of Limitations

Plaintiff's claims are mostly time-barred.  First, Plaintiff's Title IX,  Section 1983, Section 504, ELCRA, and PWDCRA claims are each subject to a three-year statute of limitations. M.C.L. 600.5805(1); M.C.L. 600.6452; *Forrester v. Clarenceville Sch. Dist.,* 537 F. Supp. 3d 944, 950 (E.D. Mich. 2021)(Title IX); *Rapp v. Putman*, 644 F. App'x 621, 625 (6th Cir. 2016) (Section 1983); *Southerland v. Hardaway Mgmt. Co.,* 41 F.3d 250, 251 (6th Cir. 1994) (Section 504). A claim accrues, and thus the limitations period starts to run, on the date when the plaintiff knew, or through reasonable diligence should have known, of an injury giving rise to her cause of action. *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001).

As such, Plaintiff's Title IX, Section 1983, ELCRA, and PWDCRA claims are all untimely to the extent the injury giving rise to Plaintiff's claim accrued prior to January 19, 2019. Importantly, this includes, and is not limited to, *any* conduct by Defendant Norder that necessitated the initiation of OIE's investigation, the OIE investigatory process through the finalization and issuance of the preliminary investigative report (issued January 2, 2019), and any claims based on Plaintiff's concern regarding the length of the OIE process and its procedures.

### 1.    Plaintiff's Title IX Heightened Risk Claim is Time-Barred (Count II)

Plaintiff alleges that MSU created a heightened risk of sex discrimination through a lack of timeliness in and training of its Title IX investigation process. Notably, the Sixth Circuit has not yet recognized a heightened risk theory of liability under Title IX. See *Garrett, et al., v. The Ohio State Univ., ,* 2021 WL 7186147, at *8 (S.D. Ohio Sept. 22, 2021). Rather, the Sixth Circuit

has held that a Title IX "claim cannot be premised on a school's failure to address the risk of sexual harassment based on past incidents of sexual harassment against students other than the plaintiff." *Kowalski v. Michigan State Univ.*, 2021 WL 5568044, at *2 (W.D. Mich. Feb. 24, 2021) citing *Kollaritsch v. Michigan State Univ. Bd. of Trustees* 944 F.3d 613, 621-22 (6th Cir. 2019).

Even so, Plaintiff's claim is time-barred because it necessarily requires a showing that MSU had already created a deliberately indifferent environment to harassment *prior to* Plaintiff's own report of harassment in August of 2018. *Garrett*, 2021 WL 7186147, at *8. Plaintiff alleges this purported culture was created as early as 2015, based on faculty members remaining employed at MSU after reports of misconduct and by MSU's response to misconduct by Larry Nassar after September 2016. (Complt. ¶¶392, 396, 461). Here, as in *Garrett*, "general knowledge" concerning the Nassar litigation and investigations derived therefrom "is enough to have put Plaintiff[] on notice," at the latest, at the beginning of her own OIE investigation (August 2018), barring Plaintiff's claim filed more than three years later. *Id.*

> 2.      **Plaintiff's Section 504 Claim is Time-Barred (Count VII)**

Plaintiff's Section 504 claim alleges that MSU did not take sufficient remedial action to Plaintiff's complaint of disability discrimination. According to Plaintiff, MSU became aware of Defendant Norder's alleged disability discrimination in August 2018 and it initiated an investigation thereafter (on August 8, 2018). Any alleged injury sufficient to state a claim under Section 504 would have accrued prior to or upon OIE's investigation in August 2018 – outside the three-year limitations period.

> 3.      **Plaintiff's Title VII and ADA Claims are Time-Barred Due to Her Failure to Timely Exhaust Administrative Remedies (Counts V - VII)**

Under Title VII, a claim for discrimination or retaliation can proceed in federal district court only after administrative remedies are exhausted. 42 U.S.C. § 2000e-5(e); *Mitchell v.*

13

*Chapman*, 343 F.3d 811, 820 (6th Cir. 2003). "It is well settled that a plaintiff must satisfy two prerequisites before filing a Title VII action in federal court: (1) timely file a charge of employment discrimination with the EEOC; and (2) receive and act upon the EEOC's statutory notice of the right to sue." *Granderson v. Univ. of Michigan*, 211 F. App'x 398, 400 (6th Cir. 2006). The EEOC charge "shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires." 42 U.S.C. § 2000e-5(b). The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b); *Williams v. CSX Transp. Co.*, 643 F.3d 502, 508 (6th Cir. 2011).

An employee seeking to bring a claim under the ADA must also first file a charge with the EEOC within 300 days of the alleged discrimination. *Jones v. Natural Essentials, Inc.*, 740 F. App'x 489, 492 (6th Cir. 2018); *Sherman v. Optical Imaging Systems, Inc.* 843 F. Supp. 1168, 1180-81 (E.D. Mich. 1994); 42 U.S.C. § 12117.

Plaintiff filed her EEOC charge on April 7, 2021 (Exhibit 1), alleging only sex and disability discrimination.  Further, her charge relates to: (1) Defendant Norder's conduct from November 2015 through the initiation of her OIE investigation in August of 2018; and (2) MSU's alleged failure to comply with federal regulations, guidance, and institutional policies and procedures in relation to the investigation into Norder. *Id.* 300 days prior to April 7, 2021 was June 11, 2020 – *months after Plaintiff's OIE investigation was complete* in February of 2020. Accordingly, these claims are time-barred.

