**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CHRISTIE POITRA,

Plaintiff,

Case No. 1:22-cv-00047

v.

Hon. Jane M. Beckering

MICHIGAN STATE UNIVERSITY; MICHIGAN STATE UNIVERSITY BOARD OF TRUSTEES; et al., in their official and individual capacities,

Defendants.

---

**DEFENDANTS MICHIGAN STATE UNIVERSITY, MICHIGAN STATE UNIVERSITY BOARD OF TRUSTEES, STANLEY, UPDA, SIMON, HENDRICK, TAYLOR, KENT AND JACHIMIAK'S REPLY BRIEF IN SUPPORT OF MOTION TO PARTIALLY DISMISS PLAINTIFF CHRISTIE POITRA'S FIRST AMENDED COMPLAINT AND MOTION TO STRIKE PARAGRAPHS 389 THROUGH 476 OF AMENDED COMPLAINT**

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Plaintiff Abandoned Her Section 504 and Equal Protection Claims and Her Section 1983 Claim Against MSU (Counts IV, VIII, and X) ..... 1

B. Plaintiff's Title IX Deliberate Indifference Claim Remains Ripe for Dismissal (Count I) ..... 1

C. Plaintiff's Title IX Heightened Risk Is Not Viable and is Time-Barred (Count II) ..... 4

D. Plaintiff's Section 1983 Claims are Insufficiently Pled and Should be Dismissed ..... 5

1. The Individual Defendants are Entitled To Qualified Immunity ..... 5

2. Plaintiff Cannot State a Constitutional Violation of her Bodily Integrity ..... 7

3. Plaintiff Has Not Pled a Cognizable Interest or Right to Her Reputation ..... 8

4. Plaintiff's Procedural Due Process Claim Fails ..... 8

5. Plaintiff's First Amendment Retaliation Claim Fails (Count IV) ..... 9

E. Plaintiff's State Law Claims are Fatally Flawed (Counts XI and XII) ..... 10

1. Plaintiff Ignores Supreme Court Precedent That Requires Her to Comply With Michigan's Governmental Notice Requirement. ..... 10

2. Plaintiff Has Abandoned Her ELCRA Claims Against All Defendants Except MSU and Individual Defendant Tyler (Count XI) ..... 11

3. Plaintiff Has Not Pled a Prima Facie Case of ELCRA Discrimination (Count XI) ..... 11

4. Plaintiff Has Not Pled a Prima Facie Case of PWDCRA Discrimination (Count XII) ..... 11

5. Plaintiff Does Not State a Claim of PWDCRA Retaliation Discrimination (Count XI) ..... 12

F. Plaintiff's Title VII & ADA Claims Are Procedurally Invalid and Insufficiently Pled ..... 12

1. Plaintiff Has Failed to Exhaust Administrative Remedies Concerning a Majority of Plaintiff's Title VII and ADA Claims (COUNTS V-VIII) ..... 12

2. Plaintiff's Title VII and ADA Claims Share the Same Fate as Her ELCRA and PWDCRA Claims (Counts V-VII) ..... 13

G. The Court Should Strike Paragraphs 389-475 of the Complaint ..... 13

III. CONCLUSION ..... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....9, 14

*Christie v. Wayne State Univ.*,
*967 N.W.2d 379 (Mich. 2021*....13

*Crosby v. Univ. of Kentucky*
863 F.3d 545, 555 (6th Cir. 2017), ....11

*Stiles ex rel. D.S. v. Grainger Cty., Tenn.*,
819 F.3d 834 (6th Cir. 2016) ....5

*Davis v. Monroe Cty. Bd. Of Educ.*,
526 U.S. 629 (1999)....5, 7

*Davis v. Sodexho, Cumberland Coll. Cafeteria*,
157 F.3d 460 (6th Cir. 1998) ....15

*Doe v. Michigan State Univ.*,
No. 1:18-CV-390, 2019 WL 5085567 (W.D. Mich. Aug. 21, 2019) ....7

*Doe v. Univ. of Kentucky*,
959 F.3d 246 (6th Cir. 2020) ....5, 6, 7

*Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*,
624 F.3d 332 (6th Cir. 2010) ....13

