UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CHRISTIE POITRA,<br><br>Plaintiff,<br><br>v.<br><br>MICHIGAN STATE UNIVERSITY; MICHIGAN STATE UNIVERSITY BOARD OF TRUSTEES; SAMUEL L. STANLEY, JR.; SATISH UDPA; LOU ANNA K. SIMON; JOHN M. ENGLER; RONALD L. HENDRICK; ROBERT KENT; TANYA JACHIMIAK; JOHN NORDER; and QUENTIN TYLER; in their official and individual capacities,<br><br>Defendants. | Case No. 1:22-cv-00047<br><br>Hon. Jane M. Beckering |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT ENGLER'S MOTION TO DISMISS PLAINTIFF CHRISTIE POITRA'S FIRST AMENDED COMPLAINT AND JOINDER IN MSU DEFENDANTS' MOTION TO DISMISS (ECF NOS. 17-18)**

Plaintiff Christie Poitra, through undersigned counsel, respectfully submits this Response in Opposition to Defendant Engler's Motion to Dismiss Plaintiff Christie Poitra's First Amended Complaint and Joinder in MSU Defendants' Motion to Dismiss (ECF Nos. 17-18) ("Motion") (ECF No. 27). Plaintiff's Complaint includes only factual allegations which properly state relevant, material claims against Defendants, and the Motions must be denied.

1

## **TABLE OF CONTENTS**

| | |
|---|---|
| STATEMENT OF FACTS | 6 |
| PROCEDURAL BACKGROUND | 6 |
| LAW AND ARGUMENT | 7 |
|    Applicable legal standard | 7 |
|    Plaintiff's claims were timely filed | 7 |
|       Plaintiff's claims accrued during the statutory period and are not time-barred | 8 |
|       Plaintiff's claims are not time-barred under the continuing violation doctrine | 8 |
|    Plaintiff's Section 1983 claims against Defendant Engler should not be dismissed | 9 |
|       Plaintiff has liberty and property interests in her bodily integrity, reputation, and career advancement | 10 |
|          Bodily integrity | 10 |
|          Reputation and career advancement | 11 |
|       Plaintiff has alleged sufficient facts to support a substantive due process violation claim | 13 |
|       Plaintiff has alleged sufficient facts to support a procedural due process violation claim | 14 |
|       Defendant Engler is not entitled to qualified immunity | 14 |
|    Plaintiff has sufficiently pled her claims against Defendants | 15 |
|       Plaintiff's ELCRA discrimination and retaliation claims should not be dismissed | 16 |
|       Plaintiff's PWDCRA claims should not be dismissed | 16 |
|    The Court should not strike paragraphs 389-475 of the Complaint | 17 |
| CONCLUSION | 19 |

# **TABLE OF AUTHORITIES**

*Cases*

*Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394 (6th Cir. 1999)       7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)       6, 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)       6

*Bickerstaff v. Lucarelli*, 830 F.3d 388 (6th Cir. 2016)       6, 14

*Brown & Williamson Tobacco Corp. v. U.S.*, 201 F.2d 819 (6th Cir. 1953)       16

*Cahoo v. SAS Analytics Inc.*, 912 F.3d 887 (6th Cir. 2019)       13

*Carolan v. Kansas City*, 813 F.2d 178 (1987)       8

*Collins v. City of Harker Height*s, 503 U.S. 115 (1992).       8

*Directv, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007)).       6

*Doe v. Claiborne County, Tenn. By and Through Claiborne County Bd. of Educ.*, 103 F.3d 495 (6th Cir. 1996)       9

*E.E.O.C. v. Penton Indus. Pub. Co., Inc.*, 851 F.2d 835 (6th Cir. 1988)       7, 8

*Endres v. Ne. Oh. Med. Univ.*, 938 F.3d 281 (6th Cir. 2019)       6

*Guertin v. State*, 912 F.3d 907 (6th Cir. 2019)       9, 10

*Hahn v. Star Bank*, 190 F.3d 708 (6th Cir. 1999)       13

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)       13

*Janikowski v. Bendix Corp.*, 823 F.2d 945 (6th Cir. 1987))       7

*Johnson v. County of Macomb*, No. 08-10108, 2008 WL 2064968 (E.D. Mich. May 13, 2008)       17

*Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123 (1951)       12, 13

*Kennedy v. City of Cleveland*, 797 F.2d 297 (6th Cir. 1986)       16

*Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716 (6th Cir. 1996)       6

*Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760 (E.D. Mich. 2014)       17

*Lunsford v. U.S.*, 570 F.2d 221 (8th Cir. 1977)       16

3

*Operating Eng'rs v. G & W Constr. Co.*, 783 F.3d 1045 (6th Cir. 2015) ............................... 16

*Paul v. Davis,* 424 U.S. 693 (1976). ........................................................................... 10, 11

*Pearson v. Callahan*, 555 U.S. 223 (2009). ....................................................................... 13

*Perry v. Sindermann*, 408 U.S. 593 (1972). ........................................................................ 8

*Planned Parenthood Southwest Ohio Region v. DeWine*, 696 F.3d 490 (6th Cir. 2012) ..... 9

*Sevier v. Turner,* 742 F.2d 262 (6th Cir. 1984) .................................................................... 6

*Siberstein v. City of Dayton*, 440 F.3d 306 (6th Cir. 2006) ............................................... 13

*Siegert v. Gilley*, 500 U.S. 226 (1991) ............................................................................... 11

*Union Pacific Railway Co. v. Botsford*, 141 U.S. 250 (1891) .............................................. 9

*Vest v. Resolute FP US Inc.*, 905 F.3d 985 (6th Cir. 2018) ................................................. 6

*Wisconsin v. Constantineau*, 400 U.S. 433 (1971). .......................................................... 10

## *Statutes*

42 U.S.C. § 1983 ................................................................................................................ 11

M.C.L. § 37.1202(1) ........................................................................................................... 15

M.C.L. § 37.1602(a) ........................................................................................................... 16

M.C.L. § 37.2201(a) ........................................................................................................... 15

M.C.L. § 37.2202 ............................................................................................................... 15

M.C.L. § 37.2701(a) ........................................................................................................... 15

M.C.L. § 6000.5805(1) ........................................................................................................ 6

M.C.L. § 6000.6452. ............................................................................................................ 6

M.C.L. §§ 37.2201 *et seq*. ............................................................................................ 14, 15

## *Rules*

Fed. R. Civ. P. 12(f). .......................................................................................................... 16

Fed. R. Civ. P. 8(a).

## I.     STATEMENT OF FACTS

This Complaint was brought by Plaintiff, Dr. Christie Poitra, a highly qualified employee at Michigan State University working as the Interim Director of the Native American Institute ("NAI").  Am. Compl., PageID.125-127. For years, Plaintiff's former supervisor, Dr. John Norder, discriminated and retaliated against her on the basis of her sex and disability. Am. Compl., PageID.139-152. Once her abuse was reported, MSU's Office of Institutional Equity ("OIE") took over five hundred days to investigate and resolve the complaint, ultimately finding Norder responsible for sex discrimination against Plaintiff but not disability discrimination. Am. Compl., PageID.145-157. As the investigation dragged on, and for years after the investigation finally concluded, MSU administrators continued to discriminate and retaliate against Plaintiff on the basis of her sex and disability. Am. Compl., PageID.139-152, 157-169.  Defendant Engler served as Interim President of MSU from January 31, 2018, to January 17, 2019.

## II.    PROCEDURAL BACKGROUND

On January 19, 2022, Plaintiff filed this action. Plaintiff filed an Amended Complaint on February 2, 2022. In response, all Defendants other than Engler and Norder filed a Motion to Partially Dismiss Plaintiff's Complaint and Motion to Strike Paragraphs 389 through 476 of Amended Complaint on March 21, 2022.  Defendant Engler filed a separate Motion to Dismiss Plaintiff Christie Poitra's First Amended Complaint and Joinder in MSU Defendants' Motion to Dismiss (ECF Nos. 17-18) on May 3, 2022, incorporating the substance of the MSU Defendants' March 21, 2022, Motion.  Plaintiff incorporates by reference Plaintiff's Response in Opposition to Defendants MSU, MSU Board of Trustees, Stanley, Udpa, Simon, Hendrick, Kent, Jachimiak, and

6

Tyler's Motion to Partially Dismiss Plaintiff's Complaint and Motion to Strike Paragraphs 389 through 476 of Amended Complaint filed on April 18, 2022 (ECF No. 23).

