UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTIE POITRA,

    Plaintiff,

-v-

MICHIGAN STATE UNIVERSITY,
MICHIGAN STATE UNIVERSITY BOARD
OF TRUSTEES; SAMUEL L. STANLEY, JR.;
SATISH UDPA; LOU ANNA K. SIMON;
JOHN M. ENGLER; RONALD L. HENDRICK:
ROBERT KENT; TANYA JACHIMIAK;
JOHN NORDER; and QUENTIN TYLER;
in their official and individual capacities,

    Defendants.

Case No. 22-CV-00047

Hon. Jane M. Beckering

**REPLY BRIEF IN SUPPORT OF DEFENDANT JOHN M. ENGLER'S MOTION TO DISMISS PLAINTIFF CHRISTIE POITRA'S FIRST AMENDED COMPLAINT AND JOINDER IN MSU DEFENDANTS' MOTION TO DISMISS (ECF NOS. 17–18)**

**ORAL ARGUMENT REQUESTED**

## I. INTRODUCTION

All of Plaintiff's claims against Engler fail and should be promptly dismissed. Plaintiff's Response in Opposition to Defendant Engler's Motion to Dismiss Plaintiff Christie Poitra's First Amended Complaint and Joinder in MSU Defendants' Motion to Dismiss ("Plaintiff's Response") only further demonstrates how implausible and improper her claims against Engler are, and how deficient her First Amended Complaint is.

Preliminarily, Plaintiff wholly fails to address several of Engler's arguments in her Response, thereby abandoning those claims. As to the arguments that she does address, she does not demonstrate any reason the Court should not grant Engler's Motion to Dismiss. First, Plaintiff's resort to the continuing violations doctrine does not save her claims against Engler. Further, even if it did, Plaintiff fails to state ELCRA, PWDCRA, or § 1983 claims against Engler. Finally, Paragraphs 389–475 should be stricken for all of the reasons explained in the MSU Defendants' Motion to Dismiss and Reply in Support of same, and these paragraphs do harm Engler.

Ironically, Plaintiff begins her Response by reiterating her sole, threadbare factual allegation against Engler: "Defendant Engler served as Interim President of MSU from January 31, 2018, to January 17, 2019." (Pl. Resp., ECF No. 31, PageID.786.) As thoroughly explained in the MSU Defendants' Motion to Dismiss and their Reply Brief in Support of same, as well as Engler's own Motion to Dismiss, this single fact is woefully insufficient to state claims against Engler in his individual or "official" capacity. Accordingly, the Court should grant Engler's Motion to Dismiss in its entirety and dismiss all of Plaintiff's claims against him.

## II. ARGUMENT

The First Amended Complaint should be dismissed for the reasons set forth in the MSU Defendants' Motion to Dismiss, their Reply Brief in Support of same, and Engler's Motion to

Dismiss. Engler hereby adopts, incorporates, and relies upon the MSU Defendants' Reply Brief in Support of their Motion to Dismiss (ECF No. 25), as if fully set forth herein.

### A. Plaintiff Fatally Ignores Many of Engler's Arguments.

While inexplicably addressing Title IX claims and other issues unrelated to her claims against Engler,[1] Plaintiff completely ignores most of Engler's legal arguments and does not respond to them at all. Consequently, Plaintiff abandoned any counter-arguments or response she might have had. *Ritchie v. Coldwater Cmty. Sch.*, 947 F. Supp. 2d 791, 825 (W.D. Mich. 2013).

Specifically, Plaintiff wholly failed to address Engler's argument that any claims against him in his official capacity are properly dismissed because he is no longer the Interim President of MSU and thus holds no "official capacity" as to Plaintiff's claims. (Engler Motion to Dismiss, ECF No. 28, PageID.739.) As such, to the extent that Plaintiff alleges any such claims, she has abandoned them. *Ritchie*, 947 F. Supp. 2d at 825.

