UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTIE POITRA,

     Plaintiff,

v.

MICHIGAN STATE UNIVERSITY, et al.,

     Defendants.

_____/

Case No. 1:22-cv-47

HON. JANE M. BECKERING

## OPINION AND ORDER

Plaintiff Christie Poitra, Ph.D. (Dr. Poitra) filed the instant action against Defendants Michigan State University and Michigan State University Board of Trustees (collectively "MSU") and nine current and former MSU administrators (collectively "the Individual Defendants"), alleging various federal and state-law claims arising from her employment by MSU.  Pending before the Court are Defendants' motions to dismiss (ECF Nos. 17, 27, & 30), which Dr. Poitra opposes (ECF Nos. 23, 31, & 34).  For the following reasons, the Court denies part of MSU's motion but otherwise grants the relief requested by Defendants, including their request therein to strike a portion of Dr. Poitra's pleading.

## I.  BACKGROUND

### A.  Factual Background

**1.**    **October 2015–January 2, 2019**

MSU hired Dr. Poitra in October 2015 as Assistant Director of MSU's Native American Institute (NAI), which is a unit within MSU's College of Agriculture and Natural Resources (CANR) (Am. Compl. [ECF No. 14] ¶¶ 1, 77, & 89).  Dr. Poitra identifies as Latina-Native

American and receives disability accommodations from MSU's Resource Center for Persons with Disabilities (RCPD) (*id.* ¶¶ 69 & 108).  She reported directly to Defendant John Norder, then NAI's Director and an associate professor (*id.* ¶¶ 28 & 89).  Per MSU policy, RCPD discussed Dr. Poitra's accommodations with Norder, and Dr. Poitra and Norder also met and discussed the accommodations in detail (*id.* ¶¶ 109–11).  Nearly three years later, on August 9, 2018, MSU's Office of Institutional Equity (OIE) received a third-party report that Dr. Poitra may have experienced disability, weight, and/or sexual harassment by Norder, in violation of MSU's policies (*id.* ¶ 153).  Several days later, Dr. Poitra spoke with the OIE and reported the harassment she experienced by Norder between 2016 and 2018 (*id.* ¶ 154).  According to Dr. Poitra, from the start of her employment at NAI, Norder "entirely ignored professional boundaries and repeatedly harassed Poitra by making unwelcome sexual and other inappropriate comments and sexual advances, harassing her on the basis of her sex, her disability, and her weight" (*id.* ¶ 114).

The OIE opened an investigation (*id.* ¶ 155).  The version of MSU's Relationship Violence and Sexual Misconduct (RVSM) Policy then in effect provided, in pertinent part, that MSU would use its "best efforts" to complete investigations within 60 calendar days, "although that timeframe may be extended for good cause" (*id.* ¶¶ 158–59).  A total of four reports were made related to the investigation:  one report of discrimination and harassment by Dr. Poitra against Norder, one report of discrimination and harassment by Norder against Dr. Poitra, one report of retaliation by Dr. Poitra against Norder, and one report of retaliation by Norder against Dr. Poitra (*id.* ¶¶ 211 & 218).  Connected with those reports, the CANR issued a "no-contact directive" that applied to both Dr. Poitra and Norder (*id.* ¶¶ 211–23).

According to Dr. Poitra, Norder "ignored the requirement and contacted Dr. Poitra by email, phone call, and text message" and "even appeared in person at Dr. Poitra's office" (*id.*

¶¶ 168–69).  On Friday, August 17, 2018, Defendant Quentin Tyler, then the Associate Dean Director for Diversity, Equity, and Inclusion (DEI), emailed Norder to notify him that he would need to work from home or from the MSU Museum and that he was not to enter the NAI offices or have any contact with any NAI staff members during the investigation (*id.* ¶¶ 161–62).  Tyler permitted Norder to return to the NAI office over the weekend to retrieve any personal belongings (*id.* ¶ 171).  Dr. Poitra alleges that when she returned to the office on Monday, August 19, 2018, she found that "tables, desks, chairs, and trash cans throughout the NAI offices had been moved by Norder" (*id.* ¶ 173).  According to Dr. Poitra, she "alone was made to fix all the damage Norder had caused" (*id.* ¶ 174).  Defendant Tyler personally met with Norder on August 20, 2018 and reminded him not to contact anyone in NAI, and Tyler followed up with a similar reminder via text on August 21, 2018 (*id.* ¶¶ 176–77).

On September 24, 2018, MSU placed Norder on paid administrative leave (*id.* ¶ 202).  MSU made no attempt to fill the vacancy created by Norder's leave, making Dr. Poitra the de facto director during that time (*id.* ¶¶ 255–56).

On January 2, 2019, the OIE issued a preliminary investigation report, detailing Dr. Poitra's allegations, including witness interviews and numerous exhibits, although Dr. Poitra alleges that the report was factually incomplete and inaccurate (*id.* ¶¶ 178–81).

**2.**    <u>**July 8, 2019–January 19, 2022**</u>

On July 8, 2019, Dr. Poitra received an email from the OIE informing her that her complaint was eligible for a hearing (*id.* ¶ 196).  On August 20, 2019, Dr. Poitra received another email notifying her that a prehearing would be held on September 9, 2019 (*id.* ¶ 198).  In September 2019, Dr. Poitra was formally promoted to the position of Interim Director (*id.* ¶ 252).  Dr. Poitra alleges that she received less pay, resources and staffing than her predecessors in the role (*id.*

¶¶ 260–65, 270–78).  In October 2019, Dr. Poitra filed a complaint alleging discrimination based on sex and disability with the Department of Education (DOE), Office for Civil Rights (OCR) (*id.* ¶ 477).

On November 6, 2019, Norder tagged Dr. Poitra in an article posted online (*id.* ¶ 205).  The next day, Dr. Poitra sought and obtained a Personal Protection Order (PPO) (*id.* ¶¶ 206–07).  Norder's motion to terminate the PPO was denied, and the PPO was extended "multiple times" (*id.* ¶¶ 208–10).  On November 18, 2019, Tyler emailed Dr. Poitra to remind her that the no-contact directive applicable to herself and Norder was "still in effect" and requesting a meeting time to discuss "behavioral guidelines" for a number of events that both she and Norder intended to attend (*id.* ¶ 211).

On January 20, 2020, MSU's Office for Civil Rights and Title IX Education and Compliance conducted a hearing (*id.* ¶¶ 224–29).  Megan Norris, an external contract hearing officer, conducted the hearing (*id.* ¶ 200).  On February 14, 2020, Dr. Poitra's attorney made a statement at a MSU board meeting, describing the investigative report's findings and asking for help getting the OIE investigation resolved (*id.* ¶¶ 234–36).  On February 17, 2020, Hearing Officer Norris issued her decision, concluding that Norder had violated MSU's RVSM policy but that Norder had not violated MSU's Anti-Discrimination Policy (*id.* ¶¶ 239–40).  Dr. Poitra alleges that the OIE had taken 547 days to resolve her complaint (*id.* ¶ 279).

On April 22, 2020, MSU notified Dr. Poitra of the following disciplinary actions taken against Norder:  one and one-half year's paid leave, suspension without pay for four weeks, five-year ineligibility to hold an administrative position at MSU, continued no-contact with Dr. Poitra, and training regarding MSU's RVSM Policy (*id.* ¶¶ 244–49).  Dr. Poitra alleges that MSU

continues to employ Norder as an Associate Professor of Anthropology, teaching undergraduate classes (*id.* ¶ 251).

In June 2020, Dr. Poitra received notice that the DOE was transferring her complaint to the Equal Employment Opportunity Commission (EEOC) (*id.* ¶ 477).  In December 2021, the EEOC notified her that the Department of Justice (DOJ) would be issuing a right-to-sue letter (*id.*).  The DOJ issued Dr. Poitra a right-to-sue letter dated January 7, 2022 (*id.*; *see* MSU Ex. 2, ECF No. 18-2).

### B.  Procedural Posture

On January 19, 2022, Poitra initiated this action against the following eleven Defendants:

1. Michigan State University;

2. Michigan State University Board of Trustees;

3. Tyler;

4. Norder;

5. Lou Anna K. Simon (MSU's president for all material times before January 31, 2018);

6. John Engler (MSU's interim president from January 31, 2018 through January 17, 2019);

7. Satish Udpa (MSU's acting president from January 17, 2019 through August 1, 2019);

8. Samuel L. Stanley, Jr. (MSU's president after August 1, 2019);

9. Ronald L. Hendrick (Dean of MSU's College of Agriculture and Natural Resources until June 30, 2021);

10. Robert Kent (MSU's Interim Title IX Coordinator from June 18, 2018 through February 2, 2020); and

11. Tanya Jachimiak (MSU's Title IX Coordinator from February 3, 2020 through October 1, 2021)

(Compl. [ECF No. 1] ¶¶ 13–30).

