### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CHRISTIE POITRA,

             Plaintiff,

v.

MICHIGAN STATE UNIVERSITY,
MICHIGAN STATE UNIVERSITY
BOARD OF TRUSTEES; SAMUEL L.
STANLEY, JR.; SATISH UDPA; LOU
ANNA K. SIMON; JOHN M. ENGLER;
RONALD L HENDRICK; ROBERT KENT;
TANYA JACHIMIAK; JOHN NORDER;
and QUENTIN TYLER; in their official and
individual capacities,

             Defendants.            /

Case No. 22-CV-00047
Hon. Jane M. Beckering

### AMENDED ANSWER TO FIRST AMENDED COMPLAINT,
### AFFIRMATIVE AND OTHER DEFENSES,
### AND RELIANCE ON JURY DEMAND

NOW COME Defendants Michigan State University, Michigan State University Board of

Trustees, and Quentin Tyler (collectively, "MSU Defendants"), by their attorneys Miller, Canfield,

Paddock and Stone, P.L.C., and amend their answer to Plaintiff's complaint pursuant to the Court's

March 6, 2023 Order (ECF No. 36) and hereby state as follows:[1]

---

[1] The Court's March 6, 2023 Order dismissed Defendants Samuel L. Stanley, Jr., Satish Udpa, Lou Anna K. Simon, Ronald L. Hendrick, Robert Kent, and Tanya Jachimiak from the case and therefore they are not required to and shall not further answer the Amended Complaint.

## PLAINTIFF'S INTRODUCTION

*"MSU POINTS OF PRIDE: MSU has several excellent academic centers that address*

*diversity, equity and inclusion as a part of their core mission. Three centers of note are the*

*Julian Samora Research Institute, the Native American Institute and the Center for Gender in*

*Global Context. Research and scholarship supported by these centers plays a crucial role in*

*the overall landscape for diversity academic work at MSU."*

*-MSU Diversity, Equity & Inclusion: Report and Plan*

\*             \*             \*

**ANSWER:**    MSU Defendants object to Plaintiff's "Introduction" as inconsistent with the

pleading requirements of Fed. R. Civ. P. 8, and because it is styled as a narrative summary

of Plaintiff's case rather than a short and plain statements of the claims and otherwise deny

as untrue that Plaintiff is entitled to any relief.

1.      Dr. Christie Poitra is a nationally recognized expert in Native American studies. She has

been employed in the Native American Institute ("NAI") at Michigan State University since

October 2015, serving as Interim Director since October 2018. In her time at NAI, Dr. Poitra has

been awarded $1,043,157.00 from the National Science Foundation and other granting agencies, as

Primary Investigator and Co-Primary Investigator; planned, developed, supported, and

implemented community-based collaborative research, partnerships, and programming with: tribal

colleges, Indigenous communities, tribal governments, urban centers, and K-12 schools throughout

Michigan; brokered grant-funded, cross-unit, and faculty research partnerships and faculty

development opportunities for MSU; authored numerous grant proposals, articles, reports, invited

talks, and presentations; managed 10 accounts and administered 2 endowments; directly

supervised staff, consultants, and undergraduate and graduate students; and collaborated on

outreach, research, and grants with 21 faculty, 5 academic staff, 4 post-doctoral students, 8 tribal governments, 2 tribal colleges, 4 K-12 schools, and 7 non-profit organizations.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 1 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs, except to admit that Plaintiff was employed by the NAI at Michigan State University and that Plaintiff was the Interim Director of the NAI and to deny as untrue that Plaintiff is currently employed at Michigan State University.**

2.      It is not an exaggeration that there is no one with the breadth of experience, scholarly output, and depth of community relationships in the field of Native American studies comparable to Dr. Poitra in the entire state of Michigan. MSU regularly touts the work of NAI and of Dr. Poitra specifically to demonstrate its commitment to Native American studies. Dr. Poitra even wrote the official land acknowledgment used by MSU.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 2 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

3.      Due to MSU budget cuts, Dr. Poitra has built this impressive professional oeuvre while doing the work of at least three full time employees in NAI. Even more impressively, Dr. Poitra has achieved all this while spending the past three and a half years fighting off discrimination, harassment and stalking from multiple supervisors, navigating the onerous and lengthy MSU Title IX and discrimination investigation process; going through complaint processes with both the U.S. Department of Education and the Equal Opportunity Employment

Commission to try to seek accountability for the abuse she has suffered; and dealing with retaliation from her superiors at MSU.

**ANSWER:  MSU Defendants deny the allegations of Paragraph 3 of Plaintiff's Complaint as untrue, except to admit that Plaintiff has participated in an MSU Title IX investigation process and a complaint process through the Equal Opportunity Employment Commission.**

4.      Instead of protecting and supporting Dr. Poitra, MSU has left Dr. Poitra continuously exposed to discrimination, harassment, and retaliation; failed to enforce its own no-contact directive against her abuser; forced her to shoulder significantly more work than any reasonable individual should be expected to perform; denied her equitable pay and professional title; forced her to clean out her abuser's desk, which contained his sexual lubricants; shrunk the budget of and even threatened to dissolve NAI; and allowed her abuser to continue working as a professor on campus at Michigan State University where he remains as of the date of filing.

**ANSWER:    MSU Defendants deny the allegations in Paragraph 4 of Plaintiff's Complaint as untrue.**

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over Plaintiff's federal claims under 29 U.S.C. § 626, 28 U.S.C. § 1343, and 28 U.S.C. § 1331.

**ANSWER:    MSU Defendants admit that this Court has jurisdiction over Plaintiff's Complaint pursuant to 29 U.S.C. § 626, 28 U.S.C. §§ 1331 and 1343, and otherwise deny as untrue that any relief is warranted.**

6.      The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

**ANSWER**:    **MSU Defendants admit that this Court has jurisdiction over Plaintiff's state law claims pursuant to 29 U.S.C. § 1367, and otherwise deny as untrue that any relief is warranted.**

7.    Pursuant to 28 U.S.C. § 1391(b), venue lies in the Western District of Michigan as the events giving rise to this action occurred in East Lansing, Michigan.

**ANSWER**:    **MSU Defendants admit that venue is proper in this Court.**

## ALLEGED PARTIES

8.    Plaintiff Christie Poitra is a resident of Ingham County, State of Michigan, and at all relevant times was an employee of Michigan State University.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 8 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

9.    Defendant Michigan State University ("MSU") was at all relevant times and continues to be a public educational institution in Ingham County, Michigan, organized and existing under the laws of the State of Michigan.

**ANSWER**:    **MSU Defendants admit the allegations in Paragraph 9 of Plaintiff's Complaint.**

10.    MSU receives federal funding and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a).

**ANSWER**:    **MSU Defendants admit the allegations in Paragraph 10 of Plaintiff's Complaint.**

11.    MSU Board of Trustees is the governing body of MSU.

**ANSWER**:   **MSU Defendants admit the allegations in Paragraph 11 of Plaintiff's Complaint.**

12    Defendant MSU and Defendant Board of Trustees are hereinafter collectively referred to as "the MSU Defendants."

**ANSWER**:   **MSU Defendants neither admit nor deny the allegations contained in Paragraph 12 of Plaintiff's Complaint and deny as untrue any allegation that MSU and its Board of Trustees are separate bodies.**

13.    At all material times before January 31, 2018, Defendant Lou Anna K. Simon, in her official capacity, worked within Ingham County, State of Michigan, and was an agent and/or employee of MSU, acting or failing to act within the scope, course, and authority of her employment and her employer.

**ANSWER**:    **MSU Defendants state that Lou Anna K. Simon has been terminated from the case and otherwise deny the allegations in Paragraph 13 of Plaintiff's Complaint as untrue, except to admit that Lou Anna K. Simon was the President of MSU from 2005 to January 2018.**

14.    At all material times before January 31, 2018, Simon was the President of MSU.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 14 of Plaintiff's Complaint as untrue, except to admit that Lou Anna K. Simon was the President of MSU from 2005 to January 2018.**

15.    At all material times between January 31, 2018, and January 17, 2019, Defendant John M. Engler, in his official capacity, worked within Ingham County, Michigan, and was an agent and/or employee of MSU, acting or failing to act within the scope, course, and authority of his employment and his employer.

**ANSWER**:    **MSU Defendants state that John M. Engler has been terminated from the case and otherwise deny the allegations in Paragraph 15 of Plaintiff's Complaint as untrue, except to admit that John Engler was the Interim President of MSU from January 31, 2018, to January 17, 2019.**

16.    At all material times between January 31, 2018, and January 17, 2019, Engler was the Interim President of MSU.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 16 of Plaintiff's Complaint as untrue, except to admit that John Engler was the Interim President of MSU from January 31, 2018, to January 17, 2019.**

17.    At all material times between January 17, 2019, and August 1, 2019, Defendant Satish Udpa, in his official capacity, worked within Ingham County, State of Michigan, and was an agent and/or employee of MSU, acting or failing to act within the scope, course, and authority of his employment and his employer.

**ANSWER**:    **MSU Defendants state that Satish Udpa has been terminated from the case and otherwise deny the allegations in Paragraph 17 of Plaintiff's Complaint as untrue, except to admit that Satish Udpa was the Acting President from January 17, 2019, to August 1, 2019.**

18.    At all material times between January 17, 2019, and August 1, 2019, Udpa was the Acting President of MSU.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 18 of Plaintiff's Complaint as untrue, except to admit that Satish Udpa was the Acting President of MSU from January 19, 2019, to August 1, 2019.**

19.     At all material times after August 1, 2019, Defendant Samuel L. Stanley, Jr., in his official capacity, worked within Ingham County, State of Michigan, and was an agent and/or employee of MSU, acting or failing to act within the scope, course, and authority of his employment and his employer.

**ANSWER**:     **MSU Defendants state that Samuel L. Stanley, Jr., has been terminated from the case and otherwise deny the allegations in Paragraph 19 of Plaintiff's Complaint as untrue, except to admit that Samuel L. Stanley held the position as President of MSU from August 1, 2019, through the January 11, 2023.**

20.     At all material times after August 1, 2019, Stanley was the President of MSU.

**ANSWER**:     **MSU Defendants deny the allegations in Paragraph 20 of Plaintiff's Complaint as untrue, except to admit that Samuel L. Stanley held the position as President of MSU from August 1, 2019, through January 11, 2023.**

21.     At all material times until June 30, 2021, Defendant Ronald L. Hendrick, in his official capacity, worked within Ingham County, State of Michigan, and was an agent and/or employee of MSU, acting or failing to act within the scope, course, and authority of his employment and his employer.

**ANSWER**:     **MSU Defendants state that Ronald L. Hendrick has been terminated from the case and otherwise deny the allegations in Paragraph 21 of Plaintiff's Complaint as untrue, except to admit that Ronald L. Hendrick was the Dean of the College of Agriculture and Natural Resources at MSU from July 2016 through June 30, 2021.**

22.     At all material times until June 30, 2021, Hendrick was the Dean of the College of Agriculture and Natural Resources at MSU.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 22 of Plaintiff's Complaint as untrue, except to admit that Ronald L. Hendrick was the Dean of the College of Agriculture and Natural Resources at MSU from July 2016 through June 30, 2021.**

23.    At all material times from June 18, 2018, to February 2, 2020, Defendant Robert Kent, in his official capacity, worked within Ingham County, State of Michigan, and was an agent and/or employee of MSU, acting or failing to act within the scope, course, and authority of his employment and his employer.

**ANSWER**:    **MSU Defendants state that Robert Kent has been terminated from the case and otherwise deny the allegations in Paragraph 23 of Plaintiff's Complaint as untrue, except to admit that Robert Kent was the Interim Title IX Coordinator at MSU from June 18, 2018, to February 2, 2020.**

24.    At all material times from June 18, 2018, to February 2, 2020, Kent was MSU's Interim Title IX Coordinator.

**ANSWER:**    **MSU Defendants deny the allegations in Paragraph 24 of Plaintiff's Complaint as untrue, except to admit that Robert Kent was the Interim Title IX Coordinator at MSU from June 18, 2018, to February 2, 2020.**

25.    At all material times from February 3, 2020, to October 1, 2021, Defendant Tanya Jachimiak, in her official capacity, worked within Ingham County, State of Michigan, and was an agent and/or employee of MSU, acting or failing to act within the scope, course, and authority of her employment and her employer.

**ANSWER:**    **MSU Defendants state that Tanya Jachimiak has been terminated from the case and otherwise deny the allegations in Paragraph 25 of Plaintiff's Complaint as untrue,**

except to admit that Tanya Jachimiak was the Interim Title IX Coordinator at MSU from February 3, 2020, through October 1, 2021.

26.     At all material times from February 3, 2020, to October 1, 2021, Jachimiak was MSU's Title IX Coordinator.

**ANSWER**:     **MSU Defendants deny the allegations in Paragraph 26 of Plaintiff's Complaint as untrue, except to admit that Tanya Jachimiak was the Interim Title IX Coordinator at MSU from February 3, 2020, through October 1, 2021.**

27.     At all material times Defendant John Norder, in his official capacity, working within Ingham County, State of Michigan, and was an agent and/or employee of MSU, acting or failing to act within the scope, course, and authority of his employment and his employer.

**ANSWER**:     **MSU Defendants state that John Norder has been terminated from the case and otherwise deny the allegations in Paragraph 27 of Plaintiff's Complaint as untrue, except to admit that Defendant John Norder is an employee of MSU.**

28.     At all material times Norder was an employee of MSU. At all material times prior to August 2018, Norder was the Director of the Native American Institute at MSU; and at all relevant times Norder was an Associate Professor of Anthropology at MSU.

**ANSWER**:     **MSU Defendants deny the allegations in Paragraph 28 of Plaintiff's Complaint as untrue, except to admit that Defendant Norder was the Director of the Native American Institute at MSU prior to August 2018, and is currently an Associate Professor of Anthropology at MSU.**

29.     At all material times Defendant Quentin Tyler, in his official capacity, worked within Ingham County, State of Michigan, and was an agent and/or employee of MSU, acting or failing to act within the scope, course, and authority of his employment and his employer.

**ANSWER**:     **MSU Defendants deny the allegations in Paragraph 29 of Plaintiff's Complaint as untrue, except to admit that Quentin Tyler has served as MSU's Associate Dean and Director for the Office of Diversity, Inclusion and Equity from 2018 through the present date, and as the Director of MSU Extension from June 1, 2021, through the present date.**

30.     At all material times prior to June 1, 2021, Tyler was Associate Dean and Director for Diversity, Equity, and Inclusion for the College of Agriculture and Natural Resources. At all material times after June 1, 2021, Tyler was Director of MSU Extension.

**ANSWER:     MSU Defendants deny the allegations in Paragraph 30 of Plaintiff's Complaint as untrue, except to admit that Quentin Tyler has served as MSU's Associate Dean and Director for the Office of Diversity, Inclusion and Equity from 2018 through the present date, and as the Director of MSU Extension from June 1, 2021, through the present date.**

## ALLEGED APPLICABLE LAW AND POLICY

31.     Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 (a), states that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance...

**ANSWER**:     **The allegations in Paragraph 31 of Plaintiff's Complaint state legal conclusions to which no response is required, but to the extent a response is required, MSU Defendants admit that Paragraph 31 accurately recites a portion of 20 U.S.C. § 1681(a).**

32.     Title IX is implemented through the Code of Federal Regulations. *See* 34 C.F.R. Part 106.

**ANSWER**:  **The allegations in Paragraph 31 of Plaintiff's Complaint state legal conclusions to which no response is required, but to the extent a response is required, MSU Defendants deny the allegations as untrue, as Title IX is implemented only in part through the Code of Federal Regulations at 34 C.F.R. Part 106.**

33.    34 C.F.R. § 106.8(b) provides:

...A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

**ANSWER**:  **The allegations in Paragraph 33 of Plaintiff's Complaint state legal conclusions to which no response is required, but to the extent a response is required, MSU Defendants admit that Paragraph 33 accurately recites a portion of 34 C.F.R. § 106.8(b) and otherwise deny as untrue that Plaintiff is entitled to relief.**

34.    In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of teacher-student discrimination.

**ANSWER**:  **The allegations in Paragraph 34 of Plaintiff's Complaint state legal conclusions to which no response is required and to the extent a response is required, MSU Defendants deny the allegations in Paragraph 34 as an incomplete recitation of the case law decision, which speaks for itself.**

35.    In *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), the Supreme Court extended the private damages action recognized in *Gebser* to cases where the harasser is a student, rather than a teacher.