Further, Plaintiff's EEOC charge does not identify *any* actions by any of the Defendants that are pled in Count V of the Amended Complaint concerning her role as NAI Director, her pay, her exclusion from meetings, or MSU's treatment of NAI. Additionally, the EEOC charge does not allege retaliation. Plaintiff cannot plausibly argue that these claims would have reasonably

been expected to "grow out of the charge of discrimination" she filed specifically where, as here, they "did not *in fact* grow out of the investigation." *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 464 (6th Cir. 1998) (emphasis original). Accordingly, Plaintiff has failed to exhaust her administrative remedies as to any other allegations related to her Title VII and ADA claims. As she has not done so, these claims must be dismissed.

**C.     Plaintiff Does Not State a Plausible Deliberate Indifference Title IX Claim [Count I]**

Plaintiff has not shown that MSU acted with deliberate indifference upon notice of her concerns of misconduct. Harassment creates a cause of action under Title IX only in "limited circumstances." *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.,* 526 U.S. 629, 643 (1999). Such claims may be based only on the funding recipient's "decision to remain idle in the face of known . . . sexual harassment." *Id.* at 641, 645-46. In other words, a funding recipient may only be liable for **its own conduct**, through its response to actually known harassment, and it cannot be liable for third-party conduct. *Id.* To state a claim of deliberate indifference:

> [P]laintiff must plead, and ultimately prove, an incident of actionable sexual harassment, the school's actual knowledge of it, some further incident of actionable sexual harassment, that the further actionable harassment would not have happened but for the objective unreasonableness (deliberate indifference) of the school's response, and that the Title IX injury is attributable to the post-actual-knowledge further harassment.

*Kollaritsch v. MSU Bd. of Trustees*, 944 F.3d 613, 623–24 (6th Cir. 2019).  Critically, where, as here, a plaintiff cannot demonstrate that she suffered "actionable sexual harassment *after* the school's response," deliberate indifference cannot be found. *Id.* at 618-22 (emphasis original). And in such a case, "Deliberate indifference in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to sexual abuse." *Doe v. Claiborne Cty., Tenn.,* 103 F.3d 495, 508 (6th Cir. 1996).

**1.     Plaintiff Cannot Establish that MSU's Response was Clearly Unreasonable**

Plaintiff's Title IX deliberate indifference claim is based on her disagreement with how the investigation was conducted, its length, and the manner in which MSU remedied the harassment by Norder that was reported. To the extent this claim is not time-barred in its entirety, her subjective disagreement is additionally insufficient to state a claim under Title IX.[4]

In *Davis*, the Supreme Court rejected the idea that victims "have a Title IX right to make particular remedial demands" or "second-guess[] the disciplinary decisions made by school administrators." 526 U.S. at 648; *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 365 (6th Cir. 2012). Instead, the Court in *Davis* underscored the discretion schools have when responding to harassment, concluding that deliberate indifference exists "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 523 U.S. at 648. Determining particular interim measures "is precisely the type of disciplinary decision that falls within the discretion of local school officials." *Pahssen*, 668 F.3d at 365.

MSU promptly initiated an OIE investigation and immediately imposed interim measures. *Stiles ex rel. D.S. v. Grainger Cty., Tenn.,* 819 F.3d 834, 848 (6th Cir. 2016) (no deliberate indifference where "school investigated promptly" and "took proactive steps to reduce opportunities for future harassment"). As Plaintiff asserts, MSU placed Norder on leave, removed him from his position as Plaintiff's superior, issued a no contact directive, and reiterated the requirements of the no contact directive upon notice from Plaintiff that it had been violated. She further acknowledges that, at the conclusion of its investigation, MSU issued sanctions against Norder.

---

[4] Plaintiff's alleged "injury" here is MSU's investigatory process into her complaint of harassment, which was initiated six months *prior* to the applicable limitation period. Plaintiff also certified in her EEOC Charge that she believed MSU failed to follow proper regulations and procedures as early as November 19, 2018 – again, outside of the limitations period.

Plaintiff seems to now disagree with the precise interim measures and sanctions implemented, alleging the effects of Norder's actions were not "fully remedied," and generally that the investigation took too long to come to finality.  However, Supreme Court precedent does not permit Plaintiff to pick-and-choose the interim measures or sanctions. *See, e.g.*, *Davis*, 526 U.S. at 648. MSU exercised its discretion, balancing the need to protect Plaintiff with the alleged harasser's rights. *Kollaritsch*, 944 F.3d at 627 (holding one individual's "demand for a quick response to her harassment complaint will conflict with the alleged harasser's demand for due process," putting the school in a position where it is "beset with litigation from every side" and "school administrators face the unenviable task of balancing victims' understandable anxiety with their attackers' rehabilitation.") Second-guessing the MSU's determinations in that regard is not a viable legal claim, especially where, as here, Plaintiff's Amended Complaint shows no further actionable harassment having occurred after the interim measures were implemented.[5] *Id.*

**2.    Plaintiff Cannot Establish that She Experienced Actionable Harassment Once MSU Had Actual Notice**

Two recent Sixth Circuit decisions make plain that Plaintiff has no viable claim of deliberate indifference. Where a plaintiff does not demonstrate that she suffered "actionable sexual harassment *after* the school's response," there cannot be a finding of deliberate indifference. *Kollaritsch*, 944 F.3d at 618 (emphasis in original). "Even lengthy delays, for no good reason, will