*Felder v. Casey*,
487 U.S. 131 (1988)....13, 14

*Foster v. Bd. of Regents of Univ. of Michigan*
*982 F.3d 960, 965 (6th Cir. 2020)*....6

*Garcetti v. Ceballos*,
547 U.S. 410 (2006)....12

*Garrett, et al., v. The Ohio State Univ.*,
2021 WL 7186147 (S.D. Ohio Sept. 22, 2021) ....8

*Guertin v. State*,
912 F.3d 907 (6th Cir. 2019) ....10, 11

*Hawthorne-Burdine v. Oakland Univ.*,
No. 338605, 2018 WL 1832336 (Mich. Ct. App. Apr. 17, 2018) ....................13

*Hunter v. Gen. Motors LLC*,
807 F. App'x 540 (6th Cir. 2020) ....................16

*Kollaritsch v. Michigan State Univ. Bd. of Trustees*,
944 F.3d 613 (6th Cir. 2019) ....................7, 8

*Kowalski v. Michigan State Univ.*,
No. 1:18-CV-390, 2021 WL 5568044 (W.D. Mich. Feb. 24, 2021) ....................7, 8

*Lanman v. Hinson*,
529 F.3d 673 (6th Cir. 2008) ....................9

*McCahan v. Brennan*,
822 N.W.2d 747 (2012) ....................13

*Mertik v. Blalock*,
983 F.2d 1353 (6th Cir. 1993) ....................11

*Mezibov v. Allen*
411 F.3d 712, 719 (6th Cir. 2005) ....................12

*Pahssen v. Merrill Cmty. Sch. Dist.*,
668 F.3d 356 (6th Cir. 2012) ....................5

*Paul v. Davis*
424 U.S. (1976)....................11

*Pittman v. Spectrum Health Sys.*,
612 F. App'x 810 (6th Cir. 2015) ....................5

*Planned Parenthood Sw. Ohio Region v. DeWine*,
696 F.3d 490 (6th Cir. 2012) ....................10

*Reeder v. Cty. of Wayne*,
177 F. Supp. 3d 1059 (E.D. Mich. 2016)....................16

*Ritchie v. Coldwater Cmty. Sch.*,
947 F. Supp. 2d 791 (W.D. Mich. 2013) ....................4

*Steckloff v. Wayne State University*,
2019 WL 2929185 (E.D. Mich. July 8, 2019) ....................13

*Van Domelen v. Menominee Cty.*,
935 F. Supp. 918 (W.D. Mich. 1996) ....................9

**Statutes**

*ADA*....15, 16

Court of Claims Act....13

MCL 600.6431....13

**Court Rules**

Rule 12(f)....16

## I. INTRODUCTION

After abandoning many claims by not addressing them, Plaintiff's brief is a meager attempt to resurrect her remaining deficient claims. She merely mentions the Individual Defendants by name, untethered to any facts necessary to support viable claims against them. Scant on facts, Plaintiff's complaint and brief rely on conclusory allegations and disjointed theories in a vain attempt to muddy the waters. Plaintiff also: misunderstands applicable case law; asks the court to create claims this Circuit does not recognize; ignores dates of alleged actions because they time-bar her claims; and stretches legal theories to a place that strains credulity. Despite these attempts, when Plaintiff's claims are reviewed against the case law and necessary elements for each, the deficiencies in Plaintiff's pleadings become apparent. As such, Defendants' request that the Court grant its motion to dismiss and to strike in its entirety.

## II. ARGUMENT

### A. Plaintiff Abandoned Her Section 504 and Equal Protection Claims and Her Section 1983 Claim Against MSU (Counts IV, VIII, and X)

Plaintiff does not respond to Defendants' arguments concerning her Section 504 and Equal Protection claims in any respect, and as such she has abandoned these claims. *Ritchie v. Coldwater Cmty. Sch.*, 947 F. Supp. 2d 791, 825 (W.D. Mich. 2013). Further, Plaintiff concedes that she cannot bring Section 1983 claims against MSU as a matter of law. (ECF No. 23, PageID.541).