### III.  LAW AND ARGUMENT

#### A. Applicable legal standard

To survive a motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The United States Supreme Court has held that a complaint is only properly dismissed under Rule 12(b)(6) when it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard is more than a sheer possibility, but it is not a probability requirement. *See Twombly*, 550 U.S. at 556. A complaint states a plausible claim for relief, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Vest v. Resolute FP US Inc.*, 905 F.3d 985, 987 (6th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In reading the alleged facts, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (citing *Directv, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007)). Therefore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that the actual proof of the facts alleged is improbable and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal citations omitted).

#### B. Plaintiff's claims were timely filed

Title IX does not expressly provide a statute of limitations under which plaintiffs can bring claims, but instead incorporates the relevant state's personal injury statute of limitations. *Lillard*

*v. Shelby County Bd. of Educ.,* 76 F.3d 716, 728-729 (6th Cir. 1996). Applying Michigan law, Plaintiff's claims under Title IX and the ADA are subject to a three-year statute of limitations. M.C.L. § 6000.5805(1); M.C.L. § 6000.6452. "Under federal law, the statute of limitation period begins 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Endres v. Ne. Oh. Med. Univ.,* 938 F.3d 281, 292 (6th Cir. 2019) (quoting *Sevier v. Turner,* 742 F.2d 262, 273 (6th Cir. 1984)). Three years before the date of filing was January 19, 2019. Defendant Engler's failures and inactions directly impacted Plaintiff during the relevant time period and Plaintiff's claims are therefore timely filed.

### 1. *Plaintiff's claims accrued during the statutory period and are not time-barred*

Defendant Engler argues that all Plaintiff's claims are time-barred because the initial Complaint was filed outside of the statute of limitations period. Mot. to Dismiss, PageID.740. This argument fails as the Complaint was filed during the statutory period and the claims are not time-barred under the continuing tort doctrine. Therefore, Defendant Engler's Motion should be denied.

### 2. *Plaintiff's claims are not time-barred under the continuing violation doctrine*

The Sixth Circuit has long recognized that "an ongoing, continuous series of discriminatory acts may be challenged if one of those discriminatory acts occurred within the limitations period." *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 408 (6th Cir. 1999). There are two recognized exceptions under the continuing violation doctrine, the first category arising "where there is some evidence of present discriminatory activity giving rise to a claim of a continuing violation," and the second category arising "where there has been a long-standing and demonstrable policy of discrimination[.]" *E.E.O.C. v. Penton Indus. Pub. Co., Inc.*, 851 F.2d 835,

837-838 (6th Cir. 1988). For the second category of claims, "To constitute such an established pattern, the plaintiff must clearly demonstrate some 'over-arching policy of discrimination,' and not merely the occurrence of an isolated incident of discrimination." *Penton* 851 F.2d at 838 (citing *Janikowski v. Bendix Corp.*, 823 F.2d 945, 948 (6th Cir. 1987)).

Here, Defendant Engler's actions and inactions constitute an already established pattern of discriminatory conduct, extending without interference over a span of several years, and throughout Engler's term as interim president. The pattern of conduct in which MSU and Engler engaged is exactly the type of conduct that the Court envisioned in *Penton*, a "long-standing and demonstrable policy of discrimination[.]" *Penton*, 851 F.2d at 837-838. What Plaintiff experienced was far from one isolated incident, but rather a pattern that affected not only the Plaintiff, but women throughout MSU. Each of Plaintiff's claims fits squarely within the continuing violation doctrine, and Defendant Engler's Motion should be denied.