Next, although Plaintiff pays lip service to her procedural due process claim, she fails to substantively respond to Defendants' argument that she received ample procedural due process. (ECF No. 31, PageID.794.) She does not identify the ways in which the process she received was inadequate, nor does she explain what additional process Defendants actually could have provided – let alone should have provided – prior to the alleged deprivations. Given the very nature of the alleged deprivations, it is unclear how any additional "process" could have been provided, and Plaintiff does not explain her theory.[2] She also does not address Defendants'

---

[1] By way of example, Plaintiff devotes significant space in her Response to her Title IX claims and issues related thereto. (*See, e.g.*, ECF No. 31, PageID.787–788.) However, Plaintiff alleges no Title IX claims against Engler in her First Amended Complaint.

[2] Plaintiff's § 1983 procedural due process claim is facially illogical. (ECF No. 31, PageID.791; *see also* MSU Defs' Reply Br., ECF No. 25, PageID.680–681.) Plaintiff's alleged "injuries" are, by their very nature, gradually occurring over time. They are not discrete injuries

argument that her equal protection claim fails because she fails to identify any similarly-situated individual outside of her protected class. This claim is, therefore, abandoned, as well. *Ritchie*, 947 F. Supp. at 825.

With respect to her state law claims, Plaintiff does not address Defendants' argument that she suffered no adverse employment action. She likewise does not respond to Defendants' argument that her discrimination claims fail without any similarly-situated individuals outside of her protected class treated better than she. She does not counter Engler's argument that her retaliation claims fail because Engler did not know about her alleged protected activities. She does not answer Engler as to how her disability claims can still proceed against *him* when *he himself* had no knowledge of her disability.

### B.  Plaintiff's Claims against Engler are Time-Barred.

Plaintiff acknowledges that a three-year statute of limitations governs her claims. (ECF No. 31, PageID.788.) She further acknowledges that "[t]hree years before the date of filing was January 19, 2019." (*Id.*) She concedes that Engler served as Interim President of MSU from January 31, 2018 to January 17, 2019. (*Id.*, PageID.786.) It appears that Plaintiff recognizes that it is temporally impossible for Engler to have taken any actions against her or her employment during the statutory period. (*Id.*)

Nevertheless, Plaintiff insists her claims are not time-barred. Plaintiff contends that "Engler's failures and inactions" (presumably during his time as Interim President) "directly impacted Plaintiff during the relevant time period," making her claims against him timely.

---

attributable to any one specific event. No single incident caused them. (*See* ECF No. 25, PageID.680.) Hence, it makes no sense for her to contend that Defendants purportedly failed to afford her procedural due process before "inflicting" these injuries. Properly understood, Plaintiff's symptoms are not "injuries." Rather, they are her alleged damages. They are allegedly the results of Defendants' alleged actions, not actual injury-inflicting actions in and of themselves. (*See* ECF No. 25, PageID.680.)

Essentially, Plaintiff seems to argue that unspecified conduct by Engler that occurred outside the statutory time period later caused violations that occurred during the statutory time period for which Engler can be held liable.

Plaintiff's reference to the continuing violation doctrine is unavailing. (*See* MSU Defs' Reply, ECF No. 25, PageID.674–675.) Parties seeking to invoke the continuing violations doctrine must still allege specific discriminatory act(s) *within* the applicable limitations period. *Pittman v. Spectrum Health Sys.*, 612 F. App'x 810, 813 (6th Cir. 2015).

Plaintiff, however, alleges no facts in her First Amended Complaint that support this theory. Plaintiff describes a "pattern of discriminatory conduct, extending without interference over a span of several years, and throughout Engler's term as interim president." (ECF No. 31, PageID.789.) She claims that "Engler's actions and inactions constitute" a part of that pattern.[3] However, she alleges **no** specific actions or inactions by Engler that harmed her, let alone any actions or inactions by Engler within the limitations period. On the contrary, Plaintiff obfuscates this issue by being intentionally vague with regards to timing, neglecting to identify whether Engler was Interim President when various incidents occurred.