In her 629-paragraph Amended Complaint, which Dr. Poitra filed on February 2, 2022, she alleges the following twelve claims:

- Three violations of Title IX of the Education Amendments of 1972 ("Title IX") against <u>MSU</u>, including deliberate indifference (**Count I**), creation of heightened risk (**Count II**), and retaliation (**Count III**);

- First Amendment retaliation under 42 U.S.C. § 1983 ("Section 1983") against <u>MSU</u> and <u>Tyler</u> (**Count IV**);

- Sex discrimination (**Count V**) and retaliation (**Count VI**) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") against <u>MSU</u>;

- Disability discrimination in violation of the Americans with Disabilities Act of 1990 (ADA) (**Count VII**), and Section 504 of the Rehabilitation Act ("Section 504") against <u>MSU</u> (**Count VIII**);

- Denial of substantive and procedural due process by <u>all Individual Defendants</u> in their individual capacities under § 1983, the Fifth Amendment, and the Fourteenth Amendment (**Count IX**);

- Denial of equal protection based on Plaintiff's gender (female) and/or race (Native American) under § 1983 and the Fourteenth Amendment against <u>all Individual Defendants</u> (**Count X**);

- Sex discrimination and retaliation under Michigan's Elliot-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2202 *et seq.,* against <u>All Defendants</u> (**Count XI**); and

- Disability discrimination and retaliation under Michigan's Persons with Disabilities Civil Rights Act (PWDCRA), Mich. Comp. Laws § 37.1101 *et seq.,* against <u>All Defendants</u> (**Count XII**)

(ECF No. 14).

These three motions followed.  First, on March 21, 2022, Defendants MSU, Stanley, Udpa, Simon, Hendrick, Kent, Jachimiak, and Tyler filed a combined "Motion to Partially Dismiss Plaintiff Christie Poitra's First Amended Complaint and Motion to Strike Paragraphs 389 through 476 of Amended Complaint" (ECF No. 17).  Dr. Poitra filed a response in opposition (ECF No.

23), and the movants filed a reply (ECF No. 25).  Second, on May 3, 2022, Defendant Engler filed a combined Motion to Dismiss and Joinder in the first motion (ECF No. 27).  Dr. Poitra filed a response in opposition (ECF No. 31), and Engler filed a reply (ECF No. 32).  Third, on May 19, 2022, Norder filed a Motion to Dismiss the Amended Complaint (ECF No. 30).  Dr. Poitra filed a response in opposition (ECF No. 34), and Norder filed a reply (ECF No. 35).  The arguments in the three motions substantially overlap, and the responses that Dr. Poitra submitted are nearly identical.  Having considered the parties' submissions, the Court concludes that oral argument is not necessary to resolve the issues presented.  *See* W.D. Mich. LCivR 7.2(d).

## II.  ANALYSIS

### A.  Rule 12 Motion Standards

First, Federal Rule of Civil Procedure 12(b)(1) authorizes the court to dismiss a claim for relief in any pleading if the court "lack[s] subject-matter jurisdiction."  FED. R. CIV. P. 12(b)(1).  "A motion to dismiss on the ground that sovereign immunity bars the plaintiff's claims is properly treated as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)."  *Odom v. Univ. of Mich.*, No. 16-12791, 2017 WL 2117978, at *2 (E.D. Mich. May 16, 2017).  "When a defendant raises the issue of subject matter jurisdiction, the plaintiff generally bears the burden of establishing jurisdiction."  *Id.*  "However, 'the entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity.'"  *Id.* (quoting *Nair v. Oakland Cty. Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006)).

Second, subsection (b)(6) authorizes the court to dismiss a claim for relief in any pleading if it "fail[s] to state a claim upon which relief can be granted[.]"  FED. R. CIV. P. 12(b)(6).  Relevant to the motions at bar, dismissal is warranted under Rule 12(b)(6) if the allegations in the complaint, when accepted as true, affirmatively show that the claim is time-barred.  *Snyder-Hill v. Ohio State*

*Univ.*, 48 F.4th 686, 698 (6th Cir. 2022); *Cheatom v. Quicken Loans*, 587 F. App'x 276, 279 (6th Cir. 2014).  A complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Although the plausibility standard is not equivalent to a "'probability requirement,' … it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

The court must construe the complaint in the light most favorable to the non-movant and accept all well-pleaded factual allegations in the complaint as true. *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  An assessment of "the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings," but the Court may consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

"It is an established principle of law that a district court may properly dismiss a plaintiff's case for want of prosecution." *Scott v. State of Tenn.*, 878 F.2d 382 (6th Cir. 1989).  Therefore,

"[i]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion." *Id.  See, e.g., McIlwain v. Dodd*, No. 22-5219, 2022 WL 17169006, at *3 (6th Cir. Nov. 22, 2022) ("The district court properly dismissed as abandoned the remaining negligence claims that were neither addressed in McIlwain's response to the motion to dismiss nor mentioned in the proposed amended complaint."); *Brooks v. Spiegel*, No. 20-6437, 2021 WL 4026728, at *2 (6th Cir. Sept. 3, 2021) ("The district court correctly noted, however, that Doe abandoned those claims by failing to raise them in his brief opposing the government's motion to dismiss the complaint."); *Bazinski v. JPMorgan Chase Bank, Nat'l Ass'n.*, 597 F. App'x 379, 380–81 (6th Cir. 2015) (per curiam) (affirming the district court's holding that the plaintiff had "abandoned Counts I, II, III, and VI of her complaint by failing to address them in her response to Chase's motion to dismiss").

Last, Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f).  The Sixth Circuit has cautioned that "motions to strike are viewed with disfavor and are not frequently granted." *Operating Engineers Loc. 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015).  The function of the motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with" them early in the case.  *Id.* (citation omitted).

**B. Discussion**

1.    <u>Count I</u>: **Title IX Deliberate-Indifference Claim Against MSU**

MSU proffers two reasons why this Court should dismiss Dr. Poitra's Title IX deliberate-indifference claim in Count I (MSU Br., ECF No. 18 at PageID.235).[1]  First, MSU argues that Dr. Poitra "cannot establish" that MSU's response amounted to deliberate indifference where her "subjective disagreement" and "second-guessing" is not a viable legal claim (*id.* at PageID.235–237).  Second, MSU argues that Dr. Poitra "cannot establish" that she experienced actionable sexual harassment *after* MSU had actual notice of the earlier alleged harassment (MSU Br., ECF No. 18 at PageID.237–239; Reply, ECF No. 25 at PageID.677).

In response, Dr. Poitra argues that she stated a plausible deliberate indifference claim where she alleges that from August 2018 to April 2020, MSU engaged in "repeated acts of deliberate indifference" to her multiple reports of sex discrimination and retaliation perpetrated by Norder by "failing to take immediate, effective remedial measures" to resolve her complaints (ECF No. 23 at PageID.547–549).  According to Dr. Poitra, Norder's repeated acts of "post-assault sexual harassment and stalking" meet the "severe, pervasive, or objectively unreasonable" standards outlined in case law (*id.* at PageID.549–550).

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance."  20 U.S.C. § 1681(a).

---

[1] The Court notes that in its Reply brief, MSU asserts that Dr. Poitra's claim in Count I also "remains time-barred" (ECF No. 25 at PageID.674 n.1).  However, MSU did not develop any statute-of-limitations challenge to Count I in its original brief, and its footnote in its Rely brief does not satisfy its burden to show that the statute of limitations has run on this claim.  *See Snyder-Hill*, 48 F.4th at 698 (indicating that the defendant bears this burden); *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006) (same).

Title IX "neither expressly nor impliedly excludes employees from its reach," but the Supreme Court has held that "Congress easily could have substituted 'student' or 'beneficiary' for the word 'person'" if it had wished to restrict the scope of the statute to exclude employees. *N. Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 521 (1982). *See also Ivan v. Kent State Univ.*, 92 F.3d 1185 (6th Cir. 1996) (indicating that Title IX applies to both the "employees and students" of a funding recipient).