**ANSWER**:  **The allegations in Paragraph 35 of Plaintiff's Complaint state legal conclusions to with no response is required and to the extent a response is required, MSU Defendants deny the allegations in Paragraph 35 as an incomplete recitation of the case law decision, which speaks for itself.**

36.    *Davis* held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is:

> a) deliberately indifferent to sexual harassment of which the recipient has actual knowledge, and
>
> b) the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.
>
> *Davis*, 526 U.S. at 1669-76.

**ANSWER**:  **The allegations in Paragraph 36 of Plaintiff's Complaint state legal conclusions to which no response is required and to the extent a response is required, MSU Defendants deny the allegations in Paragraph 36 as an incomplete recitation of the case law decision, which speaks for itself.**

37.    In *Kollaritsch v. Michigan State University Board of Trustees*, 944 F.3d 613 (6th Cir. 2019), the Sixth Circuit Court of Appeals held that, in order to be liable for deliberate indifference under Title IX, a school's response must have failed to protect a plaintiff against actual further harassment: "...a student-victim plaintiff must plead, and ultimately prove, that the school had actual knowledge of actionable sexual harassment and that the school's deliberate indifference to it resulted in further actionable sexual harassment against the student-victim, which caused the Title IX injuries." *Id.* at 618.

**ANSWER**:  **The allegations in Paragraph 37 of Plaintiff's Complaint state legal conclusions to which no response is required and to the extent a response is required, MSU**

**Defendants deny the allegations in Paragraph 37 as an incomplete recitation of the case law decision, which speaks for itself.**

38.     In *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005), the Supreme Court held that retaliation against a person who complains about sex discrimination is itself a form of discrimination "on the basis of sex" forbidden by Title IX.

**ANSWER:    The allegations in Paragraph 38 of Plaintiff's Complaint state legal conclusions to which no response is required and to the extent a response is required, MSU Defendants deny the allegations in Paragraph 38 as an incomplete recitation of the case law decision, which speaks for itself.**

39.     The First Amendment to the United States Constitution provides that Congress shall make no law "abridging the freedom of speech." U.S. Const. amend. I.

**ANSWER:    The allegations in Paragraph 39 of Plaintiff's Complaint state legal conclusions to which no response is required and to the extent a response is required, MSU Defendants deny the allegations in Paragraph 39 as an incomplete recitation of the First Amendment, which speaks for itself.**

40.     In *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969), the Supreme Court held that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."

**ANSWER:    The allegations in Paragraph 40 of Plaintiff's Complaint state legal conclusions to which no response is required and to the extent a response is required, MSU Defendants deny the allegations in Paragraph 40 as an incomplete recitation of the case law decision, which speaks for itself.**

-14-

41.     In *Healy v. James*, 408 U.S. 169 (1972), the Supreme Court held that the First Amendment applies with the same force at public universities as at other educational institutions.

**ANSWER:   The allegations in Paragraph 41 of Plaintiff's Complaint state legal conclusions to which no response is required and to the extent a response is required, MSU Defendants deny the allegations in Paragraph 41 as an incomplete recitation of the case law decision, which speaks for itself.**

42.     The Fifth Amendment to the U.S. Constitution provides that "No person shall be... deprived of life, liberty, or property, without due process of law...." U.S. Const. amend. V.

**ANSWER:   The allegations in Paragraph 42 of Plaintiff's Complaint state legal conclusions to which no response is required and to the extent a response is required, MSU Defendants deny the allegations in Paragraph 42 as an incomplete recitation of the Fifth Amendment.**

43.     The Fourteenth Amendment to the U.S. Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

**ANSWER:   The allegations in Paragraph 43 of Plaintiff's Complaint state legal conclusions to which no response is required and to the extent a response is required, MSU Defendants deny the allegations in Paragraph 43 as an incomplete recitation of the Fourteenth Amendment.**

44.     Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 *et seq*., states that it shall be an unlawful employment practice for an employer:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

**ANSWER**: **The allegations in Paragraph 44 of Plaintiff's Complaint state legal conclusions to which no response is required and to the extent a response is required, MSU Defendants admit that Paragraph 44 accurately quotes 42 U.S.C. § 2000e-2(a) and otherwise deny as untrue that Plaintiff is entitled to relief.**

45.    Under Title VII, 42 U.S.C. § 2000e-2, the term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person.

**ANSWER**: **The allegations in Paragraph 45 of Plaintiff's Complaint state legal conclusions to which no response is required and to the extent a response is required, MSU Defendants deny as untrue that 42 U.S.C. § 2000e-2 defines the term "employer."**

46.    Under Title VII, 42 U.S.C. § 2000e, the term "employee" means an individual employed by an employer.

**ANSWER**: **The allegations in Paragraph 46 of Plaintiff's Complaint state legal conclusions to which no response is required and to the extend a response is required, MSU Defendants admit that Paragraph 46 accurately quotes, in part, 42 U.S.C. § 2000e(f) and otherwise deny as untrue that Plaintiff is entitled to relief.**

-16-

47.     The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111 *et seq*., states that:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.
>
> 42 U.S.C. § 12112(a).

**ANSWER**:   **The allegations in Paragraph 47 of Plaintiff's Complaint state legal conclusions to which no response is required and to the extent a response is required, MSU Defendants admit that Paragraph 48 accurately recites 42 U.S.C. § 12112(a) and otherwise deny as untrue that Plaintiff is entitled to relief.**

48.     Under the ADA, the term "covered entity" means an employer, employment agency, labor organization, or joint labor-management committee.

**ANSWER**:   **The allegations in Paragraph 48 of Plaintiff's Complaint state legal conclusions to which no response is required and to the extent a response is required, MSU Defendants admit that Paragraph 48 accurately recites the definition of "covered entity" under the ADA and otherwise deny as untrue that Plaintiff is entitled to relief.**

49.     Under the ADA, 42 U.S.C. § 12111, the term "employer" is defined as:

> ...A person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person, except that, for two years following the effective date of this subchapter, an employer means a person engaged in an industry affecting commerce who has 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year, and any agent of such person.
>
> 42 U.S.C. § 12111(5)(A).

**ANSWER**:   **The allegations in Paragraph 49 of Plaintiff's Complaint state legal conclusions to which no response is required and to the extent a response is required, MSU**

**Defendants admit that Paragraph 49 accurately recites a portion of 42 U.S.C. § 12111(5)(A)**

**and otherwise deny as untrue that Plaintiff is entitled to relief.**

50.     Under the ADA, the term "discriminate against a qualified individual on the basis

of disability" includes but is not limited to:

> (1) Limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee; ...
>
> (3) Utilizing standards, criteria, or methods of administration--
>   (A) that have the effect of discrimination on the basis of disability; or
>   (B) that perpetuate the discrimination of others who are subject to common administrative control.
>
> 42 U.S.C. § 12112(b).

**ANSWER**:    **The allegations in Paragraph 50 of Plaintiff's Complaint state legal**

**conclusions to which no response is required and to the extent a response is required, MSU**

**Defendants admit that Paragraph 50 accurately recites a portion of 42 U.S.C. § 12112(b) and**

**otherwise deny as untrue that Plaintiff is entitled to relief.**

51.     Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 701 *et seq*.,

provides that:

> No otherwise qualified individual with a disability in the United States, as defined in Section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...
>
> 29 U.S.C. § 794(a).

**ANSWER**:    **The allegations in Paragraph 51 of Plaintiff's Complaint state legal**

**conclusions to which no response is required and to the extent a response is required, MSU**

Defendants admit that Paragraph 51 accurately recites a portion of 29 U.S.C. § 794(a) and otherwise deny as untrue that Plaintiff is entitled to relief.

52.     Section 504 defines a "program or activity" to include all operations of a college, university, or other postsecondary institution or a public system of higher education. 29 U.S.C. § 794(b)(2)(A).

**ANSWER**:  **The allegations in Paragraph 52 of Plaintiff's Complaint state legal conclusions to which no response is required and to the extent a response is required, MSU Defendants admit that paragraph 52 accurately recites, in part, 29 U.S.C. § 794(b)(2)(A) and otherwise deny as untrue that Plaintiff is entitled to relief.**

## ALLEGED FACTUAL ALLEGATIONS

53.     Dr. Christie Poitra is the Interim Director of the Native American Institute ("NAI") at MSU.

**ANSWER**:  **MSU Defendants deny the allegations in Paragraph 53 of Plaintiff's Complaint as untrue.**

54.     Dr. Poitra has been at MSU as a student and hourly graduate student since 2010. She initially worked in the Office of K-12 Outreach, and in January 2016, she joined NAI.

**ANSWER**:  **MSU Defendants neither admit nor deny the allegations in Paragraph 54 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs other than to admit that Plaintiff has been an MSU student, graduate student, and employee.**

55.     Dr. Poitra's professional record and educational achievements are impressive.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 55 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

56.    Dr. Poitra holds a doctorate degree in educational policy from MSU, a Master of Arts degree in American Indian Studies from UCLA, and a Bachelor of Arts degree in Legal Studies from UC Berkeley.

**ANSWER**:    **MSU Defendants admit the allegations in Paragraph 56 of Plaintiff's Complaint, based upon information and belief.**

57.    While at UC Berkeley, Dr. Poitra was awarded prestigious awards through the Achievement Award Program, the Leadership Award Program, and the Ronald E. McNair Scholars Program.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 57 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

58.    While at UCLA, Dr. Poitra received the Graduate Opportunity Fellowship, the Gold Shield Fellowship, and a grant through the Institute of American Cultures Research.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 58 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

59.    While pursuing her doctorate at MSU, Dr. Poitra received a $150,000 fellowship as a MSU Distinguished Fellow.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 59 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

60.    This fellowship is considered one of the most prestigious fellowships MSU can offer to an incoming graduate student and is used to recruit top talent.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 60 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

61.    In addition to her academic credentials, Dr. Poitra has more than fifteen years of experience working directly with Native communities.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 61 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

62.    Prior to her work at NAI, Dr. Poitra worked as an elementary school teacher in a reservation public school and was appointed as part of the MSU Office of K-12 Outreach, where her work focused on instructional leadership in diverse school contexts.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 62 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

63.    Throughout her career, Dr. Poitra has authored and co-authored numerous scholarly articles in her area of expertise.

**ANSWER**:     **MSU Defendants neither admit nor deny the allegations in Paragraph 63 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

64.     Dr. Poitra is well-known within her academic community, and regularly attends events and speaks at conferences and on panels about her work with indigenous communities.

**ANSWER**:     **MSU Defendants neither admit nor deny the allegations in Paragraph 64 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

65.     Through her work with NAI, Dr. Poitra has secured more than $1,000,000 in Federal grant money to aid the program at NAI.

**ANSWER**:     **MSU Defendants neither admit nor deny the allegations in Paragraph 65 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

66.     In addition to her duties at NAI, Dr. Poitra has participated in numerous committees both within and outside of MSU.

**ANSWER**:     **MSU Defendants neither admit nor deny the allegations in Paragraph 66 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs, except to admit that Plaintiff has been a member on MSU committees.**

67.     Dr. Poitra has received several awards for her work and has been featured in international publications like *Diverse Issues in Higher Education* magazine.

**ANSWER**: **MSU Defendants neither admit nor deny the allegations in Paragraph 67 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

68. Dr. Poitra also serves as a mentor to students at MSU.

**ANSWER**: **MSU Defendants neither admit nor deny the allegations in Paragraph 68 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

69. Dr. Poitra is Latina and a descendant of the Turtle Mountain Band of Chippewa Indians.

**ANSWER**: **MSU Defendants neither admit nor deny the allegations in Paragraph 69 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

### *Alleged Native American Institute's Functions and Placement at MSU*

70. NAI is a small, unique unit at MSU.

**ANSWER**: **MSU Defendants neither admit nor deny the allegations in Paragraph 70 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs, except to admit that the NAI is a unit within the College of Agriculture and Natural Resources.**

71. NAI's mission is two-fold, first to engage in scholarly pursuits such as research and writing, and second to engage and work directly with Native communities.

**ANSWER**: **MSU Defendants deny the allegations in Paragraph 71 of Plaintiff's Complaint as untrue, except to admit that the mission of the NAI, without limitation, is to produce and further scholarship and programming for the benefit of tribes, American Indian**

communities and Native organizations, and support campus and community collaboration and provides opportunities for faculty, staff, students and the public to learn about issues facing American Indians and Indigenous peoples.

72.    In its most recent strategic plan for Diversity, Equity, and Inclusion, MSU described the work of NAI as playing a "crucial role in the overall landscape for diversity academic work at MSU."

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 72 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

73.    Working directly with Native communities on collaborative scholarship and programming, the NAI's mission is unlike any other throughout the country, and a position like that at NAI is impossible to replicate elsewhere.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 73 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

74.    Even nationwide, the group of academics doing work in the same field is a small, tightly knit community.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 74 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

75.    The function of NAI is also directly tied to the Native communities with which it works.

**ANSWER**:     **MSU Defendants neither admit nor deny the allegations in Paragraph 75 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs, except to admit that a function of the NAI is to directly collaborate and/or partner with Native communities.**

76.     The relationships between Dr. Poitra and local Native communities are essential to NAI's success.

**ANSWER**:     **MSU Defendants deny the allegations in Paragraph 76 as untrue.**

77.     NAI is a unit within MSU's College of Agriculture and Natural Resources ("CANR").

**ANSWER**:     **MSU Defendants admit the allegations in Paragraph 77 of Plaintiff's Complaint.**

78.     CANR is an essential part of MSU's campus, with its purpose to realize the goals of a land grant university.

**ANSWER**:     **MSU Defendants neither admit nor deny the allegations in Paragraph 78 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

79.     CANR includes a vast number of departments within MSU, ranging from Forestry to Interior Design.

**ANSWER**:     **MSU Defendants deny the allegations in paragraph 79 as untrue, except to admit that Forestry and Interior Design are areas of study, among others, in the CANR at MSU.**

80.     Since its inception, CANR has been led and directed by mostly white males until Defendant Hendrick left MSU for Texas Tech University and Dr. Kelly Millenbah was appointed Interim Dean on July 1, 2021.

**ANSWER**:     **MSU Defendants admit that Dr. Kelly Millenbah was appointed as Interim Dean of the CANR at MSU as of July 1, 2021 and that Hendrick (who has been terminated from this litigation as a Defendant) left MSU for Texas Tech University; and MSU Defendants neither admit nor deny the remaining allegations in Paragraph 80 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

81.     CANR's administration does not reflect the diverse communities it is meant to serve and does not reflect the diverse student body enrolled in its programs.

**ANSWER**:     **MSU Defendants neither admit nor deny the allegations in Paragraph 81 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

82.     Of the 32 deans, directors, and chairs listed on CANR's website, only 4, or 12.5%, are people of color.

**ANSWER**:     **MSU Defendants neither admit nor deny the allegations in Paragraph 82 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

83.     While MSU does not appear to publish statistics regarding the demographics of its individual colleges, the MSU 2021 Fall Enrollment Report indicates that MSU's fall 2021 student body includes 25.9% students of color.

**ANSWER**:   **MSU Defendants admit the allegations in Paragraph 83 of Plaintiff's Complaint.**

84.   When Dr. Poitra first began working at NAI, Defendant Norder was serving as Director of NAI.

**ANSWER**:   **MSU Defendants state that Norder has been terminated from the case and otherwise admit the allegations in Paragraph 84 of Plaintiff's Complaint.**

85.   Norder held the Director position at NAI from 2014 until his removal in 2018.

**ANSWER**:   **MSU Defendants admit the allegations in Paragraph 85 of Plaintiff's Complaint.**

86.   While he was director of NAI, Norder also had a position at the MSU Museum.

**ANSWER**:   **MSU Defendants admit the allegations in Paragraph 86 of Plaintiff's Complaint.**

87.   Norder was full time in NAI until May 2018, then his time was reduced to a 50/50 split with the Museum.

**ANSWER**:   **MSU Defendants neither admit nor deny the allegations in Paragraph 87 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

88.   Norder continues to be an Associate Professor of Anthropology at MSU as of the date of filing.

**ANSWER**:   **MSU Defendants admit the allegations in Paragraph 88 of Plaintiff's Complaint.**

89.   While Norder was director of NAI, Dr. Poitra served as Assistant Director and reported directly to Norder.

**ANSWER: MSU Defendants admit the allegations of Paragraph 89 of Plaintiff's Complaint.**

90. Each time a faculty or academic staff member is hired, whether in CANR or another college, the employee must sign a contract and agree to abide by the rules and regulations of the MSU Faculty Handbook.

**ANSWER: MSU Defendants deny the allegations in Paragraph 90 of Plaintiff's Complaint as untrue, except to admit that MSU Faculty are expected to adhere to the terms of the MSU Faculty Handbook.**

91. The faculty handbook prohibits discrimination and harassment, and further states that "the University community holds itself to a certain standard of conduct more stringent than those mandated by law."