---

[5] Plaintiff also appears to allege MSU failed to reasonably train its investigators and its hearing officer citing to 34 C.F.R. § 106.45(b)(1)(iii), which requires that training be provided to Title IX investigators and decision makers. But this requirement does not give rise to a private cause of action and did not come into effect until August of 2020 – months *after* Plaintiff's OIE investigation was complete. Notably, Plaintiff argues that imposing a no contact directive against her was unreasonable, even though the same Title IX regulations to which Plaintiff cites expressly require "**mutual** restrictions on contact between the parties" in its definition of "supportive measures." 34 C.F.R. §106.30(a) (emphasis added).

not violate Title IX if harassment did not continue." *Lipian v. Univ. of Michigan*, 453 F. Supp. 3d 937, 961 (E.D. Mich. 2020) (citing *Karasek v. Regents of the Univ. of California*, 948 F.3d 1150, 1166 (9th Cir. 2020) (plaintiff did not have a cause of action where the university delayed disciplinary proceedings for over eight months)). This well-settled principle requires dismissal of Plaintiff's claim.

*Kollaritsch* is remarkably instructive. There, a plaintiff reported that a male student had sexually assaulted her, an investigation was conducted, a no contact directive imposed, and ten months after the investigation, the university made a finding, placed the respondent on probation, and extended the no contact directive. *Id.* at 624. The plaintiff alleged that she subsequently "encountered" the perpetrator at least nine times. Analyzing these facts, the court held that the plaintiff did not plead "further actionable sexual harassment." *Id.* There were no facts alleged to show that these encounters "were sexual, or that they were severe, pervasive, or objectively unreasonable." *Id.* That the plaintiff characterized the interactions as "stalking, harassing, and intimidating" was insufficient because such "conclusory statements, without supporting facts, are meaningless." *Id.*

More recently, in *Doe v. University of Kentucky*, 959 F.3d 246 (6th Cir. 2020), the plaintiff alleged that the institution was deliberately indifferent because of several post-assault interactions with her assailants. *Id.* at 249. These interactions included the assailant "look[ing] right at [her]" or "habitually [sitting] in her vicinity at the library, forcing her to leave." *Id*. The Sixth Circuit held that "[n]othing about these allegations, however, suggest sexual harassment, let alone sexual harassment that is of a severe, pervasive, and objectively offensive nature." *Id.* at 252.

*Kollaritsch* and *University of Kentucky* are on point, instructive, and controlling. Plaintiff alleges that after the initiation of OIE's investigation, Norder contacted her at the start of the

investigation in August 2018 and a second time, on November 6, 2019, when he tagged Plaintiff

in an academic article. (Complt., ¶¶168-69, 205). Plaintiff admits MSU counseled Norder about

the no contact directive promptly after each occurrence. (*Id.* ¶¶176, 178, 211). That Norder

contacted Claimant on two separate occasions does not satisfy the "further actionable harassment"

requirement, particularly in the absence of any facts that these encounters were sexual, severe, or

pervasive. *Kollaritsch*, 944 F.3d at 624. *See also id.* at 625 (respondent's "mere presence" is

insufficient); *M.D. ex rel. Deweese v. Bowling Green Indep. Sch. Dist.*, 709 F. App'x 775, 778

(6th Cir. 2017) (no further actionable harassment where victim saw the perpetrator "in the hallway

and at a handful of school events").

In short, Plaintiff does not plausibly allege that the alleged harasser engaged in continued

sexual harassment that is severe, pervasive, or objectively offensive. "[T]hese missing pieces doom

[Plaintiff's] case," and Plaintiff's Title IX deliberate indifference claim should be dismissed.

*Gordon v. Traverse City Area Pub. Sch.*, 686 F. App'x 315, 325 (6th Cir. 2017).[6]

**D.    Plaintiff's Section 1983 Claims Fail as a Matter of Law (Counts IV, IX, and X)**

Plaintiff brings three separate claims under Section 1983, including: First Amendment

Retaliation Claim (MSU, Tyler; Count IV); Fifth and Fourteenth Amendment Due Process Claim

(All Individual Defendants in their individual capacities; Count IX)); and Fourteenth Amendment

Equal Protection Claim (All Individual Defendants in their individual capacities; Count X)).

To state a claim under Section 1983, Plaintiff must allege that a "person" acting under color

---

[6] To the extent Plaintiff is alleging that she experienced harassment by Loveridge, Plaintiff indisputably pleads that Loveridge's statements included *racial* epithets and, therefore, cannot show that she experienced additional sexual harassment as required to state a claim under Title IX. Further, MSU cannot be found to have been deliberately indifferent if the continued harassment was not by the same individual. See e.g., *Kowalski,* 2021 WL 5568044, at *2 (W.D. Mich. Feb. 24, 2021).

of state law violated a right provided to her by the United States Constitution. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). "[T]he existence of a constitutional right must be the threshold determination in any section 1983 claim." *Doe v. Claiborne County*, 103 F.3d 495, 509 (6th Cir. 1996).