### B. Plaintiff's Title IX Deliberate Indifference Claim Remains Ripe for Dismissal (Count I)

Plaintiff's claims fall woefully short of the standard required to show deliberate indifference under Title IX.[1] The Supreme Court has underscored deliberate indifference exists

[1] Plaintiff's claim remains time-barred. Plaintiff alleges a "policy of discrimination." (PageID.535). This purported policy relates to events occurring *prior to* the January 9, 2019 limitations period. Parties who seek to invoke the continuing-violations doctrine must allege they

"only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis v. Monroe Cty. Bd. Of Educ.*, 526 U.S. 629, 648 (1999); see also *Doe v. Univ. of Kentucky,* 959 F.3d 246, 252–53 (6th Cir. 2020) (Plaintiff was allegedly raped post-notice, but "failed to show that [institution's] response was clearly unreasonable," because it "took 'proactive steps to reduce opportunities for further harassment' by issuing no-contact orders," and investigated when the no-contact order was violated.); *Stiles ex rel. D.S. v. Grainger Cty., Tenn.,* 819 F.3d 834, 848 (6th Cir. 2016); *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 364 (6th Cir. 2012).

As Plaintiff admits, MSU placed Norder on leave, removed him as her supervisor, issued a no contact directive, and reiterated the requirements of the directive upon notice that he had contacted Plaintiff. (Amended Complt., ¶¶154, 161, 162, 171, 176, 222). Plaintiff does not advance any argument to support that such actions were deliberately indifferent other than baldly so stating.

Instead, Plaintiff argues Defendant Norder engaged in "post-assault sexual harassment and stalking." (PageID.549). To be clear, Plaintiff has not alleged that she was *assaulted* at any time. Plaintiff alleges: (1) Norder contacted her by phone, text, and email concurrently in August of 2018, at the start of the investigation; (2) Norder tagged Plaintiff in an academic article in November of 2019; (3) Norder "left anal lubricant" in his desk (prior to OIE's investigation); and (4) Norder moved furniture when he was permitted to enter his office, when no one was present, in order to obtain his belongings. (*Id.*). Even if true, none of this conduct amounts to the additional

---

have suffered a specific discriminatory act *within* the applicable limitations period. *Pittman v. Spectrum Health Sys.*, 612 F. App'x 810, 813 (6th Cir. 2015). Plaintiff can only point to Norder's tagging of Plaintiff in an academic article. This action is insufficient to state a claim of sexual harassment (or any other claim).

unlawful harassment necessary to state a deliberate indifference claim.

Plaintiff tries to distinguish this matter from similar cases cited by Defendants, *Kollaritsch and Doe*, quibbling that those plaintiffs were not contacted electronically. (PageID.549). If further examples are required, the Sixth Circuit's ruling in *Foster v. Bd. of Regents of Univ. of Michigan 982 F.3d 960, 965 (6th Cir. 2020)* is additionally instructive. In *Foster*, upon notice of sexual harassment, the university: initiated an investigation; imposed a no-contact directive; and removed the alleged harasser from plaintiff's educational environment. "That is not deliberate indifference." *Foster*. 982 F.3d at 966. Thereafter, the *Foster* plaintiff alleged that the harasser: (1) violated the no-contact order by texting her "really"; (2) got in her way and made an offensive comment about her on Facebook; (3) sent inappropriate and "deranged" emails to several classmates and the university; and (4) attended a ceremony where he was banned. *Id.* at 966-967. Each time the university was provided notice of an act by the harasser, it acted promptly. The Sixth Circuit, therefore, rejected the plaintiff's claims.

Indeed, the Sixth Circuit in *Foster*, rejected the very arguments Plaintiff makes here:

> [T]hat, whenever harassment continues after a school receives notice, a reasonable jury can find that the school remained deliberately indifferent. That can't be. Foster's proposed rule calls to mind strict liability, not deliberate indifference. The deliberate indifference standard makes schools liable when they "refuse[ ] to take action to bring the recipient into compliance," *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998), not when they take action that ultimately fails to "purg[e] their schools of actionable peer harassment," *Davis*, 526 U.S. at 648, 119 S.Ct. 1661. We ask not whether the school's efforts were ineffective but whether they amounted to "an official decision ... not to remedy the violation." *Id.* at 642, 119 S.Ct. 1661 (quotation omitted). To the extent *Patterson* suggests that an ineffective response necessarily generates a jury issue on deliberate indifference, *cf.* 551 F.3d at 448, that is wrong.