### C. Plaintiff's Section 1983 claims against Defendant Engler should not be dismissed

At its core, the Due Process Clause is aimed to restrict government action by "prevent[ing] government from abusing its power, or employing it as an instrument of oppression." *Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992). In *Perry v. Sindermann*, the United States Supreme Court clearly established the obvious principle that if public universities have mandatory disciplinary procedures and plaintiffs are eligible for the protections of those procedures, failing to follow the published procedures constitutes an unconstitutional deprivation of plaintiffs' property without due process. *See Perry v. Sindermann*, 408 U.S. 593 (1972). Therefore, under the Due Process Clause, deprivation of Plaintiff's liberty and property interests arising out of MSU's Relationship Violence and Sexual Misconduct Policy ("RVSM Policy"), Anti-Discrimination Policy ("ADP"), and state and federal law and guidance should not have occurred without notice

9

and a meaningful opportunity to be heard. Therefore, Defendant Engler's Motion should be denied.

> 1. *Plaintiff has liberty and property interests in her bodily integrity, reputation, and career advancement*

   a. <u>Bodily integrity</u>

As a threshold matter, analysis of a due process claim, whether substantive or procedural, starts with an examination of the constitutional interest that has been violated. *See Carolan v. Kansas City*, 813 F.2d 178, 181 (1987). Courts have long recognized the right to bodily integrity:

> The right to personal security and to bodily integrity bears an impressive constitutional pedigree. As far back as 1891, the Supreme Court recognized that "[n]o right is held more sacred, or is more carefully guarded…than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law."

*Doe v. Claiborne County, Tenn. By and Through Claiborne County Bd. of Educ.*, 103 F.3d 495, 506 (6th Cir. 1996) (citing *Union Pacific Railway Co. v. Botsford*, 141 U.S. 250, 251 (1891).

Here, Defendants argue that Plaintiff "cannot identify any deprivation of her bodily integrity." Mot. to Dismiss, PageID.742. Defendant relies entirely on the arguments made by MSU Defendants in their Motion to Dismiss and Strike, which selectively cites to *Guertin v. State*, 912 F.3d 907 (6th Cir. 2019), to support this argument: "Individuals 'possess a constitutional right to be free from forcible intrusions on their bodies against their will, absent a compelling state interest." Mot. to Dismiss and Strike, PageID.244. In fact, the quotation Defendants attribute to *Guertin* was quoted from *Planned Parenthood Southwest Ohio Region v. DeWine*, 696 F.3d 490, 506 (6th Cir. 2012), as the *Guertin* holding itself states, which was a case involving a challenge to Ohio's 2004 law criminalizing the distribution of mifepristone. The *Guertin* court, hearing arguments as to whether victims of the Flint water crisis experienced a denial of due process with

10

respect to violations of their bodily integrity, expanded the definition of what constituted "bodily integrity" under the law. Immediately before the brief snippet selected by Defendants, the *Guertin* court wrote:

> Bodily integrity cases "usually arise in the context of government-imposed punishment or physical restraint," but that is far from a categorical rule. Instead, the central tenet of the Supreme Court's vast bodily integrity jurisprudence is balancing an individual's common law right to informed consent with tenable state interests, regardless of the manner in which the government intrudes upon an individual's body. Thus, to show that the government has violated one's right to bodily integrity, a plaintiff need not "establish any constitutional significance to the means by which the harm occurs[.]"

*Guertin*, 912 F.3d at 919 (internal citations omitted). Relying on the holding in *Guertin*, Plaintiff need not establish any constitutional significance to how her harm occurred, either. As she detailed at length in her complaint, Plaintiff experienced numerous violations to her bodily integrity without due process due to the actions and inactions of Defendants, including chest pains, a panic attack, temporomandibular joint dysfunction ("TMJ"), weight gain, post-traumatic stress disorder ("PTSD"), joint pain, digestive symptoms, muscle tension, jaw pain, sleep disturbances, nightmares, anxiety, hypervigilance, and menstrual irregularity. Am. Compl., PageID.169-170. These physical manifestations directly resulted from abuse she suffered at the hands of Defendants. That Defendants did not hold Plaintiff down and, for example, break her jaw or force-feed her, is not relevant. Therefore, Defendant Engler's Motion should be denied.

      b. <u>Reputation and career advancement</u>

Defendant Engler claims that Plaintiff has not identified a constitutionally protected right, and thus cannot bring a claim for due process violation on that basis. Again, Defendant Engler relies solely on the arguments presented in MSU's Motion to Dismiss and Strike, which argues that Plaintiff does not have a protected right to her reputation and career advancement. Defendants'

interpretation of the law is incorrect. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). Defendants cite to *Paul v. Davis* to support their argument. Again, Defendants do not provide the whole picture of the court's holding. As the Court held in *Paul v. Davis*:

> It is apparent from our decisions that there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either "liberty" or "property" as meant in the Due Process Clause. These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law, and we have repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status.