In fact, even assuming she could properly invoke a continuing violations theory, she does not allege any discriminatory actions by Engler *before* January 17, 2019 that "directly impacted her" *after* January 19, 2019. Instead, she paints with a broad brush, lumping Engler in with all of the other characters in her narrative. This is not enough to state claims against him and not

---

[3] Plaintiff tries to characterize Engler's employment by MSU in and of itself as active participation in her alleged pattern of discriminatory conduct. Put differently, Plaintiff seeks to hold Engler personally and individually liable for the conduct of any MSU employee based solely on Engler's mere presence on campus in a leadership position. Plaintiff cites no legal authority in support of this far-reaching theory of liability.

enough to allege discriminatory conduct by him during the limitations period. Even with a continuing violations theory, there still must be a violation to begin with. Plaintiff alleges none.

### C. Plaintiff Fails to State ELCRA, PWDCRA, and § 1983 Claims against Engler.

#### 1. ELCRA and PWDCRA

Even if Plaintiff could otherwise state valid ELCRA discrimination and retaliation claims, which she cannot, Plaintiff alleges no facts to support Engler being **personally, individually** liable for such claims. It is true that individual defendants can, under certain circumstances, be held personally, individually liable for ELCRA violations. MCL 37.2201(a); *Comiskey v. Auto. Indus. Action Group (A.I.A.G.)*, 40 F. Supp. 2d 877, 891 (E.D. Mich. 1999). However, in order for an individual to be liable as an "employer" under the ELCRA, a plaintiff must allege facts to support such personal liability. *See Alexander v. Elec. Data Sys. Corp.*, 870 F. Supp. 749, 753 (E.D. Mich. 1994) (pointing out that "plaintiff's [Michigan Handicappers' Civil Rights Act] complaint fails to specify any actions on the part of defendant Jeros, and merely alleges that defendant Brechtelsbauer was 'part of the management team that interviewed plaintiff'").

Plaintiff contends that Engler "is an agent of employer MSU within the meaning of ELCRA." (ECF No. 31, PageID.796.) This is a legal conclusion, not a fact. In arguing that Engler being "an agent of employer MSU" is enough to allege individual ELCRA liability, Plaintiff conveniently ignores the important second half of that allegation: *"within the meaning of ELCRA."* Being "an agent of employer MSU," in and of itself, does not make Engler is an "agent" for individual ELCRA liability.

In order to be an "agent" for purposes of individual ELCRA liability, the "agent" must be "someone in a supervisory capacity who exercises significant control over the plaintiff's hiring,

firing, or conditions of employment." *Odigbo v. Northwest Airlines, Inc.*, 8 F. Supp. 2d 660, 664 (E.D. Mich. 1998). Here, Plaintiff does not allege any facts that could establish individual ELCRA liability against Engler. She alleges no facts demonstrating that Engler was "in a supervisory capacity" *vis a vis* Plaintiff. She does not allege Engler played any role in her hiring. She does not allege any ways, instances, or incidents in which Engler "exercised significant control" over any term or condition of her employment.

Indeed, Plaintiff argues only that "Defendants" discriminated against her. Fatally, she alleges nothing specific to Engler. This is not enough. *See Alexander*, 870 F. Supp. at 753 (concluding that, where the complaint did "not allege any individual wrongs by the defendant" it was "clear to the Court that the wrongs alleged in the instant case are indeed corporate wrongs for which the individual defendants have no liability").

As to her PWDCRA claim, Plaintiff alleges that "Engler's role as President made him responsible for overseeing all university staff, including Tyler and Norder." (ECF No. 31, PageID.797.) Plaintiff does not advance any argument to support that this is sufficient to state a claim against Engler other than baldly claiming that it is. And, as discussed above, she does not explain how her claims against Engler can proceed when Engler had no knowledge of her alleged protected activity and no knowledge of her disability.

### 2. § 1983

Plaintiff once again fails to point to any facts in her First Amended Complaint that support Engler's personal or individual liability or that defeat qualified immunity. *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) ("damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right") (emphasis in original). As such, Engler is entitled to qualified immunity and Plaintiff fails to plead a § 1983

claim against him. *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986) ("It is not enough for a complaint under § 1983 to contain mere conclusory allegation of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings."); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (§ 1983 plaintiff "must plead each Government-official defendant, through the official's own individual actions, has violated the Constitution," or else defendant is granted qualified immunity).