Title IX's only "express enforcement mechanism, 20 U.S.C. § 1682, is an administrative procedure resulting in the withdrawal of federal funding from noncompliant institutions." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255 (2009). However, the Supreme Court has held that Title IX implies a private right of action by individuals against funding recipients for Title IX violations. *Bose v. Bea*, 947 F.3d 983, 988 (6th Cir. 2020) (citing *Cannon v. Univ. of Chi.*, 441 U.S. 677, 717 (1979); *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 76 (1992)). Further, the Supreme Court has held that "Congress intended Title IX's private right of action to encompass claims of a recipient's deliberate indifference to sexual harassment." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 180 (2005).

In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998), the Supreme Court held that a school district may be held liable in damages in an implied right of action under Title IX for the sexual harassment of a student by one of its teachers where "an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct." *Id.* at 277. The Court observed that under a standard lower than deliberate indifference, "there would be a risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions." *Id.* at 290–91.

Next, in *Davis Next Friend LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629, 643 (1999), the Supreme Court considered "whether the misconduct identified in *Gebser*—deliberate indifference to known acts of harassment—amounts to an intentional violation of Title IX, capable of supporting a private damages action, when the harasser is a student rather than a teacher."  The Court concluded that, "in certain limited circumstances, it does."  *Id.*  The Supreme Court reasoned that a deliberate-indifference claim is not based on agency principles, used to "impute liability to the district for the misconduct of its teachers."  *Id.* at 642 (citing *Gebser*, 524 U.S. at 283).  Rather, liability arises "only where the district itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of teacher-student harassment of which it had actual knowledge."  *Id.* (citing *Gebser*, *supra*, at 290).  The *Davis* decision "layered on an additional element necessary to make a claim for peer harassment under Title IX, requiring plaintiffs *in that context* to demonstrate that the harassment suffered was 'so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect.'"  *Wamer v. Univ. of Toledo*, 27 F.4th 461, 468 (6th Cir. 2022) (quoting *Davis*, 526 U.S. at 652) (emphasis added).

In *Kollaritsch v. Michigan State University Board of Trustees*, 944 F.3d 613 (6th Cir. 2019), also a student-to-student harassment case, the Sixth Circuit addressed the post-*Davis* question:  "what is required to find that a school has 'subjected' a student to discrimination?"  *Wamer*, 27 F.4th at 466.  The *Kollaritsch* panel held that "the *Davis* formula" has two separate components, comprising separate-but-related torts by separate-and-unrelated tortfeasors:  (1) "actionable harassment" by the perpetrator, and (2) deliberate indifference by the school.  *Kollaritsch*, 944 F.3d at 619–20.  The panel held that "deliberate indifference," in turn, is comprised of the following four elements:  "(1) knowledge, (2) an act, (3) injury, and (4)

12

causation." *Id.* at 621. The Sixth Circuit indicated that "knowledge" means that the defendant school had "actual knowledge" of an incident of actionable sexual harassment that prompted or should have prompted a response. *Id.* (quoting *Davis*, 526 U.S. at 650). An "act" means a response by the school that was "clearly unreasonable in light of the known circumstances," thus "demonstrating the school's deliberate indifference to the foreseeable possibility of further actionable harassment of the victim" *Id.* (quoting *Davis*, 526 U.S. at 648). "Injury" in this student-to-student harassment context means the deprivation of "access to the educational opportunities or benefits provided by the school." *Id.* at 622 (quoting *Davis*, 526 U.S. at 650). Last, "causation" means "the 'Act' caused the 'Injury,' such that the injury is attributable to the post-actual-knowledge further harassment, which would not have happened but for the clear unreasonableness of the school's response." *Id.*

The Sixth Circuit determined that the appeal in *Kollaritsch* turned on whether the plaintiff-student's complaint satisfied the causation element or "whether that post-response behavior could not, as a matter of law, satisfy the standard for actionable sexual harassment and, consequently, could not satisfy the causation element." 944 F.3d at 624. The plaintiff-student in *Kollaritsch* had reported to MSU that a male student sexually assaulted her, which triggered MSU's response. *Id.* MSU completed an investigation in August 2012 and disciplined the perpetrator in November 2012 by placing him on probation and forbidding him any contact with the plaintiff; however, the plaintiff alleged that the male student subsequently "stalked, harassed and/or intimidated" her at least nine times. *Id.* The Sixth Circuit noted that the plaintiff's complaint " did not provide any details or assert any facts about these encounters to show—or even suggest—that they were severe, pervasive, or objectively unreasonable" and her descriptions suggested "merely their mutual presence at the same location." *Id*. The Court concluded that the plaintiff's "conclusory statements

13

without supporting facts, are meaningless" and "do not plead actionable further sexual harassment and, therefore, she has not pleaded and cannot show causation necessary to state a viable deliberate-indifference claim under Title IX and *Davis*." *Id.* at 625.

In *Doe v. University of Kentucky*, 959 F.3d 246 (6th Cir. 2020), also a student-to-student harassment case, the Sixth Circuit's decision likewise turned on the element of causation, i.e., whether the university's response to the plaintiff-student's accusations subjected her to "*further* actionable sexual harassment." *Id.* at 251 (emphasis in original).  The Sixth Circuit held that the plaintiff-student had "not pleaded any incident of actionable harassment in the post-actual-knowledge period" where she alleged only that the accused "stared at her, stood by her at a party, followed her home, and sat near her in the library." *Id.* at 251–52.  The Sixth Circuit held that "[n]othing about these allegations … suggest *sexual* harassment, let alone sexual harassment of a severe, pervasive, and objectively offensive nature." *Id.* at 252.  The Sixth Circuit concluded that because she did not plead any further actionable sexual harassment after the university took remedial action in the post-actual-knowledge period, she failed to state a Title IX deliberate indifference claim under *Davis*. *Id.* at 253.

Here, it is not disputed that MSU receives federal funding and is subject to Title IX (Am. Compl. ¶ 10).  Nor does MSU dispute that Dr. Poitra's allegations describe pre-actual-knowledge actionable sexual harassment.  MSU's arguments for dismissal concern (1) the reasonableness of its response to Dr. Poitra's report and (2) whether its response subjected Dr. Poitra to "further" sexual harassment, i.e., the *Kollaritsch* causation requirement.

MSU's first argument does not support dismissal under Rule 12(b)(6).  MSU improperly frames the issue as whether Dr. Poitra can "establish" that its response was unreasonable.  This Court's task in resolving a motion to dismiss is not to examine the sufficiency of a plaintiff's

evidence but the sufficiency of her allegations.  In this regard, Dr. Poitra's pleading alleges sufficient factual content to demonstrate this element of her Title IX deliberate-indifference claim. For example, Dr. Poitra alleges that MSU failed to take immediate, effective remedial steps to resolve her complaints of sex discrimination and instead acted with deliberate indifference in taking 547 days to resolve her complaint (Am. Compl. ¶¶ 289, 481–82).  *See, e.g., Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 415 (6th Cir. 2021) (concluding that the court need not view as reasonable a defendant's three-week delay in investigating an explicit and specific sexual harassment complaint).  *See also Foster v. Bd. of Regents of Univ. of Michigan*, 982 F.3d 960, 968 (6th Cir. 2020) (courts ask "not whether the school's efforts were ineffective but whether they amounted to 'an official decision ... not to remedy the violation'") (citation omitted).

MSU's second argument, which relies on applying the *Kollaritsch* requirement to the employment context, is misplaced.  The case at bar does not concern student-to-student harassment but alleged harassment within the employment context.  Nonetheless, the parties' briefing relies, nearly exclusively, on only the holdings in *Davis*, *Kollaritsch*, and *Doe*, and the parties apply these holdings (with differing conclusions) without acknowledging the different factual context of their case.  In *Wamer*, 27 F.4th at 467–68, the Sixth Circuit acknowledged that it had previously stated that there is "but one standard" for deliberate indifference under Title IX, *see Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 367 (6th Cir. 2005), but the Court emphasized that it had neither stated nor implied that there are "no differences" in how courts evaluate each element of a deliberate-indifference claim in separate factual contexts.