**ANSWER: MSU Defendants neither admit nor deny the allegations in Paragraph 91 of Plaintiff's Complaint and state that the MSU Faculty Handbook (or any iterations thereof) speaks for itself.**

92. The Faculty Handbook also references MSU's Relationship Violence & Sexual Misconduct Policy, which prohibits gender discrimination, including sexual assault, harassment, and violence.

**ANSWER: MSU Defendants neither admit nor deny the allegations in Paragraph 92 of Plaintiff's Complaint and state that the MSU Faculty Handbook and the RVSM Policy (or any iterations thereof) speak for themselves.**

### _Alleged History and Diagnosis of Poitra's Disability_

93. In February 2013, Dr. Poitra was involved in a serious car accident as an MSU hourly graduate student employee and fellow.

-28-

**ANSWER**:   **MSU Defendants neither admit nor deny the allegations in Paragraph 93 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

94.    The accident occurred during a work outreach trip to a reservation school in the Upper Peninsula of Michigan.

**ANSWER**:   **MSU Defendants admit the allegations in Paragraph 94 of Plaintiff's Complaint.**

95.    At the time, Dr. Poitra was pursuing her doctorate degree at MSU and was employed by MSU.

**ANSWER**:   **MSU Defendants admit the allegations in Paragraph 95 of Plaintiff's Complaint.**

96.    Dr. Poitra and a team of other professionals from MSU were returning from a trip for tribal outreach to a Native school on the upper peninsula of Michigan.

**ANSWER:**   **MSU Defendants neither admit nor deny the allegations in Paragraph 96 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

97.    Dr. Poitra was in a van with several other MSU colleagues when they were involved in a multi-car accident.

**ANSWER**:   **MSU Defendants admit the allegations in Paragraph 97 of Plaintiff's Complaint.**

98.    Dr. Poitra was in the van when it was hit by a semi-truck.

**ANSWER**:   **MSU Defendants admit the allegations in Paragraph 98 of Plaintiff's Complaint.**

99.     Dr. Poitra was seriously injured and underwent multiple surgeries as a result.

**ANSWER:     MSU Defendants neither admit nor deny the allegations in Paragraph 99 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

100.     Dr. Poitra was diagnosed with a mild traumatic brain injury ("TBI") from the accident, and she suffered from serious cognitive symptoms, including memory loss.

**ANSWER:     MSU Defendants neither admit nor deny the allegations in Paragraph 100 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

101.     Dr. Poitra also has what MSU determined to be a disfiguring scar on her chest.

**ANSWER:     MSU Defendants neither admit nor deny the allegations in Paragraph 101 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

102.     As part of her recovery, Dr. Poitra received a significant amount of cognitive therapy, equivalent to that which a stroke victim would receive.

**ANSWER:     MSU Defendants neither admit nor deny the allegations in Paragraph 102 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

103.     Following the accident, Dr. Poitra experienced vivid flashbacks of the accident, insomnia, and severe panic attacks.

**ANSWER:     MSU Defendants neither admit nor deny the allegations in Paragraph 103 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

104.     Dr. Poitra was diagnosed with post-traumatic stress disorder ("PTSD").

**ANSWER**:     **MSU Defendants neither admit nor deny the allegations in Paragraph 104 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

105.     As part of her PTSD diagnosis, Dr. Poitra underwent months of cognitive therapy and rehabilitation for the TBI through an MSU provider.

**ANSWER**:     **MSU Defendants neither admit nor deny the allegations in Paragraph 105 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

106.     Dr. Poitra also went through the process of seeking worker's compensation through MSU.

**ANSWER**:     **MSU Defendants admit the allegations in Paragraph 106 of Plaintiff's Complaint**.

107.     Through the worker's compensation application process, Dr. Poitra was required to provide substantial medical documentation to MSU and submitted to multiple medical examinations by providers who reported their findings about her injuries and diagnoses directly to MSU.

**ANSWER**:     **MSU Defendants neither admit nor deny the allegations in Paragraph 107 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

108.     When Dr. Poitra began work at NAI in October 2015, the disability accommodations she had been receiving through the Michigan State University Resource Center

for Persons with Disabilities ("RCPD") as a graduate student were revised and extended to her as an employee.

**ANSWER**:   **MSU Defendants admit the allegations in Paragraph 108 of Plaintiff's Complaint**.

109.   Per MSU policy, RCPD discussed Dr. Poitra's accommodations with Norder, as he was her supervisor.

**ANSWER**:   **MSU Defendants neither admit nor deny the allegations in Paragraph 109 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

110.   Norder and Dr. Poitra also met to discuss the accommodations in detail.

**ANSWER**:   **MSU Defendants neither admit nor deny the allegations in Paragraph 110 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

111.   During that conversation, Norder was not only made aware of Dr. Poitra's disabilities, but also the accident that led to the diagnosis.

**ANSWER**:   **MSU Defendants neither admit nor deny the allegations in Paragraph 111 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

112.   RCPD and MSU have strict rules in place to ensure confidentiality for employees and students registered with RCPD.

**ANSWER**:   **MSU Defendants admit that MSU adheres to legally required confidentiality protocols and otherwise deny the allegations in Paragraph 112 of Plaintiff's Complaint as untrue.**

*Alleged Harassment and Discrimination by Defendant John Norder*

113.     During Norder's tenure as director of NAI, Dr. Poitra was always his direct report and subordinate.

**ANSWER:   MSU Defendants deny the allegations in Paragraph 113 of Plaintiff's Complaint as untrue, except to admit that Plaintiff worked as Assistant Director of the NAI.**

114.     However, from the beginning of Dr. Poitra's time at NAI, Norder entirely ignored professional boundaries and repeatedly harassed Poitra by making unwelcome sexual and other inappropriate comments and sexual advances, harassing her on the basis of her sex, her disability, and her weight.

**ANSWER:    MSU Defendants neither admit nor deny the allegations in Paragraph 114 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

115.     Norder purposely exploited his role as Dr. Poitra's supervisor to create an environment of pervasive abuse; abuse that significantly negatively affected Dr. Poitra's mental health.

**ANSWER:    MSU Defendants neither admit nor deny the allegations in Paragraph 115 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

116.     Throughout his time supervising Dr. Poitra, Norder engaged in a longstanding pattern of problematic and extremely distressing behavior.

**ANSWER:    MSU Defendants neither admit nor deny the allegations in Paragraph 116 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

117.    Specifically, Norder made repeated, unwanted sexual comments to Dr. Poitra. Norder's comments to Dr. Poitra were a common occurrence throughout his tenure, and included all the following:

    a.   Repeated comments and text messages to Dr. Poitra about his sexual "kinks" and "fetishes" and sexual activity with his wife, specifically telling Dr. Poitra about his sexual experiences, his interest in bondage, his open relationship, purchasing condoms, his "lack of sex" between him and his wife, his feces, and his sexual encounters with others;

    b.   Repeated inquiries asking Dr. Poitra about her sexual history, specifically asking Dr. Poitra about when she first had sex, how many sexual partners she had and implying she had "fetishes;"

    c.   Comments and repeated text messages about bodily functions, including defecation and bowel movements, and texting Dr. Poitra while he was in the bathroom describing these subjects;

    d.   Stating that Dr. Poitra was "ugly" had "wrinkles" and negative and derogatory comments about her weight and size, such as asking if Dr. Poitra was over 300 pounds;

    e.   Inappropriate suggestions via text message that a colleague was sexually interested in Dr. Poitra;

    f.   Texting and sending photos to Dr. Poitra while he was in the shower;

    g.   Inappropriate comments about what Dr. Poitra was wearing;

h.   Questioning Dr. Poitra's ability to manage her finances, implying that her husband had to manage her finances for her;

i.   Text messages about a "proud pecker" t-shirt Norder owned and said he would wear to show Dr. Poitra;

j.   Asking Dr. Poitra why she didn't wear heels to the office and saying she was always in flats and it was "not attractive," and

k.   Suggesting that Dr. Poitra had a sexually transmitted infection from having sex with random men while she was out of the office performing field work.

**ANSWER:   MSU Defendants neither admit nor deny the allegations in Paragraph 117 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

118.   These instances of harassment and workplace misconduct were not welcome to Dr. Poitra.

**ANSWER**:   **MSU Defendants neither admit nor deny the allegations in Paragraph 118 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

119.   Dr. Poitra repeatedly tried to disengage from inappropriate conversations by meeting Norder's comments with silence or telling him that she did not want to talk about the subject.

**ANSWER:   MSU Defendants neither admit nor deny the allegations in Paragraph 119 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

-35-

120.    However, Dr. Poitra's position as Norder's direct report made it nearly impossible for her to change the tenor of their conversations.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 120 of Plaintiff's Complaint as untrue.**

121.    As her supervisor, Norder wielded a great amount of power over Dr. Poitra, and Dr. Poitra was deeply concerned about losing her job if she did not acquiesce to Norder's inappropriate questioning and comments.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 121 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

122.    On several occasions, Dr. Poitra even discussed this fear when speaking to her other colleagues.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 122 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

123.    In addition to Norder's persistent sexual harassment, Norder also routinely harassed and discriminated against Dr. Poitra on the basis of her disability, namely her PTSD diagnosis.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 123 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

124.    Norder was aware of Dr. Poitra's PTSD diagnosis.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 124 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

125.    Additionally, Norder knew Dr. Poitra's PTSD diagnosis was the result of a near-fatal car accident, and that Dr. Poitra had difficulty traveling because of her PTSD.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 125 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

126.    Despite this knowledge, Norder repeatedly engaged in intentional conduct meant to trigger Dr. Poitra's PTSD and cause her stress and anxiety.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 126 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

127.    Approximately six months into working together, Norder and Dr. Poitra travelled together to a professional event that required several hours of driving.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 127 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs, except to admit that Norder and Dr. Poitra's job duties included occasional travel and/or attendance at professional events.**

128.    During that trip, Norder intentionally drove recklessly, looked at his phone while driving, and swerved into other lanes on the highway while Dr. Poitra was in the passenger seat.

**ANSWER**: **MSU Defendants neither admit nor deny the allegations in Paragraph 128 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

129. On another occasion when Norder drove Dr. Poitra to a professional event in approximately 2017 or 2018, he again intentionally drove recklessly.

**ANSWER**: **MSU Defendants neither admit nor deny the allegations in Paragraph 129 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

130. On this occasion, Dr. Poitra desperately pleaded with him to stop swerving on the highway.

**ANSWER**: **MSU Defendants neither admit nor deny the allegations in Paragraph 130 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

131. Norder laughed at Dr. Poitra and ignored her request.

**ANSWER**: **MSU Defendants neither admit nor deny the allegations in Paragraph 131 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

132. On another occasion in April 2018, as Dr. Poitra was travelling to Alaska for work without Norder, Norder texted her a news story about a plane crashing, intending to bring her distress and trigger her PTSD.

**ANSWER**: **MSU Defendants neither admit nor deny the allegations in Paragraph 132 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

133.    While traveling to other professional events, Norder texted Dr. Poitra links to stories about boats sinking and cars crashing.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 133 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

134.    In addition to Norder's actions meant to trigger Dr. Poitra's PTSD, Norder also shared Dr. Poitra's diagnosis without her consent and in violation of university confidentiality rules.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 134 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

135.    Over the course of Dr. Poitra's employment, Norder revealed Dr. Poitra's PTSD diagnosis to several colleagues, calling her "damaged."

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 135 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

136.    Norder told these colleagues that Dr. Poitra needed medication to travel, specifically Xanax, and often told others she had a drug problem.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 136 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

137.    While Dr. Poitra and Norder worked in the same office, Norder routinely would sneak up behind Dr. Poitra.

**ANSWER**:    MSU Defendants neither admit nor deny the allegations in Paragraph 137 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.

138.    Dr. Poitra wouldn't know Norder was behind her until she saw his face on her computer screen.

**ANSWER**:    MSU Defendants neither admit nor deny the allegations in Paragraph 138 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.

139.    Due to her PTSD diagnosis, Dr. Poitra was extremely sensitive to surprises such as this.

**ANSWER**:    MSU Defendants neither admit nor deny the allegations in Paragraph 139 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.

140.    Dr. Poitra told Norder that he was scaring her and that she did not like this behavior.

**ANSWER**:    MSU Defendants neither admit nor deny the allegations in Paragraph 140 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.

141.    Dr. Poitra explicitly told Norder that he should not sneak up on her because of the negative impact it had on her, but Norder entirely ignored Dr. Poitra's request and continued the unwanted behavior.

**ANSWER**:    MSU Defendants neither admit nor deny the allegations in Paragraph 141 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.

142.     Throughout her time working for Norder, Dr. Poitra became increasingly concerned that Norder had cameras or microphones in the office to spy on his colleagues.

**ANSWER**:     **MSU Defendants neither admit nor deny the allegations in Paragraph 142 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

143.     Norder had previously shared with Dr. Poitra that he enjoyed voyeurism, and even texted Dr. Poitra about watching a live stream video of his wife attending a fitness class at MSU's pool without his wife's knowledge.

**ANSWER**:     **MSU Defendants neither admit nor deny the allegations in Paragraph 143 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

144.     Norder texted Dr. Poitra that he was "creepily watching" his wife and added, "[s]he's in the hot tub with a new friend. I'm practically in tears."

**ANSWER**:     **MSU Defendants neither admit nor deny the allegations in Paragraph 144 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

145.     Norder later encouraged Dr. Poitra to attend the same fitness class, so that he could watch them both.

**ANSWER**:     **MSU Defendants neither admit nor deny the allegations in Paragraph 145 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

146. Norder even went so far as to set up remote access to his office computer, including the ability to monitor his office computer from his home.

**ANSWER**: **MSU Defendants neither admit nor deny the allegations in Paragraph 146 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

147. In February 2019, Norder used this remote access to the computer when a female NAI employee was using his desk for the day.

**ANSWER**: **MSU Defendants neither admit nor deny the allegations in Paragraph 147 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

148. When Dr. Poitra asked Norder about it, he did not respond.

**ANSWER**: **MSU Defendants neither admit nor deny the allegations in Paragraph 148 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

149. Norder's countless inappropriate interactions with Dr. Poitra not only made her extremely uncomfortable, but also caused Poitra great distress and anxiety.

**ANSWER**: **MSU Defendants neither admit nor deny the allegations in Paragraph 149 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

150. Dr. Poitra dreaded going to work with Norder and tried to widen her professional network to try and secure a job elsewhere.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 150 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

151.    Due to the unique nature of their work at NAI, this was incredibly difficult for Dr. Poitra.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 151 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

152.    During her time working under Norder, Dr. Poitra applied for 34 jobs, just to try and get away from Norder.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 152 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

### *Alleged Office of Institutional Equity Investigation*

153.    On August 9, 2018, MSU's Office of Institution Equity ("OIE") received a third-party report that Dr. Poitra was subjected to several violations of school policy, including, but not limited to sexual misconduct and discrimination based on her disability.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 153 of Plaintiff's Complaint as untrue, except to admit that on or around August 19, 2018, MSU's OIE received a third-party report that Plaintiff was allegedly subjected to violations of MSU's Relationship Violence and Sexual Misconduct Policy ("RVSM Policy") and the Anti-Discrimination Policy ("ADP").**

154.     Several days later, Dr. Poitra spoke with OIE and reported that between 2016 and 2018 she had been repeatedly harassed by Norder.

**ANSWER**:     **MSU Defendants neither admit nor deny the allegations in Paragraph 154 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs, except to admit that OIE spoke with Dr. Poitra about Norder.**

155.     Based on these reports, OIE opened an investigation into Norder's conduct.

**ANSWER**:     **MSU Defendants admit the allegations in Paragraph 155 of Plaintiff's Complaint.**

156.     Upon information and belief, the applicable Title IX policy in place at the time Dr. Poitra filed her OIE complaint was the April 2018 RVSM Policy.

**ANSWER**:     **MSU Defendants admit the allegations in Paragraph 156 of Plaintiff's Complaint.**

157.     MSU implemented several different RVSM policies between the time Dr. Poitra first filed her complaint with MSU and the date her complaint was finally resolved.