### 1.    Section 1983 Claims Are Not Viable Against MSU

The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989) (affirming *Smith v. Dep't of Pub. Health,* 428 Mich. 540, 410 N.W.2d 749 (1987)); *see also Heike v. Guevara,* 654 F. Supp. 2d 658, 672 (E.D. Mich. 2009) (explaining that State employees sued in their official capacities "are not 'persons' within the meaning of § 1983"), *aff'd*, 519 F. App'x 911 (6th Cir. 2013). Likewise, "Michigan State University is an arm of the state of Michigan, and it is therefore not considered a 'person' for purposes of § 1983." *Gardner v. Mich. State Univ. Bd. of Trs.,* No. 1:12-CV-1018, 2014 WL 558818, at *5 (W.D. Mich. Feb. 11, 2014) (holding plaintiff could not maintain Section 1983 claim against MSU); *see also Hill,* 182 F. Supp. 2d at 625 ("[A]s a state entity, MSU is not a 'person' subject to suit for damages under § 1983.").

Plaintiff's Count IV purports to state Section 1983 claims against MSU. Her claims are not cognizable, however, and should be dismissed with prejudice.

### 2.    The Individual Defendants are Entitled to Qualified Immunity Because Plaintiff Fails to Sufficiently Plead Any Action By the Individual Defendants Sufficient to State a Section 1983 Claim

The Individual Defendants are immune from claims brought against them in their individual capacities, so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Clemente v. Vaslo,* 679 F.3d 482, 489 (6th Cir. 2012).  "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."

20

*Hunter v. Bryant,* 502 U.S. 224, 229 (1991). Once the defendant raises the defense of qualified immunity, "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Sheets v. Mullins,* 287 F.3d 581, 586 (6th Cir. 2002). To determine whether qualified immunity applies, a court must perform a two-step inquiry: (1) determine whether the facts show that the official's conduct violated a constitutional right, and (2) determine whether the right was clearly established. *Clemente,* 679 F.3d at 489. "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Gavitt v. Born,* 835 F.3d 623, 641 (6th Cir. 2016) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)).

Importantly, a plaintiff asserting a Section 1983 claim "must plead *each* Government-official defendant, through the official's *own individual actions*, has violated the Constitution," or else the defendants are granted qualified immunity. *Iqbal*, 556 U.S. at 676 (emphasis added). Accordingly, the Plaintiffs must "allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson,* 529 F.3d 673, 684 (6th Cir. 2008); *Stoudemire v. Michigan Dept. of Corr.*, 705 F.3d 560, 570 (6th Cir. 2013) ("qualified immunity must be assessed in the context of each individual's specific conduct") (quotations omitted). Blanket acts alleged against all defendants are insufficient. *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011); *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (qualified immunity applies where allegations are based on "collective" knowledge).

Plaintiff here fails to assert *any* individualized and timely conduct by the Individual Defendants that violated her constitutional rights.  In large part, Plaintiff points to the simple fact that these individuals were responsible for the general "oversight" of MSU in "ensuring that the

21

university complied with its legal obligations." (Complt., ¶¶568-70; 580-582).  This is woefully insufficient to support any of her Section 1983 claims against these individuals. Plaintiff has utterly failed to sufficiently set forth facts to support a violation of her constitutional rights by any of the Individual Defendants. As such, they are entitled to qualified immunity.

### 3. Plaintiff's First Amendment Retaliation Claim Fails (Count IV)

#### i. Plaintiff's First Amendment Retaliation Claim Against Tyler Fails Concerning Her Attorney's Alleged Protected Speech

Plaintiff alleges that she engaged in protected speech on February 14, 2020, when her attorney addressed the Board of Trustees about Plaintiff's OIE investigation. (Complt. ¶236). She then purports that Defendant Tyler retaliated against her with regard to no contact directives issued against Norder and Plaintiff (August of 2018 and November of 2019) (Complt., ¶211); by refusing to help clean Norder's desk (Spring 2019) (*Id.* ¶¶184, 189); by excluding her from meetings in 2019 through March of 2020 (*Id.* ¶283); and by failing to pay her an inequitable salary when she was promoted to Interim Director of NAI (*Id.* ¶222). Otherwise, Plaintiff claims Tyler threatened to reduce or eliminate NAI altogether starting in "early 2020". (*Id.* ¶289).  Plaintiff cannot claim events occurring *before* any communication by her attorney to the Board of Trustees was retaliatory as Plaintiff's speech must be a motivating factor in any alleged retaliatory conduct. *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.,* 624 F.3d 332, 337 (6th Cir. 2010).  Further still, Plaintiff acknowledges that she did not engage in speech at all and instead *her attorney* communicated to the Board of Trustees. *Mezibov v. Allen,* 411 F.3d 712, 719 (6th Cir. 2005) (attorney's client advocacy is not protected speech under the First Amendment).

#### ii. Plaintiff's First Amendment Retaliation Claim Against Tyler Fails Concerning Any Speech by Plaintiff

To the extent Plaintiff is alleging she was retaliated against in violation of her First Amendment rights for her report of harassment in August of 2018, Plaintiff must prove: (1) she

engaged in constitutionally protected speech; (2) the conduct by the defendant would "discourage individuals of 'ordinary firmness' from continuing to do what they were doing"; and (3) her speech was a "motivating factor" behind the employer's conduct. *Evans-Marshall,* 624 F.3d at 337 (6th Cir. 2010). Constitutionally protected speech requires that an employee "(1) must have spoken 'as a citizen,' and (2) must have 'address[ed] matters of public concern.'" *Weisbarth v. Geauga Park District*, 499 F.3d 538, 542 (6th Cir. 2007) (citations omitted).