*Id.* at 968.[2] Plaintiff has not shown MSU was deliberately indifferent.

---

[2] Here, as in *Doe v. Univ. of Kentucky, supra*, "[n]or does [MSU's alleged] non-compliance with its own administrative policies amount to deliberate indifference." 959 F.3d at 252, citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998) (holding that "the failure to *promulgate* a

Plaintiff also has not alleged that she was subjected to "*further* actionable sexual harassment." *Doe*, 959 F.3d at 250-51. She has failed to identify how any conduct alleged to have occurred after the onset of the OIE investigation was in any way "sexual". *Doe*, 959 at 251. Defendant Norder's alleged outreach at the start of the investigation, prior to any knowledge of the facts, and his tagging of Plaintiff to a scholarly article also do not meet the objectively-offensive standard. That OIE permitted Norder to obtain his belongings because he was *removed* from his office is not objectively offensive. Finally, Norder's alleged maintenance of anal lubricant in his desk *prior to* the initiation of the OIE investigation is not a showing of additional action after the no-contact order. Plaintiff has simply not alleged further harassment and her deliberate indifference claim requires dismissal for this additional reason. *See Davis*, 526 U.S. at 643 (explaining the "high standard" to sustain a viable deliberate indifference claim).

**C. Plaintiff's Title IX Heightened Risk Is Not Viable and is Time-Barred (Count II)**

Plaintiff's Title IX heightened risk claim is not recognized in this Circuit. Even so, it remains time-barred and ripe for dismissal.

Plaintiff curiously concludes that because the Sixth Circuit has never recognized a heightened risk claim, this Court should take it upon itself to do so now. She then notes incorrectly that *this Court* has recognized the potential validity for such a claim – relying on a decision that was reversed: *Doe v. Michigan State Univ.*, No. 1:18-CV-390, 2019 WL 5085567 (W.D. Mich. Aug. 21, 2019), on reconsideration rev. sub. nom. *Kowalski v. Michigan State Univ.*, No. 1:18-CV-390, 2021 WL 5568044 (W.D. Mich. Feb. 24, 2021).

In *Kowalski*, the court relied on *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944

---

grievance procedure does not itself constitute 'discrimination' under Title IX") (emphasis added).

F.3d 613, 621 (6th Cir. 2019) to conclude both: (1) that the Plaintiff in *Kowalski* had failed to state a claim of deliberate indifference because she was not subjected to further actionable harassment; ***and*** (2) that "a claim cannot be premised on a school's failure to address the risk of sexual harassment based on past incidents of sexual harassment against students other than the plaintiff," i.e., a *rejection* of the heightened risk theory of liability. *Kowalski*, 2021 WL 5568044, at *2. Plaintiff argues *Kowalski* must have gotten it wrong; but this court cannot ignore *Kollaritsch*.

Next, Plaintiff argues that Defendants have not cited to law to support that Plaintiff's claim is time-barred, and alleges Defendants are arguing such a claim "can *only* be brought pre-assault." (PageID.553). Again, Plaintiff is not claiming she was assaulted. Moreover, Defendants' actual argument is that her claim accrued upon alleged harassment by Norder, at the latest, in August of 2018 – just as the case law Defendants cited supports. *Garrett*, *et al.*, *v. The Ohio State Univ.*, 2021 WL 7186147 at *9 (S.D. Ohio Sept. 22, 2021) (collecting cases) (General knowledge of alleged "abuse widely known amongst both students and faculty" is enough to have put Plaintiff on notice and "means the statute of limitations period began to run immediately following" her alleged harassment).

Plaintiff then suggests, without any legal support, that Defendants' caselaw may not apply to Plaintiff at all because she is an employee, rather than a student. Ironically, she then relies upon easily distinguishable cases outside of this jurisdiction – all of which assess student-on-student conduct. (PageID.653). Plaintiff fails to save her untimely and unrecognized heightened risk claim.