*Paul v. Davis,* 424 U.S. 693, 710-711 (1976). While the *Paul v. Davis* Court ultimately decided that reputation in that instance was not enough to sustain a claim of a due process violation, it held that reputation, coupled with the deprivation of another right, was sufficient. *Id*. at 711-712. Here, Plaintiff has met the two-prong standard provided in *Paul v. Davis*: 1) Defendants deprived her of her reputation and career opportunities, 2) through repeated and systemic discrimination. Plaintiff has the right to be free of such discrimination, and such a right coupled with her right to her reputation meets the standard defined in *Paul v. Davis. Siegert v. Gilley*, the other case cited by Defendants, is also referenced selectively. As the *Siegert* Court holds:

> In *Paul v. Davis*, the plaintiff's photograph was included by local police chiefs in a "flyer" of "active shoplifters," after petitioner had been arrested for shoplifting. The shoplifting charge was eventually dismissed, and the plaintiff filed suit under 42 U.S.C. 1983 against the police chiefs, alleging that the officials' actions inflicted a stigma to his reputation that would seriously impair his future employment opportunities, and thus deprived him under color of state law of liberty interests protected by the Fourteenth Amendment.
>
> We rejected the plaintiff's claim, holding that injury to reputation *by itself* was not a "liberty" interest protected under the Fourteenth Amendment. 424 U. S., at 708-709. We pointed out that our reference to a governmental employer stigmatizing an employee in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972), was

> made in the context of the employer discharging or failing to rehire a plaintiff who claimed a liberty interest under the Fourteenth Amendment. Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation.

*Siegert v. Gilley*, 500 U.S. 226, 233 (1991) (emphasis added).

The reason the Court denied plaintiffs' due process claims in *Paul* and *Siegert* was not because they alleged reputational harm as a denial of a constitutional right but rather because they did not allege it with another constitutional claim. This is not the case with Plaintiff. Therefore, Defendant Engler's Motion should be denied.

### 2. *Plaintiff has alleged sufficient facts to support a substantive due process violation claim*

The Fourteenth Amendment to the United States Constitution protects fundamental liberty interests against certain governmental intrusions irrespective of the fairness of the procedures utilized. Plaintiff has established that she suffered a deprivation of constitutional rights in the form of a denial of substantive due process due to the deprivation of her fundamental liberty and property interests in bodily integrity and her reputation. These deprivations resulted from the pervasive culture of failing to respond appropriately to complaints of discrimination and retaliation at MSU, which Defendant Engler directly fostered.

Plaintiff has pled sufficient facts to demonstrate that Defendants Engler was responsible for oversight and ensuring that various responsible university units complied with their legal obligations to ensure an environment free of discrimination based on protected classes and that their failures led to harm to Plaintiff's physical and mental health and her professional reputation. Defendant Engler's failure to adequately oversee compliance with legal standards thus deprived Plaintiff of her liberty and property interests in bodily integrity and her reputation and opportunity for career advancement. Therefore, Defendant Engler's motion should be denied.

### 3. *Plaintiff has alleged sufficient facts to support a procedural due process violation claim*

The Fourteenth Amendment prohibits state actors from depriving an individual of fundamental liberty interests without due process of law. "[T]he right to be heard before being condemned to suffer grievous loss of any kind…is a principle basic to our society." *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring). To state a procedural due process claim, a plaintiff must establish the following elements: "(1) that they have a property interest protected by the Due Process Clause; (2) that they were deprived of this property interest; and (3) that the state did not afford them adequate pre-deprivation procedural rights." *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 900 (6th Cir. 2019) (citing *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999)). Plaintiff was afforded no Procedural Due Process prior to Defendants' deprivation of her substantive due process rights as outlined in the previous section. Therefore, Plaintiff has alleged sufficient facts for a Procedural Due Process claim and Defendant Engler's Motion should be denied.