None of Plaintiff's purported "factual" allegations regarding Engler plead Engler's "own individual actions." *Iqbal*, 556 U.S. at 676. For instance, Plaintiff contends that "Engler's failure to adequately oversee compliance with legal standards [ ] deprived Plaintiff of her liberty and property interests in bodily integrity and her reputation and opportunity for career advancement." (ECF No. 31, PageID.793.) This is a bald legal conclusion containing no actual alleged actions by Engler and it is not enough. *Stoudemire v. Mich. Dept. of Corr.*, 705 F.3d 560, 570 (6th Cir. 2013) ("qualified immunity must be assessed in the context of each individual's specific conduct"). Plaintiff does not describe, for example, in what ways Engler failed to oversee compliance. She does not explain how Engler's oversight (or supposed lack thereof) was inadequate. She does not even identify which legal standards Engler supposedly neglected.

Similarly, Plaintiff conclusorily argues that Engler failed to "ensur[e]" that MSU "complied with its obligations to keep employees safe," but alleges no examples, instances, or incidents of how or when he failed to do so. (ECF No. 31, PageID.793.) This, too, is not enough; Plaintiff alleges no examples, instances, or incidents of how or when Engler purportedly failed to ensure MSU complied with its obligations. *Van Domelen v. Menominee Cty.*, 935 F. Supp. 918, 924 (W.D. Mich. 1996) (plaintiff must point to direct behaviors by each defendant that were unconstitutional to impose Section 1983 individual liability on individual defendants as

supervisors). Indeed, based on Plaintiff's First Amended Complaint, it is totally unclear what Plaintiff claims Engler actually did or did not do and, therefore, her claims against him should be dismissed.

### D. Paragraphs 389-475 of the First Amended Complaint Harm Engler

In Paragraphs 389–475 of her First Amended Complaint, Plaintiff improperly summons a specter of alleged rampant, egregious discrimination that has no connection whatsoever to her, her employment at MSU, or her legal claims; these paragraphs should be stricken under Federal Rule of Civil Procedure 12(f). *Wrench LLC v. Taco Bell Corp.*, 36 F. Supp. 2d 787, 789 (W.D. Mich. 1998). These paragraphs personally and directly harm Engler. Engler was Interim President for only a short window of time. By her inclusion of Paragraphs 389–475, Plaintiff inappropriately ties Engler to numerous sordid allegations, none of which have anything to do with him, and most of which did not even occur during his brief time as Interim President.

These allegations have nothing to do with Plaintiff's claims and everything to do with assassinating the characters of the individual defendants, including Engler. By stating these alleged irrelevant facts, she intentionally – albeit implicitly - accuses Engler of these harms without a shred of evidence connecting Engler to them.

### III. CONCLUSION

For all of these reasons, and as set forth in greater detail in Engler's Brief in Support of his Motion to Dismiss, the MSU Defendants' Motion to Dismiss, and the MSU Defendants' Reply Brief in Support of their Motion, all of Plaintiff's claims against Engler should be dismissed in their entirety.

        Respectfully submitted,

        DICKINSON WRIGHT PLLC

        By: *s/ Kathryn S. Wood*
            Kathryn S. Wood (P55012)
            Angelina R. Delmastro (P81712)
        *Attorneys for Defendant Engler*
        500 Woodward Avenue, Suite 4000
        Detroit, MI  48226
        (313) 223-3500
        kwood@dickinsonwright.com
        adelmastro@dickinsonwright.com

Dated:  June 10, 2022

## CERTIFICATE OF SERVICE

I certify that on June 10, 2022, I electronically filed the foregoing *Reply Brief in Support of Defendant John M. Engler's Motion to Dismiss Plaintiff Christie Poitra's First Amended Complaint and Joinder in MSU Defendants' Motion to Dismiss (ECF NOS. 17–18)* with the Clerk of the Court using the ECF system, which will send notification of such filing to all parties of record.

*s/ Colleen L. Maguire*
Legal Secretary
DICKINSON WRIGHT, PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan  48226-3425
(313) 223-3500
cmaguire@dickinsonwright.com

4870-4070-7364 v2 [101713-1]