Indeed, the Sixth Circuit concluded that the *Kollaritsch* requirement that "the injury is attributable to ... post-actual-knowledge further harassment" is *not* properly applied to teacher-student sexual harassment claims, given "the inherent differences between peer harassment and

teacher harassment recognized in *Davis*, and the express purpose of Title IX that no person 'on the basis of sex, be excluded from participation in' or 'be denied the benefits of ... any education program or activity,' 20 U.S.C. § 1681(a)." *Id.* at 469–70.  Specifically, the Sixth Circuit held that "[w]hen a student has been sexually harassed by a teacher or professor, that student's ability to benefit from the educational experience provided by the school is often undermined unless the school steps in to remedy the situation because the student is put in the position of choosing to forego an educational opportunity in order to avoid contact with the harasser, or to continue attempting to receive the educational experience tainted with the fear of further harassment or abuse." *Id.* at 471.  Hence, the Court opined that "requiring an additional post-notice incident of harassment in teacher-student deliberate-indifference cases would undermine the purpose of Title IX." *Id.*

MSU identifies no basis for imposing the stringent *Kollaritsch* standard to the employment context of Dr. Poitra's harassment allegations in this case.  Consequently, MSU's argument that Count I should be dismissed for Dr. Poitra's failure to sufficiently allege an incident of post-knowledge sexual harassment is not an argument that supports dismissal under Federal Rule of Civil Procedure 12(b)(6).

In sum, neither of MSU's arguments demonstrates that Dr. Poitra has failed to state a plausible Title IX deliberate-indifference claim.  Therefore, MSU's motion to dismiss Count I is properly denied, and Dr. Poitra's Count I proceeds.

2.   <u>**Count II**</u>: **Title IX Heightened-Risk Claim Against MSU**

MSU argues that even assuming the Sixth Circuit recognizes a Title IX "heightened risk" claim that Dr. Poitra presents in Count II, an assumption that MSU questions, MSU argues that Dr. Poitra's claim in Count II is time-barred in its entirety as any alleged "risk" created would have

been known prior to, or at least at the onset of, the OIE investigation in 2018 (MSU Br., ECF No. 25 at PageID.232–233).

In response, Dr. Poitra opines that "the time is right for the Sixth Circuit to interpret Title IX to include a heightened risk claim" (Pl. Resp., ECF No. 23 at PageID.550–552). Dr. Poitra also argues that because her pleading "clearly identifies a Title IX violation by Norder after January 7, 2019—his online stalking and tagging of Plaintiff on November 6, 2019," MSU's limitations argument fails (*id.* at PageID.554).

Title IX does not contain a statute of limitations, so courts look to the state statute of limitations for personal injury actions. *Snyder-Hill*, 48 F.4th at 698. In Michigan, the applicable statute of limitations is three years. MICH. COMP. LAWS § 600.5805(2) (providing that "the period of limitations is 3 years after the time of the … injury for all actions to recover damages for the … injury to a person or property"). Federal law governs when the claims accrue, that is, "when the statute begins to run." *Garrett v. Ohio State Univ.*, No. 21-3972, ___ F.4th ___, 2023 WL 2012158, at *3 (6th Cir. Feb. 15, 2023) (quoting *Snyder-Hill, supra*). According to the Sixth Circuit, "[t]he general federal rule is that 'the statute of limitations begins to run when the reasonable person knows, or in the exercise of due diligence should have known, both his injury and the cause of that injury.'" *Snyder-Hill*, 48 F.4th at 698 (citation omitted). "In other words, absent a statutory directive to the contrary, the 'discovery rule' applies, and the clock starts only when a plaintiff knows or should have known certain facts related to their injury." *Id.*

The Sixth Circuit's requirement that plaintiffs discover "the injury that is the basis of [their] action necessarily requires [courts] to look at what the basis of their action is." *Snyder-Hill*, 48 F.4th at 702 (citation omitted). Here, in Count II, Dr. Poitra alleges that "[d]espite having a written Title IX Policy, MSU repeatedly failed to follow that policy and offered inadequate training to

faculty on how to implement the policy correctly" (Am. Compl. ¶ 491).  She further alleges that "[w]hile the policy claimed to provide an environment that 'fosters the values of safety; mutual respect; dignity; equity; responsibility; and clear and timely communication,' MSU did little to ensure that policy was realized, and instead created a heightened risk of sex-based discrimination and harassment" (*id.* ¶ 492).  Dr. Poitra alleges that she is "one of numerous women who have undergone a lengthy and traumatizing OIE investigation, only for their abuser to remain employed at MSU and able to continue to abuse them" (*id.* ¶ 496).

In support of the legal viability of her claim, Dr. Poitra points to out-of-circuit caselaw that again concerns sexual harassment of students.  In *Doe on behalf of Doe #2 v. Metropolitan Government of Nashville & Davidson County, Tennessee*, 35 F.4th 459, 464 (6th Cir. 2022), which was issued after the parties filed their briefs in this case, the Sixth Circuit examined the line of cases where the plaintiffs-students alleged that their unwelcome sexual contact was a result of the university's indifference to the problem of pervasive sexual misconduct in the schools.  Relying on the case law from its sister circuits, the Sixth Circuit indicated that for a student alleging that a school's deliberate indifference before she was harassed caused the harassment—a "Title IX 'before' claim," the student must show:

> (1) a school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school."

*Id.* at 465 (citations omitted).  The fourth element is derived from the additional element layered on by the Supreme Court in *Davis* for claims of student harassment under Title IX.  *See Wamer*, 27 F.4th at 468 (quoting *Davis*, 526 U.S. at 652).  Further, the Sixth Circuit pointed out that a "before" claim "is premised on the school's 'omission (creating vulnerability that leads to further

[misconduct])," a category of wrongful conduct that *Kollaritsch* recognized as giving rise to liability." *Id.* at 466 (citation omitted). Dr. Poitra's allegations about harassment by a colleague do not satisfy the fourth element and therefore do not state a plausible heightened-risk claim as outlined by the Sixth Circuit in *Doe*, 35 F.4th at 465.

Even assuming arguendo that her allegations appropriately state a *novel* heightened-risk claim, the Court agrees with MSU that such a claim is properly dismissed as untimely. "[I]n a successful 'before' claim, a school's deliberate indifference to known past acts of sexual misconduct must have caused the misconduct that the student currently alleges." *Doe*, 35 F.4th at 466. In other words, a plaintiff could not have been "alerted ... to protect his or her rights" through a Title IX suit unless they had reason to believe that the institution did something (or failed to do something) that caused their injury. *Id. See also Snyder-Hill*, 48 F.4th at 698–99 (explaining that "the discovery rule is applied ... if the cause of an injury is not apparent") (citation omitted). Here, as early as January 2, 2019, Dr. Poitra knew pivotal facts that gave her reason to believe that MSU did something (or failed to do something) that caused her injury, to wit: Dr. Poitra knew that approximately 140 days had passed since her report to the OIE of harassment by Norder and the issuance of the OIE's preliminary investigation report, and she knew that even this preliminary report was factually incomplete and inaccurate. *See* Am. Compl. ¶¶ 178–81. Dr. Poitra's heightened-risk claim, which was filed more than three years later, is time-barred.

For either of these reasons, Count II is properly dismissed under Federal Rule of Civil Procedure 12(b)(6).

**3.      Count III: Title IX Retaliation Claim Against MSU**

The Supreme Court has held that the private right of action implied in Title IX includes retaliation claims, explaining that "when a funding recipient retaliates against a person because he

complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005). Although MSU's motion references a timeliness challenge to Dr. Poitra's Count III, *see* MSU Mot., ECF No. 17 at PageID.210, MSU develops no such argument in its supporting brief.  Instead, MSU's statute-of-limitations challenges are limited to Counts II, V, VI and VII.  *See* MSU Br., ECF No. 18 at PageID.212, 232–235.  Again, a defendant bears this burden of proof.  *See Snyder-Hill*, 48 F.4th at 698.  MSU's motion is therefore denied as to Dr. Poitra's Title IX retaliation claim in Count III, and Count III proceeds.