**ANSWER:**     **MSU Defendants neither admit nor deny the allegations in Paragraph 157 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs, except to admit that the RVSM policy has been revised from time to time.**

158.     Upon information and belief, MSU's practice at the time of the events detailed in this complaint was to follow the RVSM policy that was in place at the time the complaint was filed.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 158 of Plaintiff's Complaint as untrue.**

159.    The April 2018 RVSM Policy reads, in relevant part:

> The University will use its best efforts to complete its investigations of relationship violence, stalking, or sexual misconduct within 60 calendar days, although this timeframe may be extended for good cause. The University will make its best efforts to complete the major steps of the investigation process within the following timeframes, although these timeframes may be modified or extended for good cause:

> INVESTIGATION STEP TIMEFRAME

| | |
|---|---|
| Contact claimant | Within 5 calendar days after receipt of report |
| Contact respondent | Within 5 calendar days after meeting with claimant |
| Provide preliminary report to parties | Within 25 calendar days after completing all relevant interviews and gathering all relevant evidence |
| Issue final report | Within 25 calendar days after receiving feedback from parties or completion of any additional investigation |

> Good cause for the extension of an investigation timeline may exist for a variety of factors, including the complexity of the circumstances of each allegation, the integrity and completeness of the investigation, to comply with a request by law enforcement, to accommodate the availability of witnesses, to account for University breaks or vacations, or to address other legitimate investigatory reasons.

> The University will maintain regular communication with the claimant and respondent about the progress of the investigation and its resolution. In the event the 60 day time frame is extended, both the claimant and the respondent will be notified of the delay and the reasons for the delay.

> April 2018 RVSM Policy at 38-39.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 159 of Plaintiff's Complaint and state that the applicable MSU RSVM Policy speaks for itself and otherwise deny as untrue that Plaintiff is entitled to relief.**

-45-

160.    The following RVSM Policy that was implemented, the February 2019 RVSM Policy, reads in relevant part:

> Parties can expect investigations to be completed within 60 days after OIE begins an investigation unless good cause exists to extend. In cases where a hearing is not held, parties can expect to receive a written decision within 90 days after OIE begins an investigation unless good cause exists to extend. In cases where a hearing is held, parties can expect to receive a written decision within 120 days after OIE begins an investigation unless good cause exists to extend. Good cause for extension may exist for a variety of factors, including the complexity of the circumstances of each allegation, the integrity and completeness of the investigation, to comply with a request by law enforcement, to accommodate the availability of witnesses, to account for University breaks or vacations, or to address other legitimate investigatory issues.

> February 2019 RVSM Policy, Appendix G at 2.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 160 of Plaintiff's Complaint and state that the applicable MSU RSVM Policy speaks for itself and otherwise deny as untrue that Plaintiff is entitled to relief.**

161.    On August 17, 2018, in response to OIE opening an investigation, Quentin Tyler, at the time the Associate Dean Director for Diversity, Equity, and Inclusion, emailed Norder to notify him he would need to work from home or from the MSU Museum.

**ANSWER**:    **MSU Defendants admit the allegations in Paragraph 161 of Plaintiff's Complaint.**

162.    Norder was further notified that he was not to enter the NAI offices and was not to have any contact with any NAI staff members during the investigation.

**ANSWER**:    **MSU Defendants admit the allegations in Paragraph 162 of Plaintiff's Complaint.**

163.    During this time, Dr. Poitra was directed to report to Tyler rather than Norder.

**ANSWER**:   **MSU Defendants admit the allegations in Paragraph 163 of Plaintiff's Complaint.**

164.   Upon information and belief, later that afternoon, Norder called Tyler and attempted to find out who had filed the report with OIE.

**ANSWER**:   **MSU Defendants neither admit nor deny the allegations in Paragraph 164 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

165.   Upon information and belief, Tyler told him that he could not provide any additional information, but that OIE would be in touch during the investigation.

**ANSWER**:   **MSU Defendants neither admit nor deny the allegations in Paragraph 165 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

166.   Upon information and belief, Tyler later received a message from Norder.

**ANSWER**:   **MSU Defendants neither admit nor deny the allegations in Paragraph 166 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

167.   Upon information and belief, Norder told Tyler that he knew the complaint came from Dr. Poitra.

**ANSWER**:   **MSU Defendants neither admit nor deny the allegations in Paragraph 167 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

168.   After learning about the investigation and being directed to have no contact, Norder ignored the requirement and contacted Dr. Poitra by email, phone call, and text message.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 168 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

169.    Norder even appeared in person at Dr. Poitra's office.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 169 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

170.    In his texts to Dr. Poitra, Norder specifically referenced the email he received earlier that day from Tyler telling Norder not to contact anyone at NAI.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 170 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

171.    Tyler gave Norder permission to go into the NAI office the weekend of August 18 and 19, 2018 to retrieve any personal belongings.

**ANSWER**:    **MSU Defendants admit the allegations in Paragraph 171 of Plaintiff's Complaint.**

172.    Tyler allowed Norder to go into the office unsupervised during non-business hours, knowing Dr. Poitra had concerns about him placing secret recording equipment in the office, thus allowing Norder to abuse Dr. Poitra further.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 172 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

173.    When Dr. Poitra returned to the office the following Monday, she found that tables, desks, chairs, and trash cans throughout the NAI offices had been moved by Norder.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 173 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

174.    Poitra informed Tyler of Norder's actions and requested assistance putting the office back together but did not receive any assistance in moving any of the large furniture back to where it belonged.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 174 of Plaintiff's Complaint as untrue.**

175.    Dr. Poitra alone was made to fix all the damage Norder had caused.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 175 of Plaintiff's Complaint as untrue.**

176.    Upon information and belief, in a face-to-face meeting on August 20, 2018, Tyler again reminded Norder to not contact anyone in NAI.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 176 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

177.    On August 21, 2018, Tyler sent Norder another email telling him not to contact anyone at NAI via text, email, or any other form of communication.

**ANSWER**:    **MSU Defendants admit the allegations in Paragraph 177 of Plaintiff's Complaint.**

178.    On January 2, 2019, MSU's Office of Institutional Equity issued an initial preliminary investigative report written by Nolan.

**ANSWER**:    **MSU Defendants admit the allegations in Paragraph 178 of Plaintiff's Complaint.**

179.    The report detailed Dr. Poitra's allegations against Norder and included witness interviews, and numerous exhibits such as text messages, emails, and pictures.

**ANSWER**:    **MSU Defendants admit the allegations in Paragraph 179 of Plaintiff's Complaint.**

180.    The preliminary report was not complete and was missing some of the documentation Dr. Poitra had submitted to Nolan and OIE and interviews with some of the witnesses she had named, including a witness with direct knowledge of the abuse.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 180 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

181.    The preliminary report was also factually inaccurate on basic details and witnesses.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 181 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs except to deny that the preliminary report was factually inaccurate as it related to material facts.**

182.    During the investigation, MSU conducted a search of Norder's MSU issued computer and found a large cache of pornographic videos and images.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 182 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief**

as to the truth of those allegations and, therefore, leave Plaintiff to her proofs, except to admit that a review of Defendant Norder's MSU computer revealed inappropriate images and videos of a sexual nature.

183.    Upon information and belief, some of these videos and images included Norder himself.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 183 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

184.    In spring 2019, after learning about the pornographic material on Norder's computer, N. Suzanne Lang, Associate Dean for Faculty and Administrative Affairs, and MSU police officers came to NAI's office to search Norder's former office for filming equipment and hidden surveillance equipment.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 184 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

185.    Lang was concerned that the images of Norder might have been made at NAI offices.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 185 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

186.    Dr. Poitra was so distressed that she also had a colleague, Dr. Jay Kennedy, come to the NAI office after hours to search for hidden cameras in the office.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 186 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

187.    After Lang's search and learning about the vast amount of pornography on Norder's MSU desktop and laptop—which included videos of Norder and his wife, also an MSU employee—Dr. Poitra no longer felt comfortable sitting at her abuser's former desk.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 187 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

188.    Dr. Poitra approached Tyler about changing out the desk.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 188 of Plaintiff's Complaint as untrue.**

189.    Tyler refused to help and told Dr. Poitra she would have to figure out a solution on her own.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 189 of Plaintiff's Complaint as untrue.**

190.    Dr. Poitra eventually found a home for the desk in a different department; however, the desk still had many of Norder's belongings in it.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 190 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

191.    Prior to moving the desk, Dr. Poitra informed Tyler that some of Norder's property was still in the desk.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 191 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

192.    Tyler told Dr. Poitra to box up Norder's personal belongings.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 192 of Plaintiff's Complaint as untrue.**

193.    Tyler provided no other instructions or offers of assistance.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 193 of Plaintiff's Complaint as untrue.**

194.    When Dr. Poitra was forced to clean out the desk of her long-time abuser, she found tubes of anal lubes, creams, and ointments, causing her additional trauma.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 194 of Plaintiff's Complaint as untrue.**

195.    As these events unfolded, Dr. Poitra's OIE complaint continued to sit dormant, even though the preliminary investigative report had been completed in January 2019.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 195 of Plaintiff's Complaint as untrue.**

196.    On July 8, 2019, Dr. Poitra received an email from OIE informing her that her complaint was eligible for a hearing.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 196 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs, except to admit that OIE informed Plaintiff that her complaint was eligible for hearing.**

197.    No information was provided as to why the case had not moved forward during that time.

**ANSWER:    MSU Defendants deny the allegations in Paragraph 197 of Plaintiff's Complaint as untrue.**

198.    More than a month later, on August 20, 2019, Dr. Poitra received another email notifying her that a prehearing would be held on September 9, 2019.

**ANSWER:    MSU Defendants neither admit nor deny the allegations in Paragraph 198 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs, except to admit that a pre-hearing was scheduled for September 9, 2019.**

199.    For unknown reasons, on September 6, 2019, Katie Bylenga, the assigned hearing officer, notified Dr. Poitra that Bylenga had to recuse herself from the hearing due to something she had read in the investigative file.

**ANSWER:    MSU Defendants admit that on September 6, 2019 Katie Bylenga, the assigned hearing officer, notified Dr. Poitra that Bylenga had to recuse herself from the hearing and otherwise deny the allegations in Paragraph 199 of Plaintiff's Complaint as untrue.**

200.    The matter was then assigned to an external contract hearing officer, Megan Norris.

**ANSWER:    MSU Defendants admit the allegations in Paragraph 200 of Plaintiff's Complaint.**

201.    MSU never explained to Dr. Poitra why Bylenga recused herself, or why the conflict was not addressed in the more than eight months since the preliminary report was produced, or even in the two months since the matter had been assigned to the hearing office.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 201 of Plaintiff's Complaint as untrue.**

202.    On September 24, 2018, MSU placed Norder on paid administrative leave.

**ANSWER**:    **MSU Defendants admit the allegations in Paragraph 202 of Plaintiff's Complaint.**

203.    Upon information and belief, Norder was informed that all work he was doing for NAI would be put on hold and he was not to enter the NAI offices without prior approval from Tyler.

**ANSWER**:    **MSU Defendants admit the allegations in Paragraph 203 of Plaintiff's Complaint.**

204.    Despite no longer working with NAI, Norder continued to insist he needed to attend NAI-related conferences, events at which he knew Dr. Poitra would be in attendance.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 204 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

205.    On November 6, 2019, Norder again violated the no contact directive and tagged Dr. Poitra in an article posted online.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 205 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

206.    The next day, because Dr. Poitra no longer trusted MSU to protect her from Norder, she filed a petition for a Personal Protection Order ("PPO") in the 30th Judicial Circuit Court in Ingham County, Michigan.

-55-

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 206 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs except to admit that Plaintiff filed a petition for a PPO in the 30th Judicial Circuit Court in Ingham County, Michigan.**

207.    After an *ex parte* hearing on November 7, 2019, the court issued an order prohibiting Norder from contacting Dr. Poitra in any way.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 207 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs except to admit that an order was issued prohibiting Norder from contacting Dr. Poitra.**

208.    Norder, through his attorney, filed a motion to terminate the PPO.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 208 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

209.    After a hearing, Norder's motion to terminate the PPO was denied.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 209 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

210.    The PPO has since been extended multiple times and remains in effect at the time of this filing.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 210 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

211.    On November 18, 2019, Dr. Poitra received an email from Defendant Tyler which read:

> Dear Dr. Poitra:
>
> As you know, there are now multiple OIE complaints and investigations regarding you and Dr. Norder's interactions. Connected to those complaints, there was a no contact directive issued. Electronic contact is included in the directive.
>
> I write to remind you that the no-contact directive (including no electronic contact) is still in effect. A similar no-contact directive has been issued to Norder, based on complaints to OIE.
>
> I understand that there are a number of events coming up where you are both intending to be in attendance. I would like to schedule a meeting with you to discuss behavioral guidelines around these events that will minimize the chances of contact. Shedra Rakestraw will be reaching out to find a time this week.
>
> Thank you
> Quentin R. Tyler PhD

**ANSWER:    MSU Defendants admit Defendant Tyler sent to Plaintiff the electronic communication quoted in Paragraph 211 of Plaintiff's Complaint.**

212    Dr. Poitra was shocked to learn that there had been a no-contact directive issued against her, as she had done nothing to try to contact Defendant Norder and in fact had petitioned for and obtained a court order to prevent him from contacting her.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 212 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

-57-

213.    The tone of the email caused Dr. Poitra severe anxiety and distress as it seemed to indicate that she was being accused of wrongdoing and suggesting that she needed "behavioral guidelines" in place to attend workplace events.

**ANSWER:    MSU Defendants deny as untrue that the November 18, 2019 electronic mail from Defendant Tyler accused Plaintiff of wrongdoing.   Answering further, MSU Defendants neither admit nor deny the remaining allegations in Paragraph 213 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

214.    That same day, Dr. Poitra's attorney contacted both Defendant Kent and Brian Quinn, MSU's General Counsel, to address the following:

  a.   Whether MSU had put a no-contact directive in place against Dr. Poitra;

  b.   Whether any no-contact directive had ever actually been put in place against Defendant Norder, as the email seemed to indicate that it had not;

  c.   That Dr. Poitra's attorney was advising her not to attend the meeting with Defendant Tyler, given his accusatory and inappropriate tone and suggestions that Dr. Poitra had engaged in some type of wrongdoing;

  d.   To clarify whether there were any additional investigations going on of which Dr. Poitra had not been notified.

**ANSWER:    MSU Defendants deny that Kent is a defendant in this matter, as the Court has terminated him from the case and otherwise neither admit nor deny the allegations in Paragraph 214 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to**

her proofs, except to admit that Plaintiff's counsel e-mailed Kent and Brian Quinn on November 18, 2019, which speaks for itself.

215.    Quinn did not respond to Dr. Poitra's attorney's email.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 215 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs except to admit that Quinn did not email Dr. Poitra's attorney concerning her November 18, 2019 email.**

216.    Defendant Kent responded to the email with the following message:

> Liz,
>
> You or your client may contact Mr. Nolan to obtain information regarding the status of any investigations. Your client may speak with her supervisor or a designee, in this case Dr. Tyler, if she has concerns regarding a no-contact directive put in place by her department. The University will not communicate through an employee's attorney for employment-related matters.
>
> Regards,
>
> Rob Kent

**ANSWER**:    **MSU Defendants deny that Kent is a defendant in this matter, as the Court has terminated him from the case, and otherwise admit the allegations in Paragraph 216 of Plaintiff's Complaint.**

217.    Neither Dr. Poitra nor her attorney were ever provided any explanation as to why the University was unwilling to discuss these concerns with Dr. Poitra's attorney.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 217 of Plaintiff's Complaint as untrue.**

218.    External investigator Joshua Nolan of INCompliance Consulting responded to Dr. Poitra that there had been a total of four reports made involving the parties – one report of discrimination and harassment by Dr. Poitra against Norder, one report of discrimination and harassment by Norder against Dr. Poitra, one report of retaliation by Dr. Poitra against Norder, and one report of retaliation by Norder against Dr. Poitra.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 218 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs except to admit that external investigator Joshua Nolan of INCompliance Consulting emailed Dr. Poitra on November 20, 2019 concerning reports, an email which speaks for itself.**

219.    Nolan's email stated that CANR had initiated a mutual no-contact directive between Dr. Poitra and Norder based on Norder's report of discrimination and harassment by Dr. Poitra.

**ANSWER**:    **MSU Defendants admit the allegations in Paragraph 219 of Plaintiff's Complaint that CANR had initiated a mutual no-contact directive between Dr. Poitra and Norder and deny the remainder of the allegations as untrue.**

220.    Upon information and belief, CANR did not make any assessment as to the credibility of Norder's report against Dr. Poitra, nor consider whether his report against her was retaliatory, prior to initiating this order against her.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 220 of Plaintiff's Complaint as untrue.**

221.    Nolan's email indicated that there had not yet been any investigation initiated regarding any of the additional reports and that he was "inclined" to close them.

**ANSWER**:   MSU Defendants deny the allegations in Paragraph 221 of Plaintiff's Complaint as untrue, except to admit that Nolan's email indicated he was "inclined to close" "new reports" based on information available to OIE and "based on requests" by both Plaintiff and Norder "not to have these incidents proceed through a formal investigation" and as otherwise set forth in the November 20, 2019 email which speaks for itself.