In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications". *Id.* at 421. Filing an internal complaint falls squarely within an employee's work duties. *Harrison v. Oakland County* 612 F. Supp. 2d 848, 867 (E.D. Mich. 2009). In *Harrison*, the court held that "regardless of whether plaintiff had an explicit, formal duty to report to his supervisor about a co-worker's harassing conduct, such a report plainly is among the 'duties [the employee] actually is expected to perform'." *Id.* Similarly here, Plaintiff alleges that she internally reported sexual harassment because Norder made *her* workplace harassing. Reporting concerns of harassment is a requirement for most MSU employees, including Plaintiff. (Exhibit 3, April 2018 RVSM Policy, Section XIII.F.4)[7].  Specifically, the RVSM Policy states that "All University employees . . . are expected to promptly report relationship violence, stalking, and sexual misconduct that they observe or learn about," and "[t]he employee must report all relevant details they have about the alleged" conduct. (*Id.*) Plaintiff was not speaking "as a citizen" when she reported to, agreed to be interviewed by, OIE; but as an employee fulfilling her job responsibilities. Plaintiff has not stated a plausible First Amendment retaliation claim against any

---

[7] Plaintiff cites to this Policy in her Amended Complaint. (Complt. ¶156).

Defendant.

### 4.     Plaintiff Fails to State a Substantive or Procedural Due Process Claim (Count IX)

#### i.     *Plaintiff Does Not State a Constitutional Violation of her Bodily Integrity*

Individuals "possess a constitutional right to be free from forcible intrusions on their bodies against their will, absent a compelling state interest." *Guertin v. State*, 912 F.3d 907, 919 (6th Cir. 2019).  Plaintiff here has not alleged that there was *any* forcible intrusion on her body in any regard. A claim of harassment is utterly insufficient. See *K.S. v. Detroit Pub. Sch.,* 130 F. Supp. 3d 1073, 1082 (E.D. Mich. 2015) (no bodily integrity interest found where teacher texted student sexual comments and put his hand on the student's thigh); *Lillard v. Shelby Cty. Bd. of Educ.,* 76 F.3d 716, 726 (6th Cir. 1996) (slapping someone "even if made for no legitimate purpose," does not rise to a constitutional due process violation). Plaintiff's pleading is insufficient to establish any substantive due process violation of her bodily integrity as against any of the Individual Defendants. *K.S.*, at 1082.

#### ii.     *Plaintiff Does Not Have A Substantive Right to her Reputation or Advancement in her Career*

Plaintiff has not stated a protected interest in her reputation or in future advancement opportunities. In *Paul v. Davis*, 424 U.S. 693 (1976), the Supreme Court established that an interest in reputation, standing alone, is insufficient to implicate a protected interest. Specifically, "reputation alone, apart from some more tangible interests such as employment," is not a "'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* 424 U.S. at 701; *Siegert v. Gilley*, 500 U.S. 226, 233 (1991) (rejecting a due process claim and holding "that injury to reputation by itself was not a 'liberty' interest protected under

the Fourteenth Amendment".).[8]

Plaintiff has not alleged any injury to satisfy the stigma "plus" standard. In the employment context, to state a claim an employee is required to show a "loss, infringement or denial of a government right or benefit previously enjoyed by him, coupled with communications by government officials having a stigmatizing effect." *Mertik v. Blalock*, 983 F.2d 1353, 1362 (6th Cir. 1993). For example, where a higher education employee has tenure rights to continue employment and is terminated – procedural due process may be required. See *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564 (1972) (professor not deprived of liberty under the Fourteenth Amendment when he was not renewed at the end of his contract).

Here, Plaintiff was promoted to Interim Director and continues to be employed in this role. Plaintiff has no substantive right to a *promotion* to Director of the NAI, because "no such right exists." *Charles v. Baesler*, 910 F. 2d 1349 (6th Cir. 1990) (state-created rights such as [] contractual right to promotion do not rise to the level of "fundamental" interests protected by substantive due process.). At best, contract rights to continued or advanced employment can be protected by procedural due process – if there is a showing of some contractual right to the promotion. *Id.; Dodd v. City of Chattanooga, Tennessee,* 846 F.3d 180, 187 (6th Cir. 2017) (a property interest in a contractual benefit requires a "legitimate claim of entitlement to it.") Plaintiff admits that she received a contract for the position of Interim Director and that she was explicitly informed there was no expectation that she would be promoted to Director. (Complt. ¶268).

### iii.    *Plaintiff's Procedural Due Process Claim Fails*

---

[8] At best, the Fourteenth Amendment provides only *procedural* protection against injury inflicted to reputation and any "right to recover arises from the denial of a hearing to refute" any damage to reputation. *Quinn v. Shirey*, 293 F.3d 315, n. 8 (6th Cir. 2002).

Plaintiff's procedural due process claim is also unavailing. First, as set forth above, Plaintiff has not identified a *deprivation* for which due process was owed. To the extent she could, Plaintiff was not deprived her due process right to be heard, as she alleges. Plaintiff was interviewed within days of OIE receiving notice of her concerns and measures were immediately put into place during the pendency of the investigation. (Complt. ¶154).  Moreover, procedural due process claims are typically raised by the alleged *perpetrators,* not claimants, participating in an investigatory process that can lead to discipline. See e.g. *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018). And while determining what being "heard" looks like in each particular case, the law is well established that there are two basic due process requirements: (1) notice, and (2) an opportunity to be heard. *Flaim v. Med. Coll. of Ohio,* 418 F.3d 629, 634 (6th Cir. 2005). That is all, and Plaintiff received both.