**D. Plaintiff's Section 1983 Claims are Insufficiently Pled and Should be Dismissed**

**1. *The Individual Defendants are Entitled To Qualified Immunity***

The only time Plaintiff's response even mentions any Individual Defendants other than Defendants Tyler and Kent at all is in a failed attempt to argue that they are not entitled to qualified

immunity. Plaintiff's regurgitation of her conclusory pleading is insufficient to show "*each* Government-official defendant, through the official's *own individual actions*, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (emphasis added). Thus, her Section 1983 claims against all Individual Defendants require dismissal.

Plaintiff asserts that Presidents Simon, Engler, Upda, and Stanley are not entitled to qualified immunity – simply because they exist and have each held the position of President of MSU. Similarly, Plaintiff only identifies Hendrick's role as Dean and Kent and Jachimiak's roles as Title IX Coordinator, as if restating their titles alone is sufficient to plead a claim. Of course, *Iqbal* and *Twombly* require more – something to sustain a plausible claim in the face of qualified immunity. Plaintiff, instead, presents a dearth of facts to demonstrate these individuals violated her constitutional rights. *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008). Qualified immunity is an affirmative defense that, once asserted, shifts the burden of proof to the plaintiff and its application requires determination on a "fact-specific, case-by-case basis." *Id.* at 699. Where, as here, Plaintiff has not alleged any plausible facts at all as to any Individual Defendant, she has not met this burden. To the extent Plaintiff is seeking to impose Section 1983 liability on the Individual Defendants as supervisors, Plaintiff must still point to direct behaviors by each Defendant that were unconstitutional. *Van Domelen v. Menominee Cty.*, 935 F. Supp. 918, 924 (W.D. Mich. 1996). She has not done that.

Indeed, other than reciting the Individual Defendants' titles, Plaintiff otherwise alleges only that: (1) Kent denied Plaintiff "information and support"; and (2) Hendrick and Tyler discriminated and retaliated against Plaintiff – which does not allege any deprivation of any constitutional rights as is required. (PageID.547). It is undisputed Kent referred Plaintiff to the proper individuals to provide her with the requisite information needed. (Amended Compl., ¶216). Further, these few

conclusory assertions do not allege any *action* by these Individual Defendants that deprived her of any substantive or procedural right under Section 1983. Thus, all of the Individual Defendants are entitled to qualified immunity, and Plaintiff's Section 1983 claims against them fail.

### 2. *Plaintiff Cannot State a Constitutional Violation of her Bodily Integrity*

Plaintiff sets forth a novel legal theory that her purported *physical reaction* to alleged discrimination by Defendants is a constitutional bodily-integrity violation. Of course, she cites no caselaw to support this fantastic theory and instead quips that Defendants did not "break her jaw or force feed her" and that Defendants failed to analyze the case law they cited. (PageID.543). Her inflammatory statement is ineffective, if not intellectually dishonest, considering the import of bodily integrity jurisprudence for those who *actually have alleged* an *intrusion* into their bodies. Plaintiff purposefully ignores the "intrusion" element of such a claim.

Plaintiff relies on inapposite cases that concerned the Flint water crisis and the government's regulation of medical abortions. *Guertin v. State,* 912 F.3d 907 (6th Cir. 2019) and *Planned Parenthood Sw. Ohio Region v. DeWine*, 696 F.3d 490 (6th Cir. 2012). Both are inherently related to an *action* that *intruded* upon an individual's physical body – i.e., the constitutional harm. Plaintiff's citation to *Guertin* is also unavailing, as the quotation she cites states, just as Defendants argued, that a deprivation of bodily integrity requires a showing that the "government **intrudes upon an individual's body**." *Guertin*, 912 F.3d at 919 (emphasis added). Ironically, it is Plaintiff who cherry-picks this unhelpful quote, ignoring the pages of examples the *Guertin* Court provided to illustrate the tenet of bodily integrity. *See id.*, 919-922 (collecting cases concerning the involuntary administration of medication, the right to die, and the involuntary subjugation to radiation). Plaintiff cannot point to an action by any Defendant on her body and

thus her novel claim strains credulity.