### 4. *Defendant Engler is not entitled to qualified immunity*

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When qualified immunity is invoked in a motion to dismiss, a court must view the facts in the light most favorable to the plaintiff and consider whether the complaint plausibly alleges that (1) the conduct violated a constitutional right; and (2) that the constitutional right was "clearly established" at the time. *See Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009). A "clearly established statutory or constitutional right" requires that a reasonable person would be aware that

14

their conduct violated that right in the circumstances under which the conduct occurred. *Harlow*, 457 U.S. at 818. The Sixth Circuit has also defined this two-step process in determining if qualified immunity applies. *Cahoo,* 912 F.3d at 897. "First, taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right? Second, is the right clearly established?" *Siberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

Defendants argue that Plaintiff has failed to assert any individualized conduct by the individual Defendant Engler; however, this is simply not the case. Plaintiff has alleged specific violations as to Defendant Engler. As MSU President, Engler was responsible for oversight of the university and ensuring that the university complied with its obligations to keep employees safe. Am. Compl., PageID.195. Plaintiff has alleged individualized conduct and met each element of the qualified immunity test; therefore, Defendants are not entitled to qualified immunity. Defendant Engler's Motion should be denied.

### D.  Plaintiff has sufficiently pled her claims against Defendant Engler

Plaintiff has pled sufficient facts to state facially plausible claims against Defendants. A complaint states a plausible claim for relief, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Vest*, 905 F.3d at 987 (citing *Ashcroft*, 556 U.S. at 678). In reading the alleged facts, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bickerstaff*, 830 F.3d at 396 (citing *Directv, Inc.*, 487 F.3d at 476. Accepting Plaintiff's allegations as true, as this Court must, Defendant Engler's motion to dismiss the following claims against them must be denied.

### 1. *Plaintiff's ELCRA discrimination and retaliation claims should not be dismissed*

Plaintiff has alleged sufficient facts to support her claims under the Elliott-Larsen Civil Rights Act ("ELCRA"). ELCRA prohibits an employer from discriminating against an employee on the basis of sex. *See* M.C.L. §§ 37.2201 *et seq*. Further, ELCRA prohibits retaliation and discrimination "against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing." M.C.L. § 37.2701(a).

First, Defendant Engler is an agent of employer MSU within the meaning of ELCRA. M.C.L. § 37.2201(a). Second, Plaintiff is an employee within the meaning of ELCRA, and within several protected classes as a Latina and Native woman. *See* M.C.L. § 37.2202. Finally, Defendants repeatedly discriminated against Plaintiff by failing to comply with the procedures and timelines outlined in their own RVSM Policy, failing to timely investigate and respond to Defendant Norder's ongoing harassment of her, failing to ensure that the effects of Defendant Norder's discrimination against her were fully remedied, failing to respond appropriately to her reports of retaliation by Defendant Norder, and failing to adequately train and supervise their staff with respect to the handling of Title IX complaints. Plaintiff has pled sufficient facts to demonstrate a violation of ELCRA by these Defendants, and Defendant Engler's Motion should be denied.

### 2. *Plaintiff's PWDCRA claims should not be dismissed*

Plaintiff has sufficiently pled each element required for a claim under Michigan's Persons with Disabilities Civil Rights Act. PWDCRA, in relevant part, requires,

> (1) Except as otherwise required by federal law, an employer shall not: (a) Fail or refuse to hire, recruit, or promote an individual because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position. (b) Discharge or otherwise discriminate against an

16

> individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position.

M.C.L. § 37.1202(1). The PWDCRA further prohibits retaliation "against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing." M.C.L. § 37.1602(a).

Plaintiff is a person with a disability under the meaning of PWDCRA and therefore is subject to its protections. Defendants knew about Plaintiff's disability, as Plaintiff worked with the Michigan State University Resource Center for Persons with Disabilities ("RCPD"), and RCPD shared information with employees' supervisors. Am. Compl., PageID.139. Therefore, at a minimum, Defendants Norder and Tyler knew about Plaintiff's disability, and Defendant Engler's role as President made him responsible for overseeing all university staff, including Tyler and Norder. *Id*. Defendants discriminated against Plaintiff by not only harassing her on the basis of her disability but also failing to provide appropriate accommodations to do her job, of which Defendants were on notice. *Id*. at 149. Plaintiff has plead sufficient facts to sustain a PWDCRA claim, and Defendant Engler's Motion should be denied.