**4.  <u>Count IV</u>:  § 1983 First Amendment Retaliation Claim Against MSU & Tyler**

Dr. Poitra brings three counts under 42 U.S.C. § 1983, including this claim in Count IV against both MSU and Tyler as well as her claims in Counts IX and X against all of the Individual Defendants, discussed *infra*.  Section 1983 makes "liable" "[e]very person" who "under color of" state law "subjects, or causes to be subjected," another person "to the deprivation of any rights, privileges, or immunities secured by the Constitution[.]"  42 U.S.C. § 1983.  Section 1983 does not confer substantive rights but merely provides a statutory vehicle for vindicating rights found in the United States Constitution.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dibrell v. City of Knoxville, Tennessee*, 984 F.3d 1156, 1160 (6th Cir. 2021).  To state a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law."  *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 482 (6th Cir. 2020) (citation omitted).  A court's threshold inquiry under § 1983 is always to identify the specific constitutional right at issue.  *Dibrell, supra.*  Once the right is identified, the court must then consider the statutory "elements of, and rules associated with, an action seeking damages for its violation" under § 1983.  *Id.*

a.      **Against MSU**

MSU argues that Dr. Poitra's § 1983 claim against it in Count IV is not viable because neither a state nor its officials acting in their official capacities are "persons" under § 1983 (MSU Br., ECF No. 18 at PageID.240).  In response, Dr. Poitra agrees that she cannot bring claims under 42 U.S.C. § 1983 against MSU and concedes that including MSU as a named defendant for her claim in Count IV was an "error" (ECF No. 23 at PageID.541 n.5).  The Court agrees.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (explaining that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office").  Count IV is therefore properly dismissed as to MSU.

b.      **Against Tyler**

Defendants argue that Dr. Poitra's First Amendment retaliation claim in Count IV against Tyler is not plausible because Dr. Poitra was not speaking "as a citizen" when she reported to and/or agreed to be interviewed by the OIE; rather, reporting concerns of harassment is a requirement for most MSU employees, including Dr. Poitra (MSU Br., ECF No. 18 at PageID.242–243).  Defendants also argue that Dr. Poitra's attorney's speech is merely advocacy and cannot properly be considered Dr. Poitra's own speech (MSU Reply, ECF No. 25 at PageID.682).  Last, Defendants argue that Dr. Poitra "utterly failed" to plead any facts to support that allegedly retaliatory actions by Tyler would "discourage individuals of 'ordinary firmness' from continuing to do what they were doing" or that her speech was a "motivating factor" behind the employer's conduct (*id.* at PageID.682–683).  According to Defendants, Dr. Poitra was notably "not discouraged" (*id.* at PageID.683).

In response, Dr. Poitra argues that when she spoke about her abuse by Norder to a colleague and when her attorney read her statement during public comment at an MSU Board of Trustees

meeting, her speech was neither related to her job duties nor required by MSU's RVSM policy; rather, her speech was a matter of public concern, to wit: sexual harassment and discrimination by a supervisor at MSU (ECF No. 23 at PageID.553–559).

In free-speech retaliation cases arising in the employment context, courts ask three questions:  (1) "Was the individual involved in 'constitutionally protected' activity—here activity protected by the free speech clause of the First Amendment?"; (2) "Would the employer's conduct discourage individuals of 'ordinary firmness' from continuing to do what they were doing?"; and (3) "Was the employee's exercise of constitutionally protected rights 'a motivating factor' behind the employer's conduct?"  *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 337 (6th Cir. 2010) (citations omitted).

Here, Dr. Poitra alleges that after (1) she "spoke out about her experience of being harassed and how her role and her department were treated inequitably after she reported this harassment" and (2) her attorney "addressed MSU's Board of Trustees about Norder's unethical and disturbing behavior and continued employment," Tyler retaliated against her by "failing to ensure that she was properly protected by a no-contact directive," entering a no-contact directive against her "with no reasonable basis for doing so," refusing to assist her with cleaning out Norder's desk, and refusing to provide her the pay, resources, and staffing appropriate to her position (Am. Compl. ¶¶ 514–15 & 518).

Whether a plaintiff engaged in protected speech is a question of law.  *Mayhew v. Town of Smyrna, Tenn.*, 856 F.3d 456, 464 (6th Cir. 2017).  Public-employee speech must survive three inquiries to fall within the First Amendment.  *DeCrane v. Eckart*, 12 F.4th 586, 594 (6th Cir. 2021).  First, the First Amendment protects this speech only if it addresses a matter of public (rather than private) concern.  *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 146–47 (1983)).  Second,

the amendment protects the speech only if an employee speaks as a private citizen rather than pursuant to the employee's job duties. *Id.* (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (2006)). Third, if the speech survives these two inquiries, then the First Amendment protects the speech only if the employee's interest in speaking outweighs the employer's interest in operating— a test that has come to be called "*Pickering* balancing." *Id.* (citing *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968)).

"[I]t is well-settled that allegations of sexual harassment, like allegations of racial harassment, are matters of public concern." *Bonnell v. Lorenzo*, 241 F.3d 800, 812 (6th Cir. 2001). However, on the second inquiry, which the Court finds dispositive, the Supreme Court held in *Garcetti*, 547 U.S. at 421, that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." The Sixth Circuit has held that in analyzing this inquiry, courts should consider the following context-driven factors: "the impetus for [the] speech, the setting of [the] speech, the speech's audience, and its general subject matter," as well as whether the speech was "an explicit or implied part of an employee's job description" and the "motivations behind the speech." *Fledderjohann v. Celina City Sch. Bd. of Educ.*, 825 F. App'x 289, 294 (6th Cir. 2020) (citation omitted). In the public employment setting, "laudable intent alone is not enough to secure First Amendment protection." *DeWyse v. Federspiel*, 831 F. App'x 759, 764 (6th Cir. 2020).

Here, regardless of whether Dr. Poitra had only an informal duty to report her supervisor's discrimination and harassment, her audience for the speech was the office that her employer set up to investigate equity issues, her report of discrimination and harassment was an internal complaint to her employer, and the catalyst for her report was a third-party report to her employer about

23

discrimination she may have experienced in violation of her employer's policies (Am. Compl. ¶¶ 90–92, 153–54).  Dr. Poitra "dreaded going to work with Norder" and was motivated to eradicate the unwelcome and unwanted instances of harassment and discrimination in her workplace (*id.* ¶¶ 114, 118, 141, 149–50).

Given the context and purpose of the speech as set forth in these allegations, which the Court accepts as true, the Court determines that neither her report about Norder's misconduct nor, by extension, her attorney's speech relating the status of the OIE's pending investigation qualify as speech "as a citizen" entitled to First Amendment protection.  *See, e.g., Khatri v. Ohio State Univ.*, No. 21-3193, 2022 WL 620147, at *3 (6th Cir. Jan. 25, 2022) (Order) (determining that where the plaintiff reported to campus police the alleged misuse of infectious agents in the university laboratory where he worked, the plaintiff spoke as an employee rather than a citizen); *Fledderjohann*, 825 F. App'x at 295–96 (determining that where the plaintiff followed his employer-provided instructions in reporting possible testing violations to the ODE, which was not an "outside authority" but the "main authority concerned with allegations of cheating," the plaintiff spoke as an employee rather than a citizen); *Mayhew v. Town of Smyrna*, 856 F.3d 456, 460–66 (6th Cir. 2017) (determining that where the plaintiff reported a coworker's misconduct in falsifying data to his plant manager and subsequently the human resources department, the plaintiff spoke as an employee rather than a citizen).  Because Dr. Poitra has not plausibly alleged that she was involved in constitutionally protected activity, the Court need not address the sufficiency of her allegations related to the remainder of the elements of her retaliation claim.  Count IV is properly dismissed as to Tyler.

**5.**    **Count V**:  **Title VII Sex Discrimination Claim Against MSU;**
        **Count VI**:  **Title VII Retaliation Claim Against MSU; and**
        **Count VII**:  **ADA Discrimination Claim Against MSU**

MSU challenges Dr. Poitra's Title VII and ADA claims in Counts V, VI and VII only on their purported untimeliness.[2]  MSU argues that these claims are time-barred because Dr. Poitra's April 2021 EEOC charge was not filed within 300 days of the alleged injury giving rise to a claim under Title VII or the ADA (MSU Br., ECF No. 18 at PageID.233–235).

In response, Dr. Poitra does not dispute that a three-year limitations period governs these claims (Pl. Resp., ECF No. 23 at PageID.533).  However, Dr. Poitra points out that she filed a timely complaint with the OCR in October 2019 and that the OCR referred the matter to EEOC (*id.* at PageID.535–536).  Dr. Poitra argues that because the OCR and EEOC have concurrent jurisdiction over allegations of discrimination in education institutions, this Court should find that she timely and properly exhausted her administrative remedies (*id.* at PageID.536–537).

MSU effectively concedes the timeliness point in its Reply, focusing its argument instead on Dr. Poitra's purported failure to exhaust her remedies as to various Individual Defendants.  *See* ECF No. 25 at PageID.685.  Because a defendant bears the burden of demonstrating untimeliness, *see Snyder-Hill*, 48 F.4th at 698, the Court denies MSU's motion for dismissal of Counts V, VI and VII on this basis.

---

[2] Defendants make a passing reference in their Reply brief to the ELCRA and PWDCRA arguments in support of dismissal of various Individual Defendants as also supporting dismissal of Counts V, VI and VII against MSU (ECF No. 25 at PageID.686).  However, MSU did not develop any argument in this regard in its supporting brief (ECF No. 18), and a defendant bears the burden of demonstrating a plaintiff's failure to state a claim.  *See Bangura*, 434 F.3d at 498.