222.   Dr. Poitra was not comfortable having a conversation about her safety with Defendant Tyler, who, by the tone of his November 18, 2019, email, clearly felt that Dr. Poitra had engaged in some wrongdoing by reporting Defendant Norder and needed some type of "behavior guidelines."

**ANSWER**:   MSU Defendants neither admit nor deny the allegations in Paragraph 222 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.

223.   Dr. Poitra was left with no recourse as to the no-contact directive that had apparently been put in place against her which, upon information and belief, had no reasonable basis to be initiated.

**ANSWER**:   MSU Defendants deny the allegations in Paragraph 223 of Plaintiff's Complaint as untrue.

224.   On January 20, 2020, more than a year after the initial preliminary investigative report was issued, MSU's Office for Civil Rights and Title IX Education and Compliance facilitated a hearing.

**ANSWER**:   MSU Defendants admit the allegations in Paragraph 224 of Plaintiff's Complaint.

225.    The hearing itself caused additional trauma for Dr. Poitra and created a hostile environment, as Norder's attorney yelled at Dr. Poitra and argued with her about whether Norder's discussion of his genitals, including his anus, was sexual in nature during his cross examination of her.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 225 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

226.    The RVSM Policy's definition of "sexual harassment" included the following: "Recurring unwelcome comments or questions about an individual's sexual prowess, sexual deficiencies, sexual behavior, or genitalia."

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 226 of Plaintiff's Complaint and state that the applicable MSU RSVM Policy speaks for itself.**

227.    Despite the RVSM Policy language being clear on this point, the hearing officer did not stop Norder's attorney from continuing in his argument with and harassment of Dr. Poitra on the point of whether comments about Norder's anus and feces were sexual.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 227 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

228.    This line of questioning was not relevant to a determination as to whether Norder's actions were a violation of MSU Policy, as Dr. Poitra's interpretation as to whether something was sexual in nature was not determinative, per the RVSM Policy: "A person's subjective belief alone that behavior is offensive does not necessarily mean the conduct rises to the level of a policy

violation. The behavior must also be objectively offensive to meet the definition of prohibited sexual harassment."

**ANSWER**:   **MSU Defendants deny the allegations in Paragraph 228 of Plaintiff's Complaint as untrue.**

229.   The fact that the hearing officer allowed this irrelevant and abusive line of questioning indicated that MSU may not have provided her with sufficient or appropriate training as a Title IX decisionmaker, in violation of federal regulations.

**ANSWER**:   **MSU Defendants deny the allegations in Paragraph 229 of Plaintiff's Complaint as untrue.**

230.   Dr. Poitra was not given any information as to how long it would take to receive a decision after the hearing.

**ANSWER:**   **MSU Defendants deny the allegations in Paragraph 230 of Plaintiff's Complaint as untrue.**

231.   Lang served as Dr. Poitra's support person during the hearing.

**ANSWER**:   **MSU Defendants admit the allegations in Paragraph 231 of Plaintiff's Complaint.**

232.   After the hearing, Dr. Poitra sent an email to Lang thanking her for her support.

**ANSWER**:   **MSU Defendants neither admit nor deny the allegations in Paragraph 232 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

233.   Lang responded to Dr. Poitra with the following message: Hi Christie,

I was happy to be there for you. I know this has been a long and difficult path. I believe you have done a marvelous job of maintaining a

-63-

successful professional attitude during a deeply dysfunctional and
troubling experience. I sincerely regret that the system has failed to
protect you. My hope is that the findings will agree with the judgement
of your colleagues and friends so that you may move forward to heal.
You are a valuable person who significantly contributes to the missions
of CANR and MSU.

I wish you every success and happiness.

Best regards,
Suzanne

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 233 of
Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief
as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

234.    On February 14, 2020, Dr. Poitra had still not received a decision from OIE or the
hearing officer.

**ANSWER:    MSU Defendants admit the allegations in Paragraph 234 of Plaintiff's
Complaint.**

235.    On that date, through her attorney, Dr. Poitra made a statement at MSU's Board of
Trustees meeting.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 235 of
Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief
as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

236.    Dr. Poitra's attorney described the investigative report's findings, noting the
pornographic images that were found on Norder's MSU issued computer, and asked the Board of
Trustees to help her with getting the OIE investigation resolved.

**ANSWER**:     MSU Defendants neither admit nor deny the allegations in Paragraph 236 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.

237.    Dr. Poitra's case had been open for 544 days without a resolution at that point.

**ANSWER**:     MSU Defendants admit the allegations in Paragraph 237 of Plaintiff's Complaint.

238.    Dr. Poitra's attorney also notified the Board of Trustees that Dr. Poitra had had to obtain a PPO to protect herself as Norder had continued harassing and stalking her throughout the course of the OIE investigation.

**ANSWER**:     MSU Defendants neither admit nor deny the allegations in Paragraph 238 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.

239.    On February 17, 2020, three days after Dr. Poitra's statement to the Board of Trustees, Norris issued a finding that Norder had violated MSU's Relationship Violence and Sexual Misconduct ("RVSM") Policy.

**ANSWER**:     MSU Defendants neither admit nor deny the allegations in Paragraph 239 of Plaintiff's Complaint, except to admit that the Resolution Officer issued her decision on or about February 17, 2020, which speaks for itself.

240.    Confusingly, despite finding that Norder had made multiple inappropriate comments about Dr. Poitra's weight and disability, Norris found that Norder had not violated MSU's Anti-Discrimination Policy.

**ANSWER**:   **MSU Defendants neither admit nor deny the allegations in Paragraph 240 of Plaintiff's Complaint and state that the February 17, 2020 MSU Resolution Office's decision speaks for itself.**

241.    At that time, Dr. Poitra was not notified how Norder would be disciplined as to the RVSM Policy violations.

**ANSWER**:   **MSU Defendants admit the allegations in Paragraph 241 of Plaintiff's Complaint.**

242.    On the date Norris' decision was issued, Dr. Poitra's case had been open for 547 days without a resolution, well beyond the timelines outlined in the relevant RVSM Policies, which provided timelines of between 60 and 120 days for the resolution of complaints.

**ANSWER**:   **MSU Defendants admit that Dr. Poitra's case had been opened for 547 days and otherwise deny the allegations in Paragraph 242 of Plaintiff's Complaint as untrue.**

243.    At no time was Dr. Poitra provided with notice as to what good cause could possibly exist for her complaint to be open for 427 days beyond the longest possibly applicable timeline.

**ANSWER**:   **MSU Defendants deny the allegations in Paragraph 243 of Plaintiff's Complaint as untrue.**

244.    On April 22, 2020, more than two months after Norris' finding was issued, MSU notified Dr. Poitra that minimal disciplinary actions would be taken against Norder.

**ANSWER**:   **MSU Defendants admit that on April 22, 2020, Dr. Poitra received a notification of disciplinary actions to be imposed upon Norder which speaks for itself and otherwise deny the allegations in Paragraph 244 of Plaintiff's Complaint as untrue.**

245.    Norder was suspended without pay for four weeks.

**ANSWER**:   **MSU Defendants admit the allegations in Paragraph 245 of Plaintiff's Complaint.**

246.    Norder's suspension was to be served in two week increments in May and August, designed specifically so that it would not interfere with any of his ongoing work, and even had a caveat to allow him to attend a previously scheduled event during one of the weeks.

**ANSWER**:   **MSU Defendants admit the allegations in Paragraph 246 of Plaintiff's Complaint.**

247.    Norder became ineligible to hold an administrative position at MSU for five years.

**ANSWER**:   **MSU Defendants admit the allegations in Paragraph 247 of Plaintiff's Complaint.**

248.    Norder was ordered to have no contact with Dr. Poitra and was required to attend a training offered by MSU regarding their Relationship Violence and Sexual Misconduct Policy.

**ANSWER**:   **MSU Defendants admit the allegations in Paragraph 248 of Plaintiff's Complaint.**

249.    Further, the letter referenced Norder's one and a half years of paid leave during the investigation as "discipline."

**ANSWER**:   **MSU Defendants deny the allegations in Paragraph 249 of Plaintiff's Complaint as untrue.**

250.    MSU took no other action against Norder despite his years of terrorizing Dr. Poitra.

**ANSWER**:   **MSU Defendants deny the allegations in Paragraph 250 of Plaintiff's Complaint as untrue.**

251.    Norder continues to be employed by MSU as an Associate Professor of Anthropology and teaches undergraduate classes and is still an active member of MSU's campus community as of the date of filing.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 251 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs, except to admit that Defendant Norder is currently an Associate Professor of Anthropology.**

### *Alleged Unequal Pay, Resources, and Access at NAI*

252.    More than one year after Norder was removed from his position as director of NAI, Dr. Poitra was formally appointed Interim Director in September 2019.

**ANSWER**:    **MSU Defendants admit the allegations in Paragraph 252 of Plaintiff's Complaint.**

253.    Dr. Poitra was told that MSU would do a national search once the OIE investigation was over.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 253 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

254.    Dr. Poitra was told that the interim role was not intended to last longer than a few months.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 254 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

255.    In the time between Norder's removal in 2018 and Dr. Poitra's formal appointment as Interim Director, no one else was interviewed or appointed to the role.

**ANSWER:    MSU Defendants neither admit nor deny the allegations in Paragraph 255 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

256.    MSU made no attempt during that time to fill the vacancy, making Dr. Poitra the *de facto* director during that time.

**ANSWER:    MSU Defendants deny the allegations in Paragraph 256 of Plaintiff's Complaint as untrue.**

257.    Dr. Poitra completed not only her own obligations as Assistant Director, but also took on all the responsibilities of the Director position without the title and without any increase in pay for an entire year.

**ANSWER:    MSU Defendants neither admit nor deny the allegations in Paragraph 257 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

258.    Despite the so-called "promotion" to Interim Director in 2019, Dr. Poitra did not receive a new contract or any pay increase for the added responsibilities until six months later.

**ANSWER:    MSU Defendants neither admit nor deny the allegations in Paragraph 258 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs, except to state that Dr. Poitra's Interim Director contract speaks for itself.**

259.    Although Dr. Poitra was told at the time of her appointment that she would receive a pay increase, Dr. Poitra had to follow up with her superiors countless times before her concerns were addressed.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 259 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

260.    When Dr. Poitra finally did receive a new contract, she found that she was being paid approximately $30,000 less than the previous director, Norder.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 260 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

261.    Additionally, Norder had been given a start-up fund of approximately $20,000.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 261 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

262.    Dr. Poitra did not receive any money for a start-up fund.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 262 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

263.    Dr. Poitra was surprised and distressed by the inequitable offer, considering she was objectively more qualified than her male predecessor.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 263 of Plaintiff's Complaint as untrue.**

264.     At the time of Norder's appointment to Director of NAI, he had no experience working directly with Native communities and had a far shorter *curriculum vitae* than Dr. Poitra.

**ANSWER**:     **MSU Defendants neither admit nor deny the allegations in Paragraph 264 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

265.     When Dr. Poitra asked Lang about the stark differences between her contract and her predecessor's, she was told there was no room to negotiate.

**ANSWER**:     **MSU Defendants neither admit nor deny the allegations in Paragraph 265 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

266.     Given no other options, Dr. Poitra felt she had to accept the unfair offer, so she signed the contract on February 28, 2019.

**ANSWER**:     **MSU Defendants deny the allegations in Paragraph 266 of Plaintiff's Complaint as untrue.**

267.     The contract included language stating that Hendrick, the Dean of CANR, intended to initiate a search for a permanent director within the next six to eight months.

**ANSWER**:     **MSU Defendants neither admit nor deny the allegations in Paragraph 267 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs other than to state that the contract speaks for itself.**

268.     The contract encouraged Dr. Poitra to apply when the position opened.

**ANSWER**:     **MSU Defendants neither admit nor deny the allegations in Paragraph 268 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief**

**as to the truth of those allegations and, therefore, leave Plaintiff to her proofs, other than to**

**state that the contract speaks for itself.**

269.    Nearly three years have passed since Dr. Poitra signed the contract, and no such

search has ever occurred, nor has MSU made any attempt to undertake such a search.

**ANSWER:    MSU Defendants neither admit nor deny the allegations in Paragraph 269 of**

**Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief**

**as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

270.    Since 1982, when NAI was first formed, all prior directors have had additional

staff to assist them in carrying out the mission of NAI.

**ANSWER:    MSU Defendants neither admit nor deny the allegations in Paragraph 270 of**

**Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief**

**as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

271.    All previous directors have had two full time employees and one half-time

administrative staff.

**ANSWER:    MSU Defendants neither admit nor deny the allegations in Paragraph 271 of**

**Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief**

**as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

272.    All previous directors were male, and, upon information and belief, none had a

disability.

**ANSWER:    MSU Defendants neither admit nor deny the allegations in Paragraph 272 of**

**Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief**

**as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

273.    Upon information and belief, none of the former directors filed a complaint of discrimination against a superior at MSU.

**ANSWER:    MSU Defendants neither admit nor deny the allegations in Paragraph 273 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

274.    Since Dr. Poitra took over the role, she has only had access to one part-time administrative support staff.

**ANSWER:    MSU Defendants deny the allegations in Paragraph 274 of Plaintiff's Complaint as untrue.**

275.    There have been no full-time staff members hired to assist Dr. Poitra.

**ANSWER:    MSU Defendants deny the allegations in Paragraph 275 of Plaintiff's Complaint as untrue.**

276.    The one administrative member of her staff is assigned to work one quarter of what a full-time employee would work, meaning even the part-time staff member on Dr. Poitra's team is assigned to work fewer hours than what all previous directors have enjoyed.

**ANSWER:    MSU Defendants neither admit nor deny the allegations in Paragraph 276 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

277.    In 2019, as Dr. Poitra was effectively doing the work of three full-time employees, she approached Tyler to discuss hiring additional staff to assist her.

**ANSWER:    MSU Defendants deny the allegations in Paragraph 277 of Plaintiff's Complaint as untrue.**

278.    Tyler spoke with Hendrick, who decided he preferred to wait until the OIE investigation was completed before hiring additional staff.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 279 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

279.    In total, the OIE investigation took 547 days to resolve.

**ANSWER**:    **MSU Defendants admit the allegations in Paragraph 279 of Plaintiff's Complaint.**

280.    It was through no fault of Dr. Poitra that the investigation took so long.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 280 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

281.    In fiscal years 2019 and 2020, NAI's budget was significantly reduced.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 281 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

282.    This reduction ensured that Dr. Poitra would be unable to hire any staff in the near future.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 282 of Plaintiff's Complaint as untrue.**

283.    From her appointment in 2019 to March 2020, Dr. Poitra was also excluded from a weekly Chairs and Directors meeting that all other unit leaders were invited to attend.

**ANSWER**:   **MSU Defendants deny the allegations in Paragraph 283 of Plaintiff's Complaint as untrue.**

284.   Dr. Poitra's male predecessors were not excluded from these meetings, which were College-level research and leadership meetings that all other institute and center directors were invited to.

**ANSWER**:   **MSU Defendants neither admit nor deny the allegations in Paragraph 284 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

285.   In March 2020, when the MSU campus went remote due to the Covid-19 pandemic, Dr. Poitra approached Tyler to ask why she was being excluded from the meetings, which prevented her from receiving critical information about sudden policy shifts due to the pandemic.

**ANSWER**:   **MSU Defendants neither admit nor deny the allegations in Paragraph 285 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs other than to admit that in March of 2020 the MSU campus went remote due to the Covid-19 pandemic.**

286.   Tyler told Dr. Poitra he would speak with Hendrick about her request and get back to her.

**ANSWER**:   **MSU Defendants neither admit nor deny the allegations in Paragraph 286 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

287.   In April 2020, Dr. Poitra was finally included in one of the standing meetings.

**ANSWER**:   **MSU Defendants neither admit nor deny the allegations in Paragraph 287 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

288.    Dr. Poitra was still excluded from the research meetings hosted by the associate dean for research.

**ANSWER**:   **MSU Defendants deny the allegations in Paragraph 288 of Plaintiff's Complaint as untrue.**

289.    In early 2020, Dr. Poitra again approached Tyler about the severe staff shortage in NAI.

**ANSWER**:   **MSU Defendants neither admit nor deny the allegations in Paragraph 289 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

290.    Dr. Poitra asked for additional funding to hire just one full-time specialist, even though her male predecessors had at least two full-time specialists.

**ANSWER**:   **MSU Defendants neither admit nor deny the allegations in Paragraph 290 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

291.    Dr. Poitra's request was denied without explanation.

**ANSWER**:   **MSU Defendants deny the allegations in Paragraph 291 of Plaintiff's Complaint as untrue.**

292.    Tyler told Dr. Poitra he wondered if NAI even belonged within the College of Agriculture.

**ANSWER**:   **MSU Defendants deny the allegations in Paragraph 292 of Plaintiff's Complaint as untrue.**

293.    Tyler threatened that if Dr. Poitra continued to ask for support, CANR would consider restructuring or getting rid of NAI.