 Plaintiff appears to allege that the fact her OIE investigation took longer than she would have liked could be deemed a violation of her procedural due process rights, even though this timing did not *deprive* her of anything.[9] Even in the criminal setting, "a delay resulting from investigative efforts 'does not deprive [a defendant] of due process, even if his defense may have been somewhat prejudiced by the lapse of time.'" *United States v. Atisha*, 804 F.2d 920, 928 (6th Cir. 1986). Further, an "alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation." *Taylor v. Goodson*, 2010 WL 1544365, at *3 (W.D. Mich. Apr. 19, 2010) (Quist, J.) (collecting cases); *see also Davis v. Scherer,* 468 U.S. 183, 194 (1984). Under Section 1983, the question is whether the MSU Individuals violated the

---

[9] Plaintiff cannot actually point to any procedure or required timeline in MSU's RVSM Policy of ADP that was violated. At best, Plaintiff points to the RVSM Policy's statement that it will use its "best efforts" to complete investigations within a certain time period, "although that timeframe may be extended for good cause." (Complt., ¶159).

Constitution, not whether they failed to follow MSU policies. *See Smith v. Freland,* 954 F. 2d 343, 347 (6th Cir. 1992) (explaining that to impose Section 1983 liability based on internal policies, "would encourage all governments to adopt the least restrictive policies possible"). Plaintiff has failed to show any violation here for which she was owed process, let alone any particularized violation by an Individual Defendant.

### 5.    Plaintiff's Equal Protection Claim Fails

Plaintiff has also failed to state an equal protection claim. "The Sixth Circuit has held that [it] is an 'absolute requirement' to state an equal protection claim that the plaintiff provide evidence 'that a similarly situated person outside [her] category'" was treated differently "under the same set of operative facts." *Doe v. Ohio State Univ.,* 239 F. Supp. 3d 1048, 1082–83 (S.D. Ohio 2017) (citing *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 624 (6th Cir. 2013); *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir 2000). Here, the Complaint does not include **any** facts that she was treated differently than a similarly-situated person outside of her protected categories; and for this reason alone her equal protection claim must be dismissed.

### E.    Plaintiff's State Law Claims are Fatally Flawed (Counts XI and XII)

### 1.    Plaintiffs' State Law Claims are Barred Against MSU Because She Did Not Comply with the Governmental Notice Requirement.[10]

The Court of Claims Act requires that, in **all** actions for personal injury, the "claimant **shall** file with the clerk of the court of claims a notice of intention to file a claim or the claim itself within 6 months following the happening of the event giving rise to the cause of action." MCL 600.6431(3) (emphasis added). The notice must satisfy specific requirements. MCL 600.6431(1).

MCL 600.6431 establishes "conditions precedent" to pursuing claims against the state.

---

[10] MSU preserves its right to raise an Eleventh Amendment immunity defense.

*Fairley v. Dep't of Corr.*, 871 N.W.2d 129, 131 (2015). It establishes "a clear procedure." *Id.* at 298 (quoting *McCahan v. Brennan*, 822 N.W.2d 747 (2012)). Michigan's Supreme Court has reiterated that the "statutory notice requirement[] must be interpreted and enforced as plainly written and that no judicially created saving construction is permitted to avoid a clear statutory mandate." *McCahan*, 492 Mich. at 733.

It is well settled that the NOI requirements apply to institutions such as MSU. *See, e.g.*, *id.*; *Fox v. Bd. of Regents of Univ. of Mich.,* 134 N.W.2d 146, 147 (1965); *Sprik v. Regents of Univ. of Mich.*, 204 N.W.2d 62, 65 (1972). Accordingly, the NOI requirement applies to *all* state law claims against MSU.[11] *See* M.C.L. 600.6431(1), (3); M.C.L. 691.1410(1); *Hawthorne-Burdine v. Oakland Univ.*, 2018 WL 1832336, at *3 (Mich. Ct. App. Apr. 17, 2018) ("MCL 600.6431(1) applies to plaintiff's discrimination claims.")

The failure to comply with the governmental notice requirement is "a complete defense." *Fairley*, 871 N.W.2d at 130. Plaintiffs must strictly comply with all of the conditions of MCL 600.6431 before filing suit. Indeed, "'six months' means 'six months,' 'files in the office of the clerk' means 'files in the office of the clerk,' and 'in detail' means 'in detail.'" *McCahan*, 822 N.W.2d at 756, n.29. Here, "[b]ecause [P]laintiff…failed to file *any* notice of an intent to pursue a claim against the [U]niversity with the Court of Claims within six months, plaintiff's state law claims are barred by the plain language of the statute." *Id.* at 755 (emphasis in original).

## 2.   Plaintiff's ELCRA Sex Discrimination Claim Is Not Adequately Pled (Count XI)

Count XI alleges sex discrimination and retaliation under the ELCRA against all

---

[11] "When a federal court exercises … pendent jurisdiction over state-law claims, the outcome of the litigation in the federal court should be substantially the same." *Felder v. Casey*, 487 U.S. 131, 151 (1988). Thus, "federal courts entertaining state-law claims against [the State] are obligated to apply [] notice-of-claim provision[s]." *Id.*; *see also Johnson v. Operation Get Down*, 2013 WL 4041868, at *4 (E.D. Mich. Aug. 8, 2013) (applying MCL 600.6431 to negligence claim).