Further, Plaintiff must show that Defendants' conduct was "constitutionally repugnant," by identifying "conscience-shocking conduct." *Id.* at 922 (collecting cases). "Stated differently, the shocks-the-conscience test is the way in which courts prevent transforming run-of-the-mill tort claims into violations of constitutional guarantees." *Id.* at 923. Plaintiff seeks to transform alleged tort damages into a constitutional violation, but caselaw rejects her argument.

**3. *Plaintiff Has Not Pled a Cognizable Interest or Right to Her Reputation***

Plaintiff concedes that "reputation alone, apart from some more tangible interests such as employment," is not a "'liberty' or 'property'" interest. *Paul v. Davis* 424 U.S. at 693, 701 (1976). To save her claim, Plaintiff argues that so long as she sufficiently pleads *any other claim at all*, she has alleged a constitutional deprivation to reputation. She has not, however, pled the deprivation of any other interest or property right as required as a matter of law, let alone a "loss, infringement or denial" of a right previously enjoyed in her employment. *Mertik v. Blalock*, 983 F.2d 1353, 1362 (6th Cir. 1993). She also offers no argument to support her assertion that she has a constitutional right to career advancement, abandoning the claim.

Plaintiff has not actually alleged facts as to how her reputation has been damaged at all. As set forth in *Crosby v. Univ. of Kentucky* 863 F.3d 545, 555 (6th Cir. 2017), the Sixth Circuit has identified factors that a plaintiff must show to establish that she was deprived of a liberty interest and entitled to a name-clearing hearing, including: termination of tenured employment; that statements placing reputation at stake are false; and voluntary public dissemination of statements. Plaintiff has not pled any such facts and has thus not pled any deprivation to her reputation.

**4. *Plaintiff's Procedural Due Process Claim Fails***

Plaintiff has not sufficiently pled any deprivation of process either. She baldly states that

she "was afforded no Due Process prior to Defendants' deprivation of her substantive due process rights," and purports that by making such a statement alone, she has sufficiently pled a claim. (PageID.545). Plaintiff conveniently forgets, the fulsome OIE investigation conducted in response to her internal complaint. Further, she fails to plead any facts concerning what process she was *owed* but of which she was allegedly *deprived*.

**5**. ***Plaintiff's First Amendment Retaliation Claim Fails (Count IV)***

Plaintiff acknowledges that Defendants' citation to *Garcetti v. Ceballos*, 547 U.S. 410 (2006) is appropriate and concedes that when an individual's speech constitutes a job duty, the individual is not speaking as a citizen for First Amendment purposes. Plaintiff then admits MSU's RVSM Policy requires all University employees to promptly report sexual misconduct, but states "whether [Plaintiff] violated the Policy by failing to do so is immaterial to the present matter." (PageID.554). Her admission that it was her job duty to report is critically material to this assessment in that it dooms her claim. Plaintiff obviously *did* report the conduct to MSU, not only to the reporter who reported the conduct to OIE, but also through Plaintiff's OIE interview – when she directly reported the conduct. That a colleague was the *first* reporter to OIE is of no issue in that regard. *Plaintiff* reported the conduct.

Plaintiff's arguments that her *attorney's* speech should be considered her own are also unavailing. Plaintiff points to a variety of cases, but they all clearly considered the actions or speech *of the Plaintiff* ultimately alleging the First Amendment claim, not the speech of a proxy. (PageID.558). Further still, whether Plaintiff's attorney's advocacy is in the courtroom or any other venue is immaterial, and *Mezibov v. Allen* 411 F.3d 712, 719 (6th Cir. 2005). remains instructive because "advocacy . . . cannot honestly be characterized as 'free' speech."