### E.  The Court should not strike paragraphs 389-475 of the Complaint

Rule 12(f) of the Federal Rules of Civil Procedure allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are viewed with disfavor and are not frequently granted." *Operating Eng'rs v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citing *Brown & Williamson Tobacco Corp. v. U.S.*, 201 F.2d 819, 822 (6th Cir. 1953); *Lunsford v. U.S.*, 570 F.2d 221, 229 (8th Cir. 1977)). The purpose of such a Motion to Strike "is to avoid the expenditure of

17

time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986).

The allegations in this section of Plaintiff's Complaint are essential, and a direct showing of how MSU has spent years creating an environment where discrimination and retaliation were not only permitted but thrived. These allegations are certainly relevant to the claims and do not seek to "offend and insert scandal" as Defendants suggest, but rather demonstrate the culture of abuse that Plaintiff, among others, had to endure at MSU. Mot. to Dismiss and Strike, PageID.253. One of the examples Defendants include to argue for their position is *Johnson v. County of Macomb*, No. 08-10108, 2008 WL 2064968 (E.D. Mich. May 13, 2008), a case in which plaintiffs bringing civil rights claims alleged that the President of the Parks Commission had "known ties to organized crime," thereby asserting that he engaged in multiple federal crimes. *Id*. at 3. The other is *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760 (E.D. Mich. 2014), a case in which a group of tenants alleged fraud against the defendants, and as part of their complaint, alleged that the defendants "may have laundered to Hezbollah the money that they took from the plaintiffs." *Id*. at 777. Both sets of allegations include highly inflammatory accusations of engagement in federal criminal activity. More notably, neither set of allegations appears to be true. *Johnson* and *Llewelyn-Jones* are distinguished from the instant case, as the same cannot be said of the allegations contained in paragraphs 387 through 475 of the amended complaint – the information is about the Defendants and MSU's Title IX complaint response process; it contains no allegations of criminal activity; and it is true (unless, with respect to paragraphs 387 through 430, MSU produced false information in response to a public record request).

Finally, Defendant Engler has provided no explanation as to how he is harmed by these paragraphs. For example, it is unclear how a copy of a letter sent to an employee, or a recitation

18

of problems in a student's Title IX investigation, is comparable to a false accusation that one is a member of a militant global terrorist organization. Accordingly, Defendant Engler's Motion should be denied.

## IV. CONCLUSION

Plaintiff respectfully requests that this Court deny Defendant Engler's Motion to Dismiss Plaintiff Christie Poitra's First Amended Complaint and Joinder in MSU Defendants' Motion to Dismiss (ECF Nos. 17-18).

Respectfully Submitted,

**s/ Elizabeth K. Abdnour P78203**
ELIZABETH ABDNOUR LAW, PLLC
1100 W. Saginaw St., Ste. 4A-2
Lansing, MI 48915
Telephone: (517) 292-0067
Fax: (517) 292-0067
Email: elizabeth@abdnour.com


Karen Truszkowski P56929
TEMPERANCE LEGAL GROUP, PLLC
1100 W. Saginaw St., Ste. 4A-1
Lansing, MI 48915
Telephone: (844) 534-2560
Fax: (800) 521-6527
Email: karen@temperancelegalgroup.com

*Attorneys for Plaintiff*

Dated: May 30, 2022

**CERTIFICATE OF COMPLIANCE**

As required under Loc. Civ. R. 7.2(b)(i), I hereby certify that this brief includes 4,201 words including headings, footnotes, citations, and quotations and not including the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, and affidavits. This word count was generated by Microsoft Word 365, the word processing software used to draft the brief.

**s/ Elizabeth K. Abdnour P78203**
ELIZABETH ABDNOUR LAW, PLLC
Attorney for Plaintiff

**PROOF OF SERVICE**

I hereby certify that on May 30, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

**s/ Elizabeth K. Abdnour P78203**
ELIZABETH ABDNOUR LAW, PLLC
Attorney for Plaintiff