**6.**      **Count VIII:  Section 504 Discrimination Claim Against MSU**

MSU argues that Dr. Poitra's Section 504 claim is subject to a three-year statute of limitations and is timed-barred in its entirety because "[a]ny alleged injury sufficient to state a claim under Section 504 would have accrued prior to or upon OIE's investigation in August 2018—outside the three-year limitations period" (MSU Br., ECF No. 18 at PageID.233).   Dr. Poitra wholly fails to respond to MSU's argument.  *See* Pl. Resp., ECF No. 23.  In reply, MSU argues that Dr. Poitra has therefore abandoned this claim (ECF No. 25 at PageID.674).  The Court agrees.  A plaintiff may not "sit idly by" when a defendant moves to dismiss a complaint on statute-of-limitations grounds.  *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1012 (6th Cir. 2022). Any other resolution would require this Court to travel outside its "neutral decision-making lane" to support the timeliness of Dr. Poitra's claim.  *See id.*  Count VIII is properly dismissed.

**7.**      **Count IX:  § 1983 Due Process Claim Against All Individual Defendants**

In Count IX, Dr. Poitra alleges that the Individual Defendants' failure to comply with "the administrative requirements of Title IX and its own RVSM Policy" deprived her of both (1) "her substantive due process rights to her liberty interest in bodily integrity and her property interest in her professional reputation and reasonable advancement in her career," and (2) "her procedural due process right to be heard prior to depriving her of her liberty and property interests" (Am. Compl. ¶¶ 571–72).  The Individual Defendants argue that even if Count IX was timely filed and properly pleaded against each of them,[3] Dr. Poitra's allegations in Count IX fail to state a plausible claim under either theory.

_____

[3] The Individual Defendants argue that Dr. Poitra's § 1983 claims against them in Counts IX and X are time-barred (MSU Br., ECF No. 18 at PageID.232; Engler Br., ECF No. 28 at PageID.741; Norder Mot., ECF No. 30 at PageID.761–762).  With the exception of Tyler and Norder, the Individual Defendants argue that the § 1983 claims are also subject to dismissal because they are entitled to qualified immunity where Dr. Poitra fails to plead with particularity facts that

a.      **Substantive Due Process**

The Individual Defendants argue that Dr. Poitra has not stated a plausible substantive due process claim in Count IX where she has not identified a deprivation for which due process was owed, i.e., no deprivation of her bodily integrity and no deprivation of a qualifying property interest (MSU Br., ECF No. 18 at PageID.244–245; Engler Br., ECF No. 28 at PageID.742). Norder, who does not distinguish between Dr. Poitra's substantive and procedural due process claims, generally argues that her allegations in Count IX "revolve completely around other Defendants' actions during Defendant MSU's investigation and process" and that she fails to plead sufficient facts to allege that he specifically deprived her of any due process rights (Norder Mot., ECF No. 30 at PageID.762–764). In fact, Norder points out that "[h]e was subject to the process" about which she is complaining (*id.* at PageID.764).

In response, Dr. Poitra argues that she has plausibly alleged the decline in her health that resulted from the abuse she suffered at Defendants' hands, including chest pains and weight gain, and she argues that the fact that Defendants "did not hold [her] down" is irrelevant (Pl. Resps., ECF No. 23 at PageID.542–543, ECF No. 31 at PageID.791, & ECF No. 34 at PageID.820, citing Am. Compl. ¶¶ 382–87). Dr. Poitra also argues that she plausibly alleged that Defendants deprived her of both her reputation and career opportunities through repeated and systemic discrimination (Pl. Resps., ECF No. 23 at PageID.543–544, ECF No. 31 at PageID.791–792, & ECF No. 34 at PageID.820). Dr. Poitra concludes that because these deprivations resulted from the "pervasive culture of failing to respond appropriately to complaints of discrimination and retaliation at MSU,

---

demonstrate what each Defendant did to violate her asserted constitutional rights (MSU Br., ECF No. 18 at PageID.240–242; Engler Br., ECF No. 28 at PageID.741–742). Given the Court's determination that Dr. Poitra fails to state a plausible due process claim and has abandoned her equal protection claim, the Court declines to reach the merits of the alternative bases for dismissal.

which Defendants directly fostered," she has alleged sufficient facts to support a substantive due process claim (Pl. Resps., ECF No. 23 at PageID.544–545, ECF No. 31 at PageID.793, & ECF No. 34 at PageID.820).

The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.  There are procedural and substantive due process components.  *Guertin v. State*, 912 F.3d 907, 917–18 (6th Cir. 2019).  Substantive due process "bar[s] certain government actions regardless of the fairness of the procedures used to implement them."  *Id.* at 918 (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).  Substantive due process protects certain "fundamental rights and liberties," including "the right to bodily integrity."  *Id.*  Courts must "focus on the allegations in the complaint to determine how [a plaintiff] describe[s] the constitutional right at stake and what the [defendants] allegedly did to deprive [her] of that right."  *Id.* (citation omitted).

Here, Dr. Poitra first claims an alleged violation of her right to bodily integrity (Am. Compl. ¶ 571), an indispensable right recognized at common law as the "right to be free from ... unjustified intrusions on personal security" and "encompass[ing] freedom from bodily restraint and punishment."  *Guertin*, 912 F.3d at 918 (quoting *Ingraham v. Wright*, 430 U.S. 651, 673–74 (1977)).  "[I]ndividuals possess a constitutional right to be free from forcible intrusions on their bodies against their will, absent a compelling state interest."  *Id.* at 919 (quoting *Planned Parenthood Sw. Ohio Region v. DeWine*, 696 F.3d 490, 506 (6th Cir. 2012)).  *See, e.g., Washington v. Harper*, 494 U.S. 210, 213–17 (1990) (addressing the state's involuntary administration of antipsychotic medication to an inmate without a judicial hearing).  However, Dr. Poitra's allegations do not identify any nonconsensual physical intrusion.  As MSU points out in reply (ECF No. 25 at PageID.680), Dr. Poitra's allegations instead describe her purported physical

*reaction* to alleged discrimination by Defendants.   As Engler astutely notes, Dr. Poitra's symptoms, properly understood, are not her "injuries" but her alleged damages (Engler Reply, ECF No. 32 at PageID.803–804, n.2).

Dr. Poitra additionally claims an alleged deprivation of her property interest in her professional reputation and reasonable advancement in her career (Am. Compl. ¶ 571).  However, injury to reputation by itself is not a "liberty" interest protected under the Fourteenth Amendment, and a stigma to reputation that affects only future employment opportunities does not give rise to a protected liberty interest.  *Siegert v. Gilley*, 500 U.S. 226, 233–34 (1991) (citing *Paul v. Davis*, 424 U.S. 693, 708–09 (1976)); *Mertik v. Blalock*, 983 F.2d 1353, 1362 (6th Cir. 1993).

Substantive due process does not offer recourse for every wrong, nor does it purport to "supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society."  *Guertin*, 912 F.3d at 918 (quoting *Daniels*, 474 U.S. at 332).  Construing the Amended Complaint in the light most favorable to Dr. Poitra and accepting all well-pleaded factual allegations as true, Dr. Poitra's allegations do not state a plausible substantive due process claim.

### b.    Procedural Due Process

The Individual Defendants argue that even if Dr. Poitra had identified a right for which process was due, she was not deprived of procedural due process, and neither a violation of an internal policy nor a delay resulting from investigative efforts constitute a deprivation of due process (MSU Br., ECF No. 18 at PageID.246–247; Engler Br., ECF No. 28 at PageID.742).

In response, Dr. Poitra argues that she has alleged sufficient facts to support a procedural due process claim because she was afforded "no Due Process prior to Defendants' deprivation of

her substantive due process rights" (Pl. Resps., ECF No. 23 at PageID.545 & ECF No. 31 at PageID.794).

      To state a procedural due process claim, a plaintiff must establish the following elements: "(1) that they have a property interest protected by the Due Process Clause; (2) that they were deprived of this property interest; and (3) that the state did not afford them adequate pre-deprivation procedural rights." *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 900 (6th Cir. 2019). "[O]nce it is determined that the Due Process Clause applies, the question remains what process is due." *Chandler v. Vill. of Chagrin Falls*, 296 F. App'x 463, 470 (6th Cir. 2008).  The answer to that question is not to be found in [local policy]." *Id.* (citing *Cleveland Bd. of Educ. V. Loudermill*, 470 U.S. 532, 541 (1985) ("The right to due process 'is conferred, not by legislative grace, but by constitutional guarantee.'") (citation omitted)).  "Rather, the Constitution defines what procedures are sufficient to satisfy due process." *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)).  The hallmark of procedural due process is "notice" and "an opportunity to be heard" that is appropriate to the nature of the case.  *Cunningham v. Blackwell*, 41 F.4th 530, 536 (6th Cir. 2022); *Johnson v. City of Saginaw, Mich.*, 980 F.3d 497, 511 (6th Cir. 2020).