**ANSWER**:   **MSU Defendants deny the allegations in Paragraph 293 of Plaintiff's Complaint as untrue.**

294.    It was clear to Dr. Poitra at this point that if she continued to ask for the support her department needed, NAI would likely be moved to a different, less prestigious department within MSU, and Dr. Poitra would be removed as director since she was still labeled as "interim;" or, worse, NAI would be dissolved entirely.

**ANSWER**:   **MSU Defendants neither admit nor deny the allegations in Paragraph 294 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

295.    Despite being set up by MSU to fail in her position as Interim Director, Dr. Poitra continued to do impactful work with NAI.

**ANSWER**:   **MSU Defendants deny the allegations in Paragraph 295 of Plaintiff's Complaint as untrue.**

296.    During her first two years as Interim Director, Dr. Poitra brought in over a million dollars through federal grants, published several articles, received awards, put on an array of programming, developed new relationships with Indigenous communities, and elevated the image of NAI across MSU's campus and nationally.

**ANSWER:    MSU Defendants neither admit nor deny the allegations in Paragraph 296 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

297.    During her first two years as Interim Director, Dr. Poitra brought in over a million dollars through federal grants, published several articles, received awards, put on an array of programming, developed new relationships with Indigenous communities, and elevated the image of NAI across MSU's campus and nationally.

**ANSWER:    MSU Defendants neither admit nor deny the allegations in Paragraph 297 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

298.    Hendrick even went so far as to praise NAI's work in his speech at the Spring 2021 commencement ceremony.

**ANSWER:    MSU Defendants neither admit nor deny the allegations in Paragraph 298 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

299.    In May 2021, after almost two years of being interim director of NAI, Dr. Poitra met with Tyler to discuss her desire to be appointed as full director.

**ANSWER:    MSU Defendants neither admit nor deny the allegations in Paragraph 299 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

300.    Dr. Poitra noted all the many accomplishments she had achieved, even without the assistance of any employees.

**ANSWER**:    MSU Defendants neither admit nor deny the allegations in Paragraph 300 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.

301.    Following a conversation with Hendrick, Tyler told Dr. Poitra that they would not change her title without first doing a national search to fill the position.

**ANSWER**:    MSU Defendants admit that Defendant Tyler informed Plaintiff that there would be an "open search" conducted to fill the role of Director of NAI.  To the extent any further response is required, MSU Defendants neither admit nor deny the remaining allegations in Paragraph 301 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.

302.    Norder, the previous director of NAI was appointed without a national search and had far less experience than Dr. Poitra at his time of hiring.

**ANSWER**:    MSU Defendants neither admit nor deny the allegations in Paragraph 302 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.

303.    Further, at this point, Tyler had begun a new position as Director of MSU Extension a mere three weeks earlier.

**ANSWER**:    MSU Defendants admit that Defendant Tyler became the Director of MSU Extension on June 1, 2021.  Answering further, MSU Defendants neither admit nor deny the remaining allegations in Paragraph 303 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.

304.    The Director of MSU Extension oversees numerous offices around the state and is a huge arm of the university.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 304 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

305.    Tyler had been appointed to his new post without a national search.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 305 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

306.    To appoint someone as Director of MSU Extension without experience directing it, or something like it, and without a national search, was unprecedented.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 306 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

307.    At this time, Tyler also told Dr. Poitra that she had not done enough to earn the title of Director.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 307 of Plaintiff's Complaint as untrue.**

308.    During this same meeting, Tyler again warned Dr. Poitra that NAI did not fit into CANR, and told her that once her contract was up, her unit might be restructured or eliminated.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 308 of Plaintiff's Complaint as untrue.**

309.    Dr. Poitra understood this to be a threat that if she continued to ask for equitable treatment, the future of her unit would be in serious jeopardy.

**ANSWER:    MSU Defendants neither admit nor deny the allegations in Paragraph 309 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

310.    Should NAI be moved to MSU Extension as was threatened by Dr. Poitra's superiors, its mission would be reworked and greatly constrained.

**ANSWER:    MSU Defendants deny the allegations in Paragraph 310 of Plaintiff's Complaint as untrue.**

311.    While CANR is an academic unit, focused on research, writing, and outreach, MSU Extension focuses solely on outreach.

**ANSWER:    MSU Defendants neither admit nor deny the allegations in Paragraph 311 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

312     If NAI were moved to MSU Extension, Dr. Poitra would not be allowed to continue many of the scholarly activities that she has spent years working on.

**ANSWER:    MSU Defendants neither admit nor deny the allegations in Paragraph 312 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

313.    Further, Dr. Poitra's reporting line would be changed, and NAI would have far less connection to the academic side of MSU.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 313 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

314.    Overall, if NAI were to be moved to MSU Extension, the department would have both far less academic prestige and less scope.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 314 of Plaintiff's Complaint as untrue.**

315.    On June 9, 2021, Emily Sorroche, an MSU employee working as a direct report to Tyler, contacted Dr. Poitra and told her that CANR would be pulling their support from all NAI projects unless Dr. Poitra could hire someone to assist her.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 315 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

316.    Dr. Poitra was baffled by the sudden change in staffing requirements, after she had been pushing for support for years, and asked for an explanation.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 316 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

317.    MSU never provided Dr. Poitra with any explanation.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 316 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

318.    On June 10, 2021, Dr. Poitra learned that MSU had appointed a spousal hire to work at NAI, Teresa Tongbin.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 318 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

319.    Tongbin's degrees and expertise are in transportation engineering.

**ANSWER**:    **MSU Defendants admit the allegations in Paragraph 319 of Plaintiff's Complaint.**

320.    Tongbin is not an expert in Native studies, has no prior experience working with Native people or tribes, has not written or produced any research on the subject, and is not Native herself.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 320 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

321.    Despite Tongbin's lack of experience in relation to the work at NAI, Tyler told Dr. Poitra that Tongbin was being hired to NAI, and requested Dr. Poitra give Tongbin a title, such as Assistant Director or Associate Director.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 321 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

322.    On June 11, 2021, Dr. Poitra received a copy of Tongbin's offer letter.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 322 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

323.    Tongbin's offer included a salary several thousand dollars more than Dr. Poitra, even though Tongbin had no relevant experience and would be directly reporting to Dr. Poitra.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 323 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

324.    Dr. Poitra addressed these concerns via email to Tyler, but nothing was done to rectify the situation.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 324 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

325.    Instead, Tyler abruptly reversed his decision, and placed Tongbin in a different department.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 325 of Plaintiff's Complaint, except to admit that Tongbin was placed in a different department.**

326.    Instead of addressing Dr. Poitra's valid concerns and paying her an equitable and competitive salary, MSU deliberately chose to remove an employee from NAI.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 326 of Plaintiff's Complaint as untrue.**

327.    Later, both Millenbah and Tyler separately told Dr. Poitra that Tongbin was moved from her previous department to NAI because Tongbin had made a sexual harassment complaint.

**ANSWER**:  **MSU Defendants deny the allegations in Paragraph 327 of Plaintiff's Complaint as untrue.**

328.    Tongbin's previous role was far more aligned with her education and experience, but rather than removing her harasser from the department, MSU elected to send Tongbin to a different department in which she had no experience.

**ANSWER**:  **MSU Defendants deny the allegations in Paragraph 328 of Plaintiff's Complaint as untrue, except to state that Dr. Tongbin is an Associate Professor in the School of Planning, Design, and Construction at MSU.**

329.    In August 2021, MSU moved an Administrative Assistant from a different department to NAI.

**ANSWER**:  **MSU Defendants admit that Executive Administrative Assistant Jennifer Patterson began working in NAI in August 2021.**

330.    The Administrative Assistant hired for NAI is not Native and has no experience working with Native communities.

**ANSWER**:  **MSU Defendants neither admit nor deny the allegations in Paragraph 330 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

331.    Millenbah told Dr. Poitra that the Administrative Assistant was a problem as she had filed a complaint with her union related to a prior position at MSU.

**ANSWER**:  **MSU Defendants deny the allegations in Paragraph 331 of Plaintiff's Complaint as untrue.**

332.    The Administrative Assistant reports directly to Dr. Poitra.

**ANSWER**:    MSU Defendants neither admit nor deny the allegations in Paragraph 332 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.

333.    However, despite being her supervisor, Dr. Poitra's salary is approximately $7,000 per year less than the Administrative Assistant's.

**ANSWER**:    MSU Defendants neither admit nor deny the allegations in Paragraph 333 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.

334.    Again, Dr. Poitra attempted to address the pay inequity with her supervisors, but nothing was done.

**ANSWER**:    MSU Defendants neither admit nor deny the allegations in Paragraph 334 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.

335.    Further, Dr. Poitra was distressed both by the fact that MSU and CANR appeared to treat NAI as a dumping ground for women who had filed complaints about abuse in the workplace, and that these women were then considered "problems" by MSU and CANR.

**ANSWER**:    MSU Defendants deny as untrue that MSU and CANR "appeared to treat NAI as a dumping ground for women who had filed complaints about abuse in the workplace, and that these women were then considered 'problems' by MSU and CANR."  Answering further, MSU Defendants neither admit nor deny the remaining allegations in Paragraph 335 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.

_**Alleged Harassment, Abuse, and Retaliation by Other Supervisors**_

336.    In July 2021, Dr. Poitra learned she had also been excluded from college-level research meetings that all others in similar roles to Dr. Poitra had been attending throughout the pandemic.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 336 of Plaintiff's Complaint as untrue.**

337.    During this time, Dr. Poitra also learned for the first time that MSU allowed for early release before university holidays, which allows for faculty and academic staff like Dr. Poitra to take extra time before holidays without dipping into their allotted vacation time.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 337 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

338.    Tyler had never informed Dr. Poitra about this, despite informing other offices and subordinates.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 338 of Plaintiff's Complaint as untrue.**

339.    As a result, Dr. Poitra had been using vacation time when others in similar positions at MSU were taking time off without using vacation time.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 167 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

340.    In July 2021, Dr. Poitra spoke with Kelly Millenbah, the Interim Dean of CANR, about her concerns.

-87-

**ANSWER**:    MSU Defendants neither admit nor deny the allegations in Paragraph 340 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.

341.    By this time, Hendrick had left CANR, and Millenbah had been appointed Interim Dean to take over his duties.

**ANSWER**:    MSU Defendants neither admit nor deny the allegations in Paragraph 341 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.

342.    Poitra asked Millenbah if she could report directly to her, rather than to Tyler.

**ANSWER**:    MSU Defendants deny the allegations in Paragraph 342 of Plaintiff's Complaint as untrue.

343.    On July 14, 2021, Dr. Poitra received a letter instructing her to stop reporting to Tyler, and to instead report to Scott Loveridge, the Assistant Dean for Faculty Affairs and Development.

**ANSWER**:    MSU Defendants admit that Plaintiff began reporting to Scott Loveridge in or around July 2021.   Answering further, MSU Defendants neither admit nor deny the remaining allegations in Paragraph 343 because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.

344.    Rather than citing Dr. Poitra's distrust in Tyler and the years of gaslighting Tyler engaged in, the letter simply stated Tyler had too much on his plate and reporting lines needed to be redistributed as a result.

**ANSWER**:   **MSU Defendants deny the allegations in Paragraph 344 of Plaintiff's Complaint as untrue.**

345.   Changing Dr. Poitra's reporting line to Loveridge was not a typical change within MSU.

**ANSWER**:   **MSU deny the allegations in Paragraph 345 of Plaintiff's Complaint as untrue.**

346.   While Dr. Poitra was initially pleased to be reporting to Loveridge rather than Tyler, that sentiment quickly faded.

**ANSWER**:   **MSU Defendants neither admit nor deny the allegations in Paragraph 346 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

347.   Almost immediately after becoming Dr. Poitra's supervisor, Loveridge used several racial epithets in his conversations and emails with Dr. Poitra.

**ANSWER**:   **MSU Defendants deny the allegations in Paragraph 347 of Plaintiff's Complaint as untrue.**

348.   When Dr. Poitra approached Millenbah to discuss Loveridge's overt and harmful racist comments, Millenbah told Dr. Poitra to speak with Loveridge directly.

**ANSWER**:   **MSU Defendants deny as untrue that Loveridge made "overt and harmful racist comments" but otherwise neither admit nor deny the allegations in Paragraph 348 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

349.   Millenbah admitted that Loveridge used racial epithets but did nothing to address his behavior.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 349 of Plaintiff's Complaint as untrue.**

350.    In August 2021, a representative from a Native group working with NAI contacted Dr. Poitra about a project that was nearing its completion.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 350 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

351.    Through this conversation, Dr. Poitra learned that Norder undertook this project prior to his removal from NAI in 2018 and took the grant money associated with the project but did not complete any of the work.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 351 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

352.    Dr. Poitra reached out to her supervisors to address the situation.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 352 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

353.    Dr. Poitra even sent an email to Lang and Defendant Tyler informing them that she found taking care of this issues very triggering.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 353 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

354.    Nonetheless, Dr. Poitra was instructed to apologize on behalf of Norder, her longtime abuser, and try to recover the relationships that Norder destroyed.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 354 of Plaintiff's Complaint as untrue.**

355.    Dr. Poitra has tried again and again to address the inequitable and discriminatory treatment she has received while leading NAI.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 355 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

356.    However, all her concerns have been met with inaction.

**ANSWER:    MSU Defendants deny the allegations in Paragraph 356 of Plaintiff's Complaint as untrue.**

357.    In July 2021, Dr. Poitra had a meeting with MSU's Provost, Teresa Woodruff.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 357 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

358.    On August 27, 2021, shortly after that meeting, Dr. Poitra received notification that NAI would be moving out of CANR and under the Provost's office instead, specifically into the Office of University Outreach and Engagement.

**ANSWER**:    **MSU Defendants admit that in or around September 2021, NAI was aligned with the Office of University Outreach and Engagement.   Answering further, MSU Defendants neither admit nor deny the remaining allegations in Paragraph 358 because they**

-91-

**lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

359.     Dr. Poitra was informed her new supervisor would be Laurie Van Egeren, the Interim Associate Provost for University Outreach and Engagement.

**ANSWER**:     **MSU Defendants admit the allegations in Paragraph 359 of Plaintiff's Complaint.**

360.     With NAI's new placement within MSU, Dr. Poitra again tried to address her concerns about her unequal pay with her new supervisors.

**ANSWER**:     **MSU Defendants neither admit nor deny the allegations in Paragraph 360 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

361.     On August 28, 2021, Dr. Poitra sent an email to Woodruff and Van Egeren outlining her concerns.

**ANSWER**:     **MSU Defendants neither admit nor deny the allegations in Paragraph 361 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

362.     On September 28, 2021, Dr. Poitra had a meeting with Van Egeren to discuss this matter.

**ANSWER**:     **MSU Defendants neither admit nor deny the allegations in Paragraph 362 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

363.     Van Egeren stated that she could only offer Poitra $10,000 more per year, and that perhaps a year later MSU would offer an additional $10,000.

**ANSWER**:    MSU Defendants neither admit nor deny the allegations in Paragraph 363 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.

364.    MSU released salary information for all its employees in 2021.

**ANSWER:   MSU Defendants admit the allegations in Paragraph 364 of Plaintiff's Complaint.**

365.    In 2021, there were 44 employees with the rank of Institute Director or Institute/Center Director.

**ANSWER**:    MSU Defendants neither admit nor deny the allegations in Paragraph 365 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.

366.    The average salary at this role was over $172,000 in 2021.

**ANSWER: MSU Defendants neither admit nor deny the allegations in Paragraph 366 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

367.    Dr. Poitra was by far the lowest paid person at MSU in this role, making only $80,784.

**ANSWER**:    MSU Defendants neither admit nor deny the allegations in Paragraph 367 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.

368.    For every dollar the average employee of this rank made, Dr. Poitra made 47 cents.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 368 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

369.    The next lowest paid employee at this rank above Dr. Poitra made $100,548.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 369 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

370.    Out of all the Institute and Institute/Center Directors at MSU, Dr. Poitra was the only one making less than $100,000.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 370 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

371.    Dr. Poitra was not only the lowest paid employee in this role across MSU, but she was the lowest paid by $20,000 per year.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 371 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

372.    Even if MSU paid Dr. Poitra $10,000 more per year, as offered in her meeting with Van Egeren, she would still have been paid significantly less than every other employee of her rank throughout the entire university.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 372 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

-94-

373.    On October 18, 2021, Dr. Poitra participated in a meeting led by MSU's Chief Diversity Officer, Dr. Jabbar Bennett.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 373 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

374.    Dr. Poitra asked Bennett what systems were in place to address pay inequity within MSU.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 374 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

375.    Bennett stated that while there are systems in place, he could not say what they were, or that they went "beyond spreadsheets."