Defendants based on the same allegations set forth in Plaintiff's Title VII claims. To establish a *prima facie* case of sex discrimination under the ELCRA, Plaintiff must show that she was: (1) a member of a protected class; (2) qualified for her position; (3) subject to an adverse employment action; and (4) treated differently than similarly-situated individuals that are not in her protected class. *Green v. Gen. Motors Corp.,* 95 F. Supp. 2d 698, 703, 705 (W.D. Mich. 2000). Notably, Plaintiff has not adequately pled any facts to support that she experienced discriminatory treatment by any of the Individual Defendants.

In any event, Plaintiff has not pled any adverse employment action sufficient to meet her burden in establishing a *prima facie* case of discrimination. Adverse actions must be "materially adverse to the employee—that is, it must be more than a mere inconvenience or minor alteration of job responsibilities." *Chen v Wayne State Univ,* 771 NW2d 820, 839 (2009). There must be "an objective basis for demonstrating that the employment action is adverse because a plaintiff's subjective impressions are not controlling." *Id.* Materially adverse employment actions include action such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* The law is clear that workplaces are "rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." *Pena v Ingham Co Rd Com'n*, 660 NW2d 351, 258-89 (2003).

Plaintiff alleges that Defendant Tyler discriminated against her by failing to get her a new desk or providing her assistance with cleaning out Norder's desk; threatening the NAI; and ignoring her concerns "about abuse she was experiencing." (Complt. ¶607). Defendant Tyler's refusal to assist Plaintiff with finding a new desk is, at best, an "inconvenience" and does not

satisfy the materially adverse action standard. Further, the law is well settled that a "threat" to act is not an adverse employment action under the ELCRA. *Chen*, 284 Mich App at 840 (no adverse action where an employer threatened to take employee's tenure away); *Cole v Dept of Corr*, No 258053, 2006 WL 2613458, at *3 (Mich Ct App Sep 12, 2006) (finding that threats of termination were not adverse employment actions because they "had no negative effect in and of themselves," prompted no loss of compensation or benefits, and did not change plaintiff's employment**). Otherwise, Plaintiff baldly pleads, but does not allege any facts to support, that Defendant Tyler ignored "her repeated reports of abuse." (Complt. ¶607). To the contrary, Plaintiff reported to Tyler on two occasions that Defendant Norder had contacted her and on both occasions Defendant Norder was counseled about the behavior promptly. (*Id.* ¶¶177, 211).

Similarly, the fact that Plaintiff was displeased with Defendant Kent's response to her attorney's email correspondence is insufficient to support a finding of a materially adverse employment action. *Pena* at 358.

Even if Plaintiff is found to have sufficiently pled an adverse action, her failure to identify a similarly-situated employee outside of her protected class who was treated better than she is fatal to her claim. *Major v. Vill of Newberry,* 892 NW2d 402, 416 (2016). "Similarly situated" means that "all of the relevant aspects" of the Plaintiff's employment situation must be nearly identical to the alleged comparable employee's situation. *Town v Michigan Bell Telephone Co*., 568 NW2d 64, 70 (1997).  Plaintiff has not, and cannot, show that MSU's investigatory process, OIE's procedures, or the training of OIE investigators were different for men, and she has not identified any similarly-situated men that Defendant Tyler specifically treated differently. As such, her pleading is fatally flawed. Further, Plaintiff has failed to identify any similarly-situated Interim Director who also does not have a position as a faculty member, and was treated differently than

she in her employment. (Complt., ¶28).

### 3.   Most of Plaintiff's ELCRA Retaliation Claim Should Be Dismissed as Against MSU and the Individual Defendants (Count XI)

To prove a *prima facie* case of retaliation under ELCRA, Plaintiff must show that: (1) she engaged in a protected activity, (2) that was known by defendant, (3) defendant took an adverse employment action, and (4) a causal connection between the protected activity and the adverse employment action. *Bachman v. Swan Harbour Assoc.*, 653 N.W.2d 415 (2002).

Plaintiff's pleading is bereft of any allegation that Upda, Engler, Simon, or Stanley, Jr. *knew* about her protected activities at all – let alone that they retaliated against her in some respect. She similarly alleges no retaliatory action by Jachimiak. Plaintiff's ELCRA retaliation claim only asserts factual allegations concerning Defendants Tyler, Kent, and Norder.

Plaintiff, however, cannot show that Kent took any adverse employment action against her. A materially adverse employment action in the retaliation context consists of any action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N & Santa Fe Ry Co v White*, 548 US 53, 67-68 (2006); see also *White v Dept of Transp*, 964 NW2d 88 (2020). Even this standard does not protect against "all retaliation, only from retaliation that produces injury or harm." *Taylor v Geithner*, 703 F3d 328, 336 (6th Cir. 2013).  To be sure, *White* maintains that "petty slights, minor annoyances, and simple lack of good manners" are not actionable even if retaliatory; and that the actions must deter <u>reasonable</u> employees, noting that the test is objective and that each case is to be considered on its own facts. *Id.* at 118-119 (citing *Burlington*, 548 US at 68).