Plaintiff also has utterly failed to plead any facts to support that allegedly retaliatory actions

by Kent or Tyler would "discourage individuals of 'ordinary firmness' from continuing to do what they were doing" or that her speech was a "motivating factor" behind the employer's conduct. *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 337 (6th Cir. 2010). Notably, Plaintiff here was, indeed, *not* discouraged. For these reasons, Plaintiff fails to plead a First Amendment retaliation claim.[3]

**E. Plaintiff's State Law Claims are Fatally Flawed (Counts XI and XII)**

***1. Plaintiff Ignores Supreme Court Precedent That Requires Her to Comply With Michigan's Governmental Notice Requirement.***

In seeking to side-step her legal obligations under MCL 600.6431, Plaintiff relies on unpublished decisions not binding on this Court to argue that the Court of Claims Act should not apply to her state law claims.[4] Plaintiff ignores Defendants' citation to *Felder v. Casey*, 487 U.S. 131, 151 (1988). This Court, of course, cannot ignore the U.S. Supreme Court and its clear ruling that "federal courts entertaining state-law claims against [the State] are obligated to apply [] notice-

---

[3] Plaintiff's Count IV does not indicate that she is bringing a claim against Defendant Kent and her only allegation is that Defendant Kent retaliated by "refusing" to discuss safety concerns with her attorney or to provide her with an alternate person to talk to in November of 2019. (PageID.559). Kent indisputably responded to Plaintiff's attorney promptly and directed her to *multiple* individuals including "Mr. Nolan," and "her supervisor or a designee," including, but not limited to, Dr. Tyler. (Amended Complt., ¶216).

[4] Plaintiff chiefly relies upon *Christie v. Wayne State Univ., 967 N.W.2d 379 (Mich. 2021)* which is pending appeal before the Supreme Court of Michigan. The University respectfully submits that *Steckloff v. Wayne State University*, 2019 WL 2929185 (E.D. Mich. July 8, 2019) was wrongly decided, as the court did not appropriately apply *Felder v. Casey*. Further, these cases failed to set forth and conduct the proper statutory analysis required to review the plain meaning of MCL 600.6431. Notice of claims provisions serve a purpose and "are enacted by the Legislature in order to provide the state with the opportunity to investigate and evaluate claims, to reduce the uncertainty of the extent of future demands, or even to force the claimant to an early choice regarding how to proceed." *McCahan v. Brennan,* 822 N.W.2d 747, 754–55 (2012). This policy applies equally in federal court. Further, the notice provision in the statute does not "distinguish between claims that are subject to its notice requirements, providing broadly that '[*n* ]*o claim* may be maintained against the state unless' the claimant complies with the provision." *Hawthorne-Burdine v. Oakland Univ.,* No. 338605, 2018 WL 1832336, at *3 (Mich. Ct. App. Apr. 17, 2018).

of-claim provision[s].” *Id.* As such, Plaintiff’s state-law claims against MSU are barred.

**2. *Plaintiff Has Abandoned Her ELCRA Claims Against All Defendants Except MSU and Individual Defendant Tyler (Count XI)*[5]**

In her response, Plaintiff points to only one Individual Defendant as having allegedly discriminated or retaliated against her in violation of the ELCRA: Defendant Tyler. (PageID.560). As such, she has abandoned her ELCRA Claims against all other Individual Defendants and for this reason alone those claims must be dismissed.

**3. *Plaintiff Has Not Pled a Prima Facie Case of ELCRA Discrimination (Count XI)***

Plaintiff does not address Defendants’ argument concerning her failures: (1) to identify any materially adverse employment action; and (2) to identify similarly-situated individuals not in her protected class who were treated better. As such, she cannot state a *prima facie* claim of discrimination.

**4. *Plaintiff Has Not Pled a Prima Facie Case of PWDCRA Discrimination (Count XII)***

Plaintiff’s narrow PWDCRA discrimination claim against Defendant Tyler only does nothing more than recite “the elements of a cause of action, supported by mere conclusory statements,” which is insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Plaintiff states Tyler harassed her and failed to provide her accommodations, alleging she requested a different desk – which was not an accommodation she sought *because of her disability*. (PageId.561; Amended Complt., ¶188-189). She also has not pled a PWDCRA harassment claim and does not indicate any specific conduct or statement by Tyler that was related to her disability

[5] Undersigned counsel does not represent Defendant Norder.

at all, let alone objectively offensive conduct. Accordingly, her PWDCRA claim fails in its entirety.

#### 5. *Plaintiff Does Not State a Claim of PWDCRA Retaliation Discrimination (Count XI)*

Other than stating that the PWDCRA prohibits retaliation and citing to the statute, Plaintiff's brief does not respond to Defendants' arguments that her PWDCRA retaliation claim should be dismissed. (PageID.651). Accordingly, she has abandoned the argument.