      Here, even assuming arguendo that Dr. Poitra has a protected property interest, her allegations indicate that she was deprived of neither notice nor an opportunity to be heard.  Further, her bald conclusion that the RSVM Policy was violated does not state a constitutional violation.  Courts "do not ask what procedures an employee was or was not entitled to under state law, local ordinances, or, in this case, a university charter." *McKenna v. Bowling Green State Univ.*, 568 F. App'x 450, 458 (6th Cir. 2014) (citing *Chandler*, 296 F. App'x at 470).  In sum, regardless of when it accrued, Dr. Poitra's due process claim in Count IX is properly dismissed.

8.     **Count X:** **§ 1983 Equal Protection Claim Against All Individual Defendants**

In Count X, Dr. Poitra alleges that she was "denied MSU's protective services as a female [and as a] Native American … two acknowledged disfavored minorities," and that the "selective treatment was not substantially or rationally related to any legitimate government interest" (Am. Compl. ¶¶ 591–92).   The Individual Defendants argue that even if Dr. Poitra's § 1983 equal-protection claim in Count X was timely filed, she fails to plausibly plead an equal protection claim because she has not demonstrated that she was treated differently than a similarly-situated individual outside her protected classes (MSU Br., ECF No. 18 at PageID.247; Engler Br., ECF No. 28 at PageID.742; Norder Mot., ECF No. 30 at PageID.764–765).

Dr. Poitra wholly fails to respond to Defendants' argument. *See* Pl. Resps., ECF Nos. 23, 31 & 34.  The Individual Defendants argue that she has therefore abandoned this claim (MSU Reply, ECF No. 25 at PageID.674; Engler Reply, ECF No. 32 at PageID.803–804; Norder Reply, ECF No. 35 at PageID.826 n. 1).  The Court agrees.  Consequently, the Court dismisses Dr. Poitra's equal protection claim in Count X.

9.     **Count XI:  ELCRA Claim Against All Defendants**

a.     **Governmental Notice Requirement**

MSU argues that Dr. Poitra's state-law claims against MSU in both Counts XI and XII are barred because she failed to comply with the strict notice requirements in the Court of Claims Act, MICH. COMP. LAWS § 600.6431(3) (MSU Br., ECF No. 18 at PageID.247–248).

In response, Poitra argues that because she did not file suit in the Court of Claims, she is not required to comply with the notice requirements (ECF No. 23 at PageID.537–539, citing *Christie v. Wayne State Univ.*, No. 350321, 2021 WL 297452, at *3 (Mich. Ct. App. Jan. 28, 2021)).

31

In reply, MSU points out that *Christie* is pending appeal before the Supreme Court of Michigan, and MSU opines that both the plain meaning of the statutory provision and the policy behind the provision support its position that the requirement to provide notice "applies equally in federal court" (ECF No. 25 at PageID.683 n.4)

Michigan's Court of Claims Act requires that "[f]or a claim against this state for property damage or personal injuries, the claimant shall file the claim or notice under subsection (1) with the clerk of the court of claims within 6 months after the event that gives rise to the claim."  Mich. Comp. Laws § 600.6431(3).  In *Tyrrell v. University of Michigan*, the Michigan Court of Appeals determined that compliance with Mich. Comp. Laws § 600.6431 is "only necessary for claims proceeding in the Court of Claims."  966 N.W.2d 219, 221 (Mich. Ct. App. 2020), appeal dismissed 959 N.W.2d 719 (Mich. 2021).  Citing *Tyrrell*, the Michigan Supreme Court ordered briefing on whether claims filed in the circuit court are subject to the notice requirement.  *Christie v. Wayne State Univ.*, 967 N.W.2d 379 (Mich. 2021).

MSU's mere disagreement with the outcome in *Tyrrell* does not provide this Court with a proper basis for dismissal.  "In applying state law, [federal courts] anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court. Intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently."  *Meyers v. Cincinnati Bd. of Educ.*, 983 F.3d 873, 880 (6th Cir. 2020).  The Michigan Supreme Court has not yet ruled on this issue, and *Tyrrell* is still persuasive authority. *See also Williams v. Univ. of Michigan*, No. 22-cv-10296, 2022 WL 16796741, at *6–7 (E.D. Mich. Nov. 8, 2022) (collecting cases indicating uniformity among Michigan appellate court rulings).  Therefore, the Court concludes that MSU's argument does not entitle it to dismissal of either Count XI or XII.

### b.      Failure to State a Claim

#### (1)      *ELCRA Discrimination*

All Defendants argue that even assuming arguendo that Dr. Poitra timely filed her ELCRA discrimination claim, she has not plausibly pleaded the claim against them where she fails to demonstrate either (1) that she suffered an adverse employment action or (2) disparate treatment compared to a similarly-situated individual (MSU Br., ECF No. 18 at PageID.248–250, 252; Engler Br., ECF No. 28 at PageID.738 & 743; Norder Mot., ECF No. 30 at PageID.765–766).

Dr. Poitra effectively concedes the point.  Neither of the elements properly identified by Defendants are referenced in the allegations contained in her Count XI.  And, in her responses to Defendants' motions, she wholly fails to offer any substantive response to their argument that she has not satisfied these elements of a prima facie case under Michigan's ELCRA.  *See* Pl. Resps., ECF No. 23 at PageID.559–560, ECF No. 31 at PageID.796, & ECF No. 34 at PageID.821–822. *See generally Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004) (describing prima facie case for a discrimination claim under Michigan's ELCRA as requiring a plaintiff to show that "she was (1) a member of the protected class, (2) subject to an adverse employment action, (3) qualified for the job, and (4) treated differently than similarly situated male employees for the same or similar conduct").  Consequently, in their respective reply briefs, Defendants assert that Dr. Poitra has abandoned her ELCRA discrimination claim (MSU Reply, ECF No. 25 at PageID.684; Engler Reply, ECF No. 32 at PageID.806–807; Norder Reply, ECF No. 35 at PageID.827).  The Court agrees.  Dr. Poitra's ELCRA-discrimination claim is properly dismissed.

#### (2)      *ELCRA Retaliation*

All Defendants except Tyler argue that Dr. Poitra has also failed to state a plausible ELCRA retaliation claim in Count XI (MSU Br., ECF No. 18 at PageID.251; Engler Br., ECF No. 28 at

PageID.738 & 743; Norder Mot., ECF No. 30 at PageID.766).  Defendants argue that Dr. Poitra's

pleading is "bereft of any allegation that Upda, Engler, Simon, or Stanley, Jr. knew about her

protected activities at all—let alone that they retaliated against her in some respect" (MSU Br.,

ECF No. 18 at PageID.251).  According to Defendants, Dr. Poitra similarly alleges no retaliatory

action by Jachimiak (*id.*).  Defendants point out that Dr. Poitra's ELCRA retaliation claim only

asserts factual allegations concerning Tyler, Kent, and Norder, and that Dr. Poitra has not alleged

that either Kent or Norder took any adverse employment action against her (MSU Br., ECF No.

18 at PageID.251; Norder Mot., ECF No. 30 at PageID.766).

Dr. Poitra again effectively concedes the point.  Her responses to Defendants' motions

substantively address only the elements of her retaliation claim against Tyler, who does not request

dismissal, and her brief argument concerning Norder wholly fails to address whether he took any

adverse employment action against her.  *See* Pl. Resps., ECF No. 23 at PageID.559–560, ECF No.

31 at PageID.796, & ECF No. 34 at PageID.821–822.  *See generally Jackson v. Genesee Cnty. Rd.

Comm'n*, 999 F.3d 333, 343–44 (6th Cir. 2021) (describing prima facie case for a retaliation claim

under Michigan's ELCRA as requiring a plaintiff to show that (1) "she engaged in protected

activity," (2) "the defendant was aware of the protected activity," (3) "the defendant took an action

that was 'materially adverse' to the plaintiff," and (4) "there is a causal connection between the

plaintiff's protected activity and the defendant's adverse action").  In reply, Defendants assert that

Dr. Poitra has abandoned her ELCRA claims against all Individual Defendants other than Tyler

and, for this reason alone, those claims must be dismissed (MSU Reply, ECF No. 25 at

PageID.684; Engler Reply, ECF No. 32 at PageID.806–807).  The Court agrees.  Therefore, with

the exception of her ELCRA-retaliation claim against Tyler, Count XI is properly dismissed.