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 375 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

376.    Bennett went on to admit that a different system is needed across the board.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 376 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

377.    On November 8, 2021, Dr. Poitra received a new offer letter from MSU.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 377 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

378.     While the new offer letter raised her salary to $105,000, this would have only raised Dr. Poitra to second-lowest paid Institute or Institute/Center Director at MSU, with her salary still well below the average of $172,000 across the university.

**ANSWER:     MSU Defendants neither admit nor deny the allegations in Paragraph 239 of Plaintiff's Complaint and state that the referenced letter speaks for itself.**

379.     The letter also stated that MSU would remove Dr. Poitra's experienced administrator from NAI and force her to do a search for a less qualified administrator who would be paid approximately half of what the current administrator was paid.

**ANSWER:     MSU Defendants deny the allegations in Paragraph 239 of Plaintiff's Complaint as untrue.**

380.     This stipulation would have added even [sic] work to Dr. Poitra's plate and limited her ability to do her work further.

**ANSWER:     MSU Defendants neither admit nor deny the allegations in Paragraph 380 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

381.     Dr. Poitra did not accept the offer.

**ANSWER:     MSU Defendants admit the allegations in Paragraph 381 of Plaintiff's Complaint.**

### *Alleged Decline in Health*

382.     In March 2020, due to the stress of the OIE investigation, Dr. Poitra was taken to the emergency room for chest pains.

**ANSWER:     MSU Defendants neither admit nor deny the allegations in Paragraph 382 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

383.    Dr. Poitra's doctors later determined that she had had a panic attack.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 383 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

384.    Dr. Poitra also got diagnosed with temporomandibular joint dysfunction ("TMJ") and learned that she had gained 70 pounds due to her workplace stress.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 384 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

385.    Despite the inequitable way MSU had treated Dr. Poitra throughout her employment, Dr. Poitra continued to work diligently at her role at NAI until November 2021.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 385 of Plaintiff's Complaint as untrue.**

386.    In November 2021, the emotional and psychological toll of the years of abuse at MSU finally caught up with Dr. Poitra, and she applied and was approved for Family Medical Leave Act ("FMLA").

**ANSWER**:    **MSU Defendants admit that Plaintiff began a leave of absence from her position at MSU in or around November 2021.  Answering further, MSU Defendants neither admit nor deny the remaining allegations in Paragraph 386 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

387.    Prior to taking FMLA leave, Dr. Poitra's doctor had diagnosed her with PTSD due to work stress, which was manifesting in numerous increasingly serious symptoms including

weight gain, joint pain, digestive symptoms, muscle tension, jaw pain, sleep disturbances, nightmares, anxiety, hypervigilance, and menstrual irregularity.

**ANSWER**:   **MSU Defendants neither admit nor deny the allegations in Paragraph 387 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

388.   At the time of filing, Dr. Poitra remains on FMLA leave.

**ANSWER:   MSU Defendants admit the allegations in Paragraph 388 of Plaintiff's Complaint.**

### *Alleged Pervasive Culture of Sexual Harassment and Misconduct at MSU*

389.   Dr. Poitra's story is far from unique at MSU.

**ANSWER**:   **Under the Court's March 6, 2023 Order, Paragraphs 389 through 476 are stricken and therefore no response is required and therefor no response shall be provided to any of these allegations.**

### *Alleged Timeliness of Complaint*

477.   Dr. Poitra has exhausted her administrative remedies. In October 2019, she timely filed a complaint alleging discrimination on the basis of sex and disability with the U.S. Department of Education, Office for Civil Rights. In June 2020, she received notice that the U.S. Department of Education was transferring the matter to the U.S. Equal Employment Opportunity Commission ("EEOC"). In December 2021, the EEOC notified her that the U.S. Department of Justice ("DOJ") would be issuing a right to sue letter. In January 2022, she received a right to sue letter from the DOJ.

**ANSWER**:   **MSU Defendants deny the allegations in Paragraph 477 of Plaintiff's Complaint as untrue.**

478.    Dr. Poitra timely filed this action within 90 days of receipt of her right to sue letter.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 478 of Plaintiff's Complaint as untrue.**

## ALLEGED COUNT I
### Violation of Title IX
### Deliberate Indifference to Sex Discrimination
### 20 U.S.C. §§ 1681 *et seq*.
### (MSU and MSU Board of Trustees)

479.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

**ANSWER:    MSU Defendants incorporate their answers to all of the preceding allegations as if fully set forth herein.**

480.    From October 2015 to November 2019, Plaintiff was subjected to sex-based abuse and harassment committed by her male supervisor.

**ANSWER:    MSU Defendants deny the allegations in Paragraph 480 as untrue, except as stated in the Resolution Officer's decision, which speaks for itself.**

481.    From August 2018 to April 2020, Defendants engaged in repeated acts of deliberate indifference to Plaintiff's multiple reports of sex discrimination and retaliation perpetrated by Norder as outlined previously in this complaint, including failing to comply with the procedures and timelines outlined in their own Title IX Policies, engaging in direct discrimination and harassment of Plaintiff, failing to timely investigate and respond to Defendant Norder's ongoing harassment of her, failing to ensure its Title IX decisionmaker was properly trained, attempting to place a no-contact directive against her with no basis for doing so, failing to ensure that the effects of Defendant Norder's discrimination against her were fully remedied, failing to respond appropriately to her reports of retaliation by Defendant Norder, failing to timely and investigate and respond to her report

of Loveridge's harassment of her, and failing to adequately train and supervise their staff with respect to the handling of Title IX complaints.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 481 of Plaintiff's Complaint as untrue.**

482.    Defendants failed to take immediate, effective remedial steps to resolve Plaintiff's complaints of sex discrimination and instead acted with deliberate indifference to Plaintiff's claims.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 482 of Plaintiff's Complaint as untrue.**

483.    Defendants' lack of action and failure to appropriately respond to Plaintiff's reports caused Plaintiff to experience further sexual harassment and retaliation by Defendant Norder, as well as retaliation by Defendants Kent and Tyler.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 483 of Plaintiff's Complaint as untrue.**

484.    This lack of action was so egregious that it led former CANR Associate Dean Lang, who is now MSU's Associate Provost and Associate Vice President for Academic Human Resources, to tell Dr. Poitra that she believed Dr. Poitra had gone through "a deeply dysfunctional and troubling experience" and that "the system ha[d] failed to protect" Dr. Poitra.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 484 that because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs and otherwise deny the allegations of Paragraph 484 as untrue.**

485.    Defendants persisted in their actions and inaction despite having actual knowledge of the discrimination to which Plaintiff was subjected.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 485 of Plaintiff's Complaint as untrue.**

486.    Defendants engaged in a pattern and practice of behavior designed to discourage and dissuade women who had experienced sex discrimination from seeking assistance and protection.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 486 of Plaintiff's Complaint as untrue.**

487.    This pattern and practice of behavior constitutes disparate treatment of women and has a disparate impact on women.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 487 of Plaintiff's Complaint as untrue.**

**WHEREFORE MSU Defendants respectfully request that this honorable Court dismiss Plaintiff's Complaint and claims in their entirety, enter judgment in MSU Defendants' favor, and grant any and all other relief to MSU Defendants as appropriate under the circumstances, including its reasonable fees and costs incurred for having to defend against this Complaint.**

**<u>ALLEGED COUNT II</u>**
**Violation of Title IX**
**Creating a Heightened Risk**
**20 U.S.C. §§ 1681,** *et seq.*
**(MSU and MSU Board of Trustees)**

488.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

**ANSWER:     MSU Defendants state that under the Court's March 6, 2023 Order, Count II of Plaintiff's Complaint has been dismissed and as such, no additional response or answer is required and therefore none shall be provided to Paragraphs 488 through 496.**

## ALLEGED COUNT III
### Title IX Retaliation
### 20 U.S.C. §§ 1681, *et seq*.
### (MSU and the MSU Board of Trustees)

497.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

**ANSWER**:     **MSU Defendants incorporate their answers to all of the preceding allegations as if fully set forth herein.**

498.     This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681, *et seq*.

**ANSWER:     MSU Defendants admit that Plaintiff purports to bring this action pursuant to Title IX but deny that Plaintiff is warranted any relief.**

499.     Plaintiff engaged in Title IX protected activity by repeatedly reporting Norder's sex discrimination and retaliation to her supervisors and to OIE.

**ANSWER:     MSU Defendants neither admit nor deny the allegations in Paragraph 499 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

500.     Plaintiff spent a year and a half waiting for a resolution after making her OIE report.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 500 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

501.    During that time, Plaintiff, through her attorney, directly addressed the Board of Trustees about the lack of action on the report and notified them directly of Norder's continued harassment during the OIE investigation.

**ANSWER**:    **MSU Defendants admit that Plaintiff's attorney addressed the Board of Trustees about Plaintiff's OIE report and otherwise neither admit nor deny the allegations in Paragraph 501 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

502.    Plaintiff's actions were protected from retaliation per the Supreme Court's holding in *Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167 (2005).

**ANSWER:**    **The allegations contained in Paragraph 502 of Plaintiff's Complaint state legal conclusions to which no response is required.  To the extent a response is required, MSU Defendants deny the allegations in Paragraph 502 of Plaintiff's Complaint as untrue and deny any relief is warranted.**

503.    Defendant Norder continued to stalk and harass Plaintiff after she made her report to OIE in retaliation for making the report.

**ANSWER:**    **MSU Defendants neither admit nor deny the allegations in Paragraph 503 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs except to deny**

**as untrue that Norder is a Defendant in this matter and to deny as untrue that Plaintiff is entitled any relief.**

504.     These adverse actions would not have occurred but for Plaintiff's Title IX report.

**ANSWER:   MSU Defendants deny the allegations in Paragraph 504 of Plaintiff's Complaint as untrue.**

505.     Multiple MSU administrators, including Defendant Tyler and OIE staff, were aware of Defendant Norder's retaliatory actions but acted with deliberate indifference toward Plaintiff's reports of continued harassment by Defendant Norder.

**ANSWER**:   **MSU Defendants deny the allegations in Paragraph 505 of Plaintiff's Complaint as untrue.**

506.     Defendant Tyler retaliated against Plaintiff by failing to ensure that she was properly protected by a no-contact directive; entering no-contact directive against her with no reasonable basis for doing so; refusing to assist her with cleaning out her abuser's desk, forcing her to handle her abuser's anal lubricants and other sex paraphernalia; threatening to further reduce or eliminate NAI altogether; refusing to pay her a reasonable salary or respond appropriately to her requests for staff and financial support; excluding her from important University meetings; and denying her important information that negatively impacted her job.

**ANSWER:   MSU Defendants deny the allegations in Paragraph 506 of Plaintiff's Complaint as untrue.**

507.     Defendant Kent retaliated against Plaintiff by refusing to discuss her safety concerns with her attorney and refusing to provide her with an alternate person with whom to discuss her concerns other than Defendant Tyler.

**ANSWER**: **MSU Defendants deny the allegations in Paragraph 507 of Plaintiff's Complaint as untrue.**

508. Defendant Norder retaliated against Plaintiff by continuing to stalk and harass her after she reported him to OIE.

**ANSWER**: **MSU Defendants neither admit nor deny the allegations in Paragraph 508 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs, except to deny that Plaintiff is entitled to any relief.**

509. MSU had knowledge of this retaliation and control over these employees.

**ANSWER**: **MSU Defendants deny the allegations in Paragraph 509 of Plaintiff's Complaint as untrue.**

**WHEREFORE MSU Defendants respectfully request that this honorable Court dismiss Plaintiff's Complaint and claims in their entirety, enter judgment in MSU Defendants' favor, and grant any and all other relief to MSU Defendants as appropriate under the circumstances, including its reasonable fees and costs incurred for having to defend against this Complaint.**

## ALLEGED COUNT IV
### First Amendment Retaliation
### Freedom of Speech
### 42 U.S.C. § 1983
### (MSU, MSU Board of Trustees, and Tyler)

510. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

**ANSWER**:     **MSU Defendants state that under the Court's March 6, 2023 Order, Count IV of Plaintiff's Complaint has been dismissed and as such, no additional response or answer is required and therefore none shall be provided to Paragraphs 510 through 524.**

## ALLEGED COUNT V
### Violation of Title VII
### Discrimination of the Basis of Sex
### 42 U.S. Code § 2000e-2 *et seq*.
### (MSU and MSU Board of Trustees)

525.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs

**ANSWER**:     **MSU Defendants incorporate their answers to all of the preceding allegations as if fully set forth herein.**

526.    Plaintiff is an employee within the meaning of Title VII.

**ANSWER**:     **MSU Defendants deny the allegations of Paragraph 526 as untrue.**

527.    Plaintiff, a woman, is a member of a protected class.

**ANSWER**:     **MSU Defendants admit the allegations of Paragraph 527 except to deny that any relief is warranted.**

528.    MSU is an employer within the meaning of Title VII.

**ANSWER**:     **MSU Defendants admit the allegations of Paragraph 528 except to deny that any relief is warranted.**

529.    Plaintiff met, and many times exceeded, her employer's legitimate job performance expectations.

**ANSWER**:     **MSU Defendants deny the allegations in Paragraph 529 of Plaintiff's Complaint as untrue.**

530.     Plaintiff suffered numerous adverse employment actions.

**ANSWER**:     **MSU Defendants deny the allegations in Paragraph 530 of Plaintiff's complaint as untrue.**

531.     By the acts and omissions alleged herein, Defendants discriminated against Plaintiff in violation of Title VII by, on the basis of sex by:

a.   Refusing to carry out a timely investigation and resolution to Poitra's sexual harassment complaint against Defendant Norder;

b.   Proving no support to Poitra throughout the investigation process, and ignoring her requests for assistance;

c.   Paying Poitra significantly less than her male predecessors;

d.   Refusing to give Poitra the title of NAI Director without a national search, a requirement her male predecessors did not have to complete;

e.   Failing to actually initiate a national search so that Poitra could compete for the role of NAI Director;

f.   Excluding her from important staff meetings her male predecessors had had access to;

g.   Treating NAI as a dumping ground for difficult women; and

h.   Requiring her to do the work of more than three employees and ignoring her repeated requests for the same, or even less, support than her male predecessors received.

**ANSWER**:     **MSU Defendants deny the allegations in Paragraph 531 of Plaintiff's complaint as untrue.**

WHEREFORE MSU Defendants respectfully request that this honorable Court dismiss Plaintiff's Complaint and claims in their entirety, enter judgment in MSU Defendants' favor, and grant any and all other relief to MSU Defendants as appropriate under the circumstances, including its reasonable fees and costs incurred for having to defend against this Complaint.

**ALLEGED COUNT VI**
**Violation of Title VII**
**Retaliation**
**42 U.S.C. § 2000e-3(a)**
**(MSU and MSU Board of Trustees)**

532.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

**ANSWER**:    **MSU Defendants incorporate their answers to all of the preceding allegations as if fully set forth herein.**

533.    Plaintiff is an employee within the meaning of Title VII.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 533 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs**

534.    MSU is an employer within the meaning of Title VII.

**ANSWER**:    **MSU Defendants admit the allegations in Paragraph 534 of Plaintiff's complaint but deny as untrue that any relief is warranted.**

535.    Title VII prohibits employers from retaliating against employees that have made or assisted in claims:

> It shall be an unlawful employment practice for an employer to discriminate against an of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or

because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

**ANSWER**:      **MSU Defendants state that Paragraph 535 of Plaintiff's Complaint state legal conclusions to which no response is required, but to the extent a response is required, MSU Defendants admit that Paragraph 535 accurately recites a portion of 42 U.S.C. § 2000e-3(a) and otherwise denies at untrue that any relief is warranted.**

536.      Plaintiff has long been the subject of discrimination on the basis of sex, as defined by Title VII.

**ANSWER**:      **MSU Defendants deny the allegations in Paragraph 536 of Plaintiff's complaint as untrue.**

537.      Not only did Defendant Norder directly discriminate against and harass Plaintiff, but MSU and its agents have consistently treated Plaintiff differently because of her sex and race.

**ANSWER**:      **MSU Defendants deny the allegations in Paragraph 537 of Plaintiff's complaint as untrue.**

538.      Plaintiff is the only female and the only Latina-Native American to ever head NAI, and she has been treated unequally from the very beginning of her tenure.