At most, Kent's failure to respond to Plaintiff's attorney's letter in the precise manner Plaintiff would have liked is a petty slight – it does not rise to an adverse action, particularly as

Plaintiff received an *answer* to all of her attorney's inquiries.[12]

### 4.   Plaintiff Does Not Plead a Plausible PWDCRA Discrimination or Retaliation Claim (Count XI)

Plaintiff's PWDCRA discrimination and retaliation claims are not adequately pled and should be dismissed. The PWDCRA "substantially mirrors the ADA." *Reeder v. Cty. of Wayne,* 177 F. Supp. 3d 1059, 1075 (E.D. Mich. 2016). To establish a *prima facie* case of disability discrimination Plaintiff must show that she suffered an adverse employment action and that her employer knew of her disability. As with her ELCRA claim, Plaintiff fails to plead *any facts* that support any alleged discriminatory actions were based on or because of her disability, she cannot identify an adverse action she experienced, and she cannot show any differential treatment. Indeed, she fails to set forth any facts or allegation that any of the Individual Defendants, but for Defendant Norder, actually *knew* she had a disability at all. Plaintiff's threadbare recitals of the elements of a disability discrimination claim are insufficient.

Her retaliation claim is also unavailing. A *prima facie* case of unlawful retaliation under the PWDCRA requires a plaintiff to prove the same elements required under the ELCRA. *Mitan v. Neiman Marcus*, 613 N.W.2d 415, 416 (2000). Plaintiff does not allege any other Individual Defendant, including Tyler, actually knew she had a disability – just that MSU generally had knowledge. Plaintiff herself admits that "RCPD and MSU have strict rules in place to ensure confidentiality for employees . . . registered with RCPD." (Complt. ¶112).  Accordingly, she fails to set forth a *prima facie* claims of retaliation against the Individual Defendants for this reason.[13]

---

[12] Defendants deny any retaliatory conduct by Tyler, but reserve its legal arguments as it concerns Defendant Tyler at this time.

[13] If Plaintiff could show that Individual Defendants knew of her disability, as with her ELCRA claims, her PWDCRA claims still fail as against all individual Defendants but Tyler, as she has not pled facts to support PWDCRA claims against those Individual Defendants.

**F.     The Court Should Strike Paragraphs 389-475 of the Complaint [Counts XI and XII]**

A motion to strike is  proper  where  a complaint contains  redundant,  immaterial,  or scandalous allegations that have no bearing on the subject matter of the litigation. FRCP 12(f); *Wrench LLC v. Taco Bell Corp.,* 36 F. Supp. 2d 787, 789 (W.D. Mich. 1998); *Johnson v. Cty. of Macomb,* No. 08-10108, 2008 WL 2064968, at *1 (E.D. Mich. May 13, 2008) (motion to strike granted where complaint accused President of Parks Commission of being related to individuals with ties to organized crime); *Llewellyn-Jones v. Metro Prop. Grp., LLC,* 22 F. Supp. 3d 760, 776 (E.D. Mich. 2014) (striking Plaintiffs allegations that were "included to inflame the factfinder, without contributing to the conventional claims the plaintiffs try to raise.").

Plaintiff's eighty-seven allegations concerning the unrelated Nassar litigation and settlement or other OIE investigations have no bearing on any of Plaintiff's claims. They are at best over-the-top, redundant and likely included to impart scandal rather than assist in any analysis of the legitimacy of Plaintiff's claims. For instance, Plaintiff sets forth allegations concerning Defendant Jachimiak's current leave based solely on "information and belief" (Complt. ¶428), and then paragraphs 431 through 476 discuss Plaintiff's counsel's *other* clients and their own irrelevant OIE experiences. These allegations are squarely of the type that FRCP 12(f) prohibits – arising not out of relevancy to the claims, but seeking to purposefully offend and insert scandal into this action. Accordingly, Defendants ask this Court to strike paragraphs 389-476 of the Amended Complaint.

## III.     CONCLUSION

For the foregoing reasons, the MSU Defendants respectfully request that this Court grant their motion and dismiss the following claims as follows:

Counts I, II, IV, V-X, and XII in their entirety as to all Defendants.

Count  XI  as  to  all  Defendants  as  it  concerns  ELCRA  discrimination  and  as  to  all

Defendants, but for Defendant Tyler, as to Plaintiff's ELCRA retaliation claim.

For the foregoing reasons, the MSU Defendants respectfully request that this Court grant their request to strike paragraph 389-475 of the Amended Complaint.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

/s/Scott R. Eldridge

**Scott R. Eldridge** (P66452)
**Kiffi Y. Ford** (P54852)
**Ashley N. Higginson** (P83992)
***Attorneys for MSU and the Individual Defendants***
Miller, Canfield, Paddock, and Stone, P.L.C.
120 N. Washington Square, Suite 900
Lansing, Michigan
Office:  517-487-2070
eldridge@millercanfield.com
higginson@millercanfield.com
ford@millercanfield.com

March 21, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 21, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

/s/Scott R. Eldridge
Miller, Canfield, Paddock and Stone, P.L.C.
*Attorney for Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

As required under LCivR 7.2(b)(i), I hereby certify that this brief includes 10,572 words including headings, footnotes, citations and quotations and not including the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, and affidavits. This word count was generated by Microsoft Word 2010, the processing software utilized to draft the brief.

/s/Scott R. Eldridge
Miller, Canfield, Paddock and Stone, P.L.C.
*Attorney for Defendants*