### F. Plaintiff's Title VII & ADA Claims Are Procedurally Invalid and Insufficiently Pled

#### 1. *Plaintiff Has Failed to Exhaust Administrative Remedies Concerning a Majority of Plaintiff's Title VII and ADA Claims (COUNTS V-VIII)*

Plaintiff did not originally attach the June 2020 letter from the Office for Civil Rights that she now provides, which indicated that the EEOC would accept the October 28, 2019 date on which Plaintiff filed her OCR complaint. However, even using the October 2019 date, the charge concerns only Norder's conduct and MSU's OIE response. Plaintiff's Complaint, however, alleges a host of additional claims concerning various Individual Defendants regarding her role as interim NAI Director – which she alleges accrued starting in 2019 (when she was interim chair).

Critically, Plaintiff had the opportunity to amend, refine, and add to her October 2019 charge in her April 7, 2021 EEOC charge, yet she again only indicated sex and disability discrimination in relation to Defendant Norder's conduct and MSU OIE's investigation. Plaintiff cannot plausibly argue the additional claims in the Complaint would have reasonably been expected to "grow out of the charge of discrimination" she filed, because when she prepared the April 2021 charge and she, "in fact," did not raise them. *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 464 (6th Cir. 1998). Accordingly, Plaintiff has failed to exhaust her administrative remedies to the extent her Title VII and ADA claims relate to any Individual

Defendants other than Norder or her role as interim NAI director upon Norder's removal.

**2. *Plaintiff's Title VII and ADA Claims Share the Same Fate as Her ELCRA and PWDCRA Claims (Counts V-VII)***

Title VII and the ELCRA have the same burden of proof and the PWDCRA "substantially mirrors the ADA." *Reeder v. Cty. of Wayne,* 177 F. Supp. 3d 1059, 1075 (E.D. Mich. 2016); *Hunter v. Gen. Motors LLC,* 807 F. App'x 540, 544 (6th Cir. 2020). As such, Defendants refer to their ELCRA and PWDCRA arguments above in section E.2-5. The Court should similarly find that Plaintiff fails to state any Title VII or ADA claims. Notably, Plaintiff's only remaining ELCRA retaliation claim is limited to Tyler's alleged conduct, for which Plaintiff has failed to exhaust her administrative remedies as required under Title VII (see Section F.1 aboved).

**G. The Court Should Strike Paragraphs 389-475 of the Complaint**

Plaintiff argues Paragraphs 389-475 are "essential" in supporting a theory that "MSU has spent years creating an environment" of discrimination – i.e., her time-barred heightened risk claim not recognized by the Sixth Circuit. (PageID.562). Thus, in addition to their inflammatory nature, they are impertinent, and striking the allegations is appropriate.[6]

## III. CONCLUSION

For the foregoing reasons and those stated in their moving brief, Defendants respectfully request that their motion to dismiss and to strike be granted in its entirety.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

/s/Scott R. Eldridge
**Scott R. Eldridge** (P66452)

[6] Plaintiff alleges that each paragraph is true – which Defendants deny. The veracity of an allegation also has no bearing under Rule 12(f).

**Kiffi Y. Ford** (P54852)
**Ashley N. Higginson** (P83992)
***Attorneys for MSU and the Individual Defendants***
Miller, Canfield, Paddock, and Stone, P.L.C.
120 N. Washington Square, Suite 900
Lansing, Michigan
Office: 517-487-2070
eldridge@millercanfield.com
higginson@millercanfield.com
ford@millercanfield.com

May 2, 2022

## CERTIFICATE OF COMPLIANCE

In accordance with Local Civ. R. 7.2(b)(ii), this brief in support of motion to dismiss includes 4,190 words, excluding the caption, table of authorities, table of contents, signature block, and exhibits. This word count was calculated by Microsoft 2016's word processing system.

Respectfully submitted,

*/s/ Scott R. Eldridge*
**Scott R. Eldridge**
***Attorneys for Defendant Peckham, Inc.***
Miller, Canfield, Paddock, and Stone, P.L.C.