**10.**     __Count XII__:  **PWDCRA Claim Against All Defendants**

    **a.**     **PWDCRA Discrimination**

All Defendants argue that even assuming arguendo that Dr. Poitra's PWDCRA discrimination claim is timely filed, the claim fails because she does not plead any facts that support that any alleged discriminatory actions were based on or because of her disability, she cannot identify an adverse action she experienced, and she cannot show any differential treatment; indeed, Defendants point out that Dr. Poitra fails to set forth any facts or allegation that any of the Individual Defendants except for Norder actually knew she had a disability at all (MSU Br., ECF No. 18 at PageID.252; Engler Br., ECF No. 28 at PageID.738; Norder Mot., ECF No. 30 at PageID.768).

In response, Dr. Poitra argues (1) "at a minimum," Norder and Tyler knew about her disability because she worked with the RCPD, which "shared information with employees' supervisors"; and (2) "Defendants discriminated against Plaintiff by not only harassing her on the basis of her disability but also failing to provide appropriate accommodations to do her job, of which Tyler was on notice because Plaintiff asked him for accommodations and supports" (Pl. Resps., ECF No. 23 at PageID.561, ECF No. 31 at PageID.797, & ECF No. 34 at PageID.822–823).

Michigan's PWDCRA provides, in pertinent part, that "an employer shall not …  fail to promote … or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability … that is unrelated to the individual's ability to perform the duties of a particular job or position."  MICH. COMP. LAWS § 37.1202(1)(b).  To establish a prima facie case, an employee must demonstrate that "(1) she has a disability, (2) she is otherwise qualified for the job 'with or without reasonable accommodation,'

(3) she 'suffered an adverse employment decision,' (4) her employer 'knew or had reason to know' of her disability, and (5) her position remained open, or she was replaced." *Hrdlicka v. Gen. Motors, LLC*, 59 F.4th 791, 802 (6th Cir. 2023) (citation omitted).

Here, Dr. Poitra's allegations in Count XII wholly fail to reference any adverse employment decision or differential treatment, omissions she fails to address in responding to Defendants' motions. *See generally Hurtt v. Int'l Servs., Inc.*, 627 F. App'x 414, 419 (6th Cir. 2015) (defining an adverse employment action as "a materially adverse change in the terms of [the employee's] employment"). Norder points out that Dr. Poitra's failure to identify any adverse employment action is particularly fatal as to her discrimination claim against him, where her job position improved once he was removed (Norder Mot., ECF No. 30 at PageID.768).

Moreover, other than Norder, Dr. Poitra identifies only Tyler as having knowledge about her disability. Specific to Tyler, Dr. Poitra alleges that she approached Tyler about "changing out the desk" because she "no longer felt comfortable sitting at her abuser's former desk," and Tyler refused to help with the request (Am. Compl. ¶¶ 187–89). Dr. Poitra's allegations do not identify any specific conduct or statements by Tyler related to her disability, let alone discriminatory conduct or statements related to her disability or terms of employment.

In short, construing the Amended Complaint in the light most favorable to Dr. Poitra and accepting all well-pleaded factual allegations as true, Dr. Poitra insufficiently pleads a PWDCRA-discrimination claim. Her PWDCRA-discrimination claim in Count XII is properly dismissed.

### b.  **PWDCRA Retaliation**

Defendants argue that like her ELCRA retaliation claim, Dr. Poitra's PWDCRA retaliation claim also fails in its entirety as she has not identified any Individual Defendant other than Tyler who knew of her disability, let alone any facts to show that they retaliated against her in some

respect (MSU Br., ECF No. 18 at PageID.252; Engler Br., ECF No. 28 at PageID.738; Norder Mot., ECF No. 30 at PageID.768).

As Defendants point out in Reply (MSU Reply, ECF No. 25 at PageID.685), other than stating that the PWDCRA prohibits retaliation and citing to the state statute, Dr. Poitra wholly fails to offer any substantive response to Defendants' arguments that her PWDCRA retaliation claim should be dismissed.  *See* Pl. Resps., ECF No. 23 at PageID.560–561, ECF No. 31 at PageID.796–97 & ECF No. 34 at PageID.822.  The Court agrees that Dr. Poitra has effectively abandoned her PWDCRA-retaliation claim in Count XII.

### 11.    Request to Strike Paragraphs 389–476

Last, MSU and Defendants Stanley, Udpa, Simon, Hendrick, Tyler, Kent, and Jachimiak argue that this Court should strike eighty-seven paragraphs within the Factual Allegations in Dr. Poitra's Amended Complaint, paragraphs that they argue are completely immaterial to her claims; indeed, they argue that the allegations "do not relate to Plaintiff at all, but rather to other individuals who have participated in separate OIE investigations" in an effort to "place a spotlight on exploitive, immaterial matters, at the expense of the experiences of other individuals" (MSU Br., ECF No. 18 at PageID.253; *see also* Engler Br., ECF No. 28 at PageID.743[4]).

In response, Dr. Poitra argues that the Court should not strike these paragraphs because they contain no allegations of criminal activity and demonstrate that "MSU has spent years creating an environment where discrimination and retaliation were not only permitted but thrived" (ECF No. 23 at PageID.562–563).

---

[4] Defendant Engler merely indicates that this Court should "strike Paragraphs 387–475 [sic]" for the reasons set forth by MSU.

There are three categories of "Factual Allegations" at issue.  First, paragraphs 389 through 418, under the heading "Pervasive Culture of Sexual Harassment and Misconduct at MSU," allege that "at least 49 faculty and staff at MSU have been found in violation of MSU's Relationship Violence and Sexual Misconduct policy" and detail several of the instances.  Second, paragraphs 419 through 430, under the heading "MSU's Knowledge of its Pervasive Culture of Sexual Harassment and Misconduct," describe how N. Suzanne Lang, who was Dr. Poitra's support person during her OIE hearing, was promoted in August 2021 to Associate Provost and Associate Vice President for Human Resources and has "perhaps singlehandedly" been "working to change the culture of permissiveness regarding sexual misconduct at MSU for several years."  The remaining paragraphs 431 through 476 detail the processing of two OCR complaints by former MSU students, complaints that took 538 days and 661 days to resolve.

As MSU points out in Reply (ECF No. 25 at PageID.686), the allegations about other faculty members, Ms. Lang's efforts, and the processing of two other OCR complaints are relevant to Dr. Poitra's Title IX Heighted Risk claim in Count II, which this Court has dismissed.  However, the allegations are not relevant to the claims to which this case has been distilled:  Dr. Poitra's Title IX deliberate-indifference and retaliation claims, Title VII sex discrimination and retaliation claims, and her ADA claim against MSU; or her ELCRA-retaliation claim against Tyler.   In its discretion, the Court determines that these paragraphs are properly stricken at this juncture in the litigation to avoid the expenditure of time and money that would arise from litigating spurious issues.  *See Operating Engineers*, 783 F.3d at 1050.

### III.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that "Defendants Michigan State University, Michigan State University Board of Trustees, Stanley, Udpa, Simon, Hendrick, Taylor [sic], Kent, and Jachimiak's Motion to Partially Dismiss Plaintiff Christie Poitra's First Amended Complaint and Motion to Strike Paragraphs 389 through 476 of Amended Complaint" (ECF No. 17) is DENIED IN PART and GRANTED IN PART.  Specifically, the motion is denied as to Counts I, III, V, VI and VII and otherwise granted.  Defendants Stanley, Udpa, Simon, Hendrick, Kent, and Jachimiak are TERMINATED from this case, and Paragraphs 389 through 476 of the Amended Complaint (ECF No. 14) are STRICKEN.

**IT IS FURTHER ORDERED** that Defendant Engler's Motion to Dismiss (ECF No. 27) is GRANTED, and Defendant Engler is TERMINATED from this case.

**IT IS FURTHER ORDERED** that Defendant Norder's Motion to Dismiss (ECF No. 30) is GRANTED, and Defendant Norder is TERMINATED from this case.

**IT IS FURTHER ORDERED** that Defendants Michigan State University, Michigan State University Board of Trustees, and Quentin Tyler's answers to Plaintiff's Amended Complaint (ECF No. 14) are due not later than 14 days after entry of this Opinion and Order.

Dated:  March 6, 2023                                           /s/ Jane M. Beckering
                                                                             JANE M. BECKERING
                                                                             United States District Judge