**ANSWER**:      **MSU Defendants deny the allegations in Paragraph 538 of Plaintiff's complaint as untrue.**

539.      Plaintiff spent years advocating for equal treatment, but each time she did so her efforts were met with refusals, dismissals, and even threats to her employment by Defendants.

**ANSWER**:      **MSU Defendants deny the allegations in Paragraph 539 of Plaintiff's complaint as untrue.**

540.    Defendants have consistently retaliated against Plaintiff when she has advocated for equitable treatment under Title VII.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 540 of Plaintiff's complaint as untrue.**

541.    Defendant Tyler retaliated against Plaintiff by failing to ensure that she was properly protected by a no-contact directive; entering no-contact directive against her with no reasonable basis for doing so; refusing to assist her with cleaning out her abuser's desk, forcing her to handle her abuser's anal lubricants and other sex paraphernalia; threatening to further reduce or eliminate NAI altogether; refusing to pay her a reasonable salary or respond appropriately to her requests for staff and financial support; excluding her from important University meetings; and denying her important information that negatively impacted her job.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 541 of Plaintiff's complaint as untrue.**

542.    Defendant Kent retaliated against Plaintiff by refusing to discuss her safety concerns with her attorney and refusing to provide her with an alternate person with whom to discuss her concerns other than Defendant Tyler.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 542 of Plaintiff's complaint as untrue and state that Kent has been terminated from this matter under the Court's March 6, 2023 Order.**

543.    Defendant Norder retaliated against Plaintiff by continuing to stalk and harass her after she reported him to OIE.

**ANSWER**:   MSU Defendants deny the allegations in Paragraph 543 of Plaintiff's complaint as untrue and state that Norder has been terminated from this matter under the Court's March 6, 2023 Order.

WHEREFORE MSU Defendants respectfully request that this honorable Court dismiss Plaintiff's Complaint and claims in their entirety, enter judgment in MSU Defendants' favor, and grant any and all other relief to MSU Defendants as appropriate under the circumstances, including its reasonable fees and costs incurred for having to defend against this Complaint.

### ALLEGED COUNT VII
**Violation of Title I of the ADA**
**Disability Discrimination**
**42 U.S.C. § 12111 *et seq*.**
**(MSU and MSU Board of Trustees)**

544.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

**ANSWER**:   **MSU Defendants incorporate their answers to all of the preceding allegations as if fully set forth herein.**

545.   Plaintiff is a qualified individual with a disability within the meaning of the ADA because she actually and currently has, has a record of, or is regarded as having a physical or mental impairment that substantially limits one or more major life activities.

**ANSWER**:   **MSU Defendants neither admit nor deny the allegations in Paragraph 545 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

546.   MSU is a covered entity and an employer under the ADA.

**ANSWER**:    **MSU Defendants admit the allegations of Paragraph 546, except to deny that any relief is warranted.**

547.    Defendants knew of Plaintiff's disability.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 547 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

548.    Plaintiff's disability was caused by an accident that took place during her employment at MSU.

**ANSWER**:    **MSU Defendants neither admit nor deny the allegations in Paragraph 548 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

549.    Plaintiff was subjected to unwelcome harassment based on her disability by Defendant Norder.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 549 of Plaintiff's complaint as untrue.**

550.    Defendant Norder's harassment of Plaintiff was sufficiently severe or pervasive to alter a term, condition, or privilege of her employment.

**ANSWER**:    **MSU Defendants deny the allegations in Paragraph 550 of Plaintiff's complaint as untrue.**

551.    Defendants knew of Plaintiff's complaints of disability discrimination and harassment by Defendant Norder.

**ANSWER**:   MSU Defendants neither admit nor deny the allegations in Paragraph 551 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.

552.   Defendants failed to take prompt, remedial action to end Defendant Norder's harassment of Plaintiff.

**ANSWER**:   MSU Defendants deny the allegations in Paragraph 552 of Plaintiff's complaint as untrue.

**WHEREFORE MSU Defendants** respectfully request that this honorable Court dismiss Plaintiff's Complaint and claims in their entirety, enter judgment in MSU Defendants' favor, and grant any and all other relief to MSU Defendants as appropriate under the circumstances, including its reasonable fees and costs incurred for having to defend against this Complaint.

## ALLEGED COUNT VIII
### Violation of Section 504 of the Rehabilitation Act of 1973
### Disability Discrimination
### 29 U.S.C. §§ 794 *et seq*.
### (MSU and MSU Board of Trustees)

553.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

**ANSWER**:   MSU Defendants state that under the Court's March 6, 2023 Order, Count VIII of Plaintiff's Complaint has been dismissed and as such, no additional response or answer is required and therefore none shall be provided to Paragraphs 553 through 563.

**ALLEGED COUNT IX**
**Denial of Substantive and Procedural Due Process**
**42 U.S.C. § 1983, the Fifth Amendment,**
**and the Fourteenth Amendment**
**(Defendants Simon, Engler, Udpa, Stanley, Hendrick,**
**Kent, Jachimiak, Tyler, and Norder in their individual capacities)**

564.   Plaintiff incorporates by reference the allegations contained in the previous

paragraphs.

**ANSWER**:   **MSU Defendants state that under the Court's March 6, 2023 Order, Count IX**

**of Plaintiff's Complaint has been dismissed and as such, no additional response or answer is**

**required and therefore none shall be provided to Paragraphs 564 through 575.**


**ALLEGED COUNT X**
**Denial of Equal Protection**
**42 U.S.C. § 1983 and the Fourteenth Amendment**
**(Defendants Simon, Engler, Udpa, Stanley, Hendrick,**
**Kent, Jachimiak, Tyler, and Norder in their individual capacities)**

576.   Plaintiff incorporates by reference the allegations contained in the previous

paragraphs.

**ANSWER**:   **MSU Defendants state that under the Court's March 6, 2023 Order, Count X**

**of Plaintiff's Complaint has been dismissed and as such, no additional response or answer is**

**required and therefore none shall be provided to Paragraphs 576 through 599.**


**ALLEGED COUNT XI**
**Sex Discrimination and Retaliation**
**Michigan's Elliott-Larsen Civil Rights Act**
**M.C.L. §§ 37.2202** *et seq*.
**(All Defendants)**

600.   Plaintiff incorporates by reference the allegations contained in the previous

paragraphs.

**ANSWER**:     **MSU Defendants state that under the Court's March 6, 2023 Order, Count XI of Plaintiff's Complaint has been dismissed as to Plaintiff's Discrimination claim in its entirety and as to Plaintiff's Retaliation claim as against all Defendants but for Defendant Tyler and otherwise MSU Defendants incorporate their answers to all of the preceding allegations as if fully set forth herein.**

601.     Defendants are employers within the meaning of ELCRA.

**ANSWER**:     **MSU Defendants deny the allegations of Paragraph 601 as untrue except to admit that MSU is an employer within the meaning of ELCRA.**

602.     Plaintiff is an employee within the meaning of ELCRA.

**ANSWER**:     **MSU Defendants admit the allegations of Paragraph 602 of Plaintiff's Complaint.**

603.     ELCRA prohibits an employer from discriminating against an employee on the basis of sex.

**ANSWER**:     **MSU Defendants admit the allegations of Paragraph 602 of Plaintiff's Complaint, but state that Plaintiff's ELCRA discrimination has been dismissed under the Court's March 6, 2023 Order.**

604.     ELCRA also prohibits retaliation and discrimination "against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing." M.C.L. 37.2701(a).

**ANSWER**:     **MSU Defendants admit that Paragraph 602 of Plaintiff's Complaint recited a portion of MCL 37.2701(a) which speaks for itself and otherwise deny as untrue that Plaintiff is entitled to relief.**

605.   Plaintiff, as a Latina and Native woman, is a member of several protected classes.

**ANSWER: MSU Defendants neither admit nor deny the allegations in Paragraph 605 of Plaintiff's Complaint because they lack knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, leave Plaintiff to her proofs.**

606.   Defendants discriminated against Plaintiff by failing to comply with the procedures and timelines outlined in their own RVSM Policies, failing to timely investigate and respond to Defendant Norder's ongoing harassment of her, failing to ensure that the effects of Defendant Norder's discrimination against her were fully remedied, failing to respond appropriately to her reports of retaliation by Defendant Norder, and failing to adequately train and supervise their staff with respect to the handling of Title IX complaints.

**ANSWER: MSU Defendants state that under the Court's March 6, 2023 Order, Count XI, Discrimination of Plaintiff's Complaint has been dismissed and as such, no additional response or answer is required and therefore none shall be provided to Paragraphs 606 – 608 otherwise MSU Defendants deny Paragraph 606-608 as untrue.**

607.   Defendant Tyler discriminated against Plaintiff by failing to approve the accommodations she needed to do her job, such as allowing her to get a new desk and providing her assistance with cleaning out her abuser's desk; threatening her with removing her unit from CANR whenever she raised concerns about abuse she was experiencing and ignoring her repeated reports of abuse.

**ANSWER: MSU Defendants state that under the Court's March 6, 2023 Order, Count XI, Discrimination of Plaintiff's Complaint has been dismissed and as such, no additional response or answer is required and therefore none shall be provided to Paragraphs 606 – 608 otherwise MSU Defendants deny Paragraph 606-608 as untrue.**

608.    Defendant Norder discriminated against Plaintiff by repeatedly sexually harassing and stalking her.

**ANSWER: ANSWER: MSU Defendants state that under the Court's March 6, 2023 Order, Count XI, Discrimination of Plaintiff's Complaint has been dismissed and as such, no additional response or answer is required and therefore none shall be provided to Paragraphs 606 – 608 otherwise MSU Defendants deny Paragraph 606-608 as untrue.**

609.    Defendant Tyler retaliated against Plaintiff by failing to ensure that she was properly protected by a no-contact directive; entering no-contact directive against her with no reasonable basis for doing so; refusing to assist her with cleaning out her abuser's desk, forcing her to handle her abuser's anal lubricants and other sex paraphernalia; threatening to further reduce or eliminate NAI altogether; refusing to pay her a reasonable salary or respond appropriately to her requests for staff and financial support; excluding her from important University meetings; and denying her important information that negatively impacted her job.

**ANSWER: MSU Defendants deny as untrue the allegations of Paragraph 609 of Plaintiff's Complaint.**

610.    Defendant Kent retaliated against Plaintiff by refusing to discuss her safety concerns with her attorney and refusing to provide her with an alternate person with whom to discuss her concerns other than Defendant Tyler.

**ANSWER:    MSU Defendants state that under the Court's March 6, 2023 Order, Kent has been dismissed and as such, no additional response or answer is required and therefore none shall be provided to Paragraph 610 and otherwise MSU Defendants deny Paragraph 610 as untrue.**

611.    Defendant Norder retaliated against Plaintiff by continuing to stalk and harass her after she reported him to OIE.

**ANSWER:    MSU Defendants state that under the Court's March 6, 2023 Order, Norder has been dismissed and as such, no additional response or answer is required and therefore none shall be provided to Paragraph 610 and otherwise MSU Defendants deny Paragraph 611 as untrue.**

612.    Defendants' actions were intentional, with deliberate disregard for Plaintiff's rights and sensibilities.

**ANSWER: MSU Defendants deny as untrue the allegations of Paragraph 612 of Plaintiff's Complaint.**

**WHEREFORE MSU Defendants respectfully request that this honorable Court dismiss Plaintiff's Complaint and claims in their entirety, enter judgment in MSU Defendants' favor, and grant any and all other relief to MSU Defendants as appropriate under the circumstances, including its reasonable fees and costs incurred for having to defend against this Complaint.**

## ALLEGED COUNT XII
### Disability Discrimination and Retaliation
### Michigan's Persons with Disabilities Civil Rights Act
### M.C.L. §§ 37.1101 *et seq*.
### (All Defendants)

613.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

**ANSWER**:    **MSU Defendants state that under the Court's March 6, 2023 Order, Count XII of Plaintiff's Complaint has been dismissed and as such, no additional response or answer is required and therefore none shall be provided to Paragraphs 613 through 627.**

-118-

### *Alleged Damages*

628.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

**ANSWER:    MSU incorporates its answers to all of the preceding allegations as if fully set forth herein.**

629.    As a direct and proximate result of the above-described conduct, Plaintiff suffered general, special, incidental, and consequential injuries and damages, past, present, and future, in excess of the jurisdictional threshold of this Court, an amount that shall be fully proven at the time of trial. These past, present, and future damages include, but are not limited to, the following:

    a.   Physical injury and suffering;

    b.   Pain, suffering, mental, and emotional distress;

    c.   Physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, and humiliations;

    d.   Loss of her constitutional rights;

    e.   Loss of employment opportunities;

    f.   Damage to her professional reputation;

    g.   Weight loss and weight gain;

    h.   Post-traumatic stress disorder;

    i.   Anxiety;

    j.   Depression;

    k.   Sleep disturbances and nightmares;

    l.   Hypervigilance;

m.  Economic loss;

n.  Loss of the ordinary pleasures of everyday life;

o.  Loss of relationships;

p.  Travel and travel-related expenses;

q.  All other ordinary, incidental, or consequential damages that would or could
be reasonably anticipated to arise under the circumstances.

**ANSWER**:   **MSU Defendants deny the allegations in Paragraph 629 of Plaintiff's
Complaint as untrue.**

**WHEREFORE, MSU Defendants deny that it is liable to Plaintiff in any sum or other
relief whatsoever and respectfully pray that this Honorable Court dismiss Plaintiff's
Complaint in its entirety with prejudice and award MSU Defendants any and all relief to
which it may be entitled under the circumstances, including but not limited to its costs and
attorney fees incurred for having to defend this baseless action.**

### Reliance on Jury Demand

**MSU Defendants acknowledge and rely on Plaintiff's jury demand, but deny as
untrue that Plaintiff is entitled to a jury trial on all issues and remedies requested.**

Respectfully Submitted,

Date: March  20, 2023

_/s/ Scott R. Eldridge_
Scott R. Eldridge (P66452)
Miller, Canfield, Paddock and Stone, PLC
*Attorneys for MSU Defendants*
One Michigan Ave., Suite 900
Lansing, MI 48933
eldridge@millercanfield.com
517-483-4918

-120-

## <u>NOTICE OF AFFIRMATIVE, SPECIAL and OTHER DEFENSES</u>

Defendants, by its attorneys, Miller, Canfield, Paddock and Stone, P.L.C., state as follows for its affirmative and other defenses to Plaintiff's First Amended Complaint:

1. Plaintiff has failed to state a claim upon which relief can be granted.

2. Plaintiff's claims are barred by governmental immunity, whether statutory, common law, absolute and qualified immunity.

3. Plaintiff has failed to allege facts in avoidance of governmental immunity.

4. Plaintiff's claims are barred in whole or in part by Plaintiff's own actions.

5. Plaintiff's claims are barred in whole or part by after-acquired evidence.

6. Some or all of Plaintiff's claims are barred by the applicable statute of limitations.

7. Plaintiff's claims are barred by waiver, estoppel, and laches.

8. Plaintiff's claims are barred by the doctrine of unclean hands.

9. Plaintiff's claims are barred in whole or in part for her failure to exhaust administrative remedies.

10. Plaintiff's claims are barred in whole or in part because one or more Defendants took prompt remedial action to address her allegations of harassment.

11. Plaintiff's claims are barred in whole or in part because she has not suffered an adverse action.

12. Plaintiff's claims are barred in whole or in part because the MSU Defendants did not act with deliberate indifference.

13. Plaintiff's claims are barred in whole or in part because she cannot establish pretext and discriminatory animus as it relates to any determinations or actions taken by the MSU Defendants.

14. Plaintiff's claims are barred in whole or in part because she has failed to identify a similarly situated individual outside of her protected class(es) that has been treated more favorably.

15. Plaintiff's claims are barred in whole or in part because the MSU Defendants acted with legitimate, non-discriminatory, non-retaliatory reasons that are not pretextual.

16. To the extent required, MSU Defendants took prompt, remedial action in response to Plaintiff's, and did not otherwise respond with deliberate indifference.

17. MSU Defendants reserve the right to amend, add to, or delete the stated defenses as this matter if warranted as a result of additional factual development during discovery.

**WHEREFORE, Defendants deny that it is liable to Plaintiff in any sum or other relief whatsoever and respectfully pray that this Honorable Court dismiss Plaintiff's Complaint in its entirety with prejudice and award Defendants any and all relief to which it may be entitled under the circumstances, including but not limited to its costs and attorney fees incurred for having to defend this baseless action.**

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Scott R. Eldridge
    Scott R. Eldridge
    Attorneys for MSU Defendants
    One Michigan Ave., Suite 900
    Lansing MI 48933-1613
    517.487.2070
    eldridge@millercanfield.com

Dated: March 20, 2023

38795466.1/